**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **CHARLES R. LUTTRELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 17-2137** |
| | ) | |
| **JAMES K. BRANNON, M.D.,** | ) | |
| **ORTHOPEDIC SCIENCES, INC.,** | ) | **Jury Trial Demanded** |
| **JOINT PRESERVATION INSTITUTE** | ) | |
| **OF KANSAS, L.L.C., and** | ) | |
| **DOCTORS HOSPITAL, L.L.C.** | ) | |

**COMPLAINT**

COMES NOW Plaintiff, by and through his attorneys of record, and for his causes of action against Defendants, alleges and states as follows:

**Parties**

1. Plaintiff is over the age of 18 years and a citizen of Missouri.

2. Defendant James K. Brannon, M.D. ("Brannon") is over the age of 18 years and a citizen of Kansas.

3. Defendant Orthopedic Sciences, Inc. ("OSI") is a California corporation whose registered agent in Kansas is James K. Brannon, M.D., 11220 Meadow Lane, Leawood, Kansas 66211.

4. Defendant Joint Preservation Institute of Kansas, L.L.C. ("JPI") is a Kansas limited liability company whose registered agent in Kansas is Maggie L. Neustadt, 2209 W. 123rd Terrace, Leawood, Kansas 66209.

5. Defendant Doctors Hospital, L.L.C. ("Doctors Hospital") is a Kansas limited liability company whose registered agent is Phillip S. Harness, 4901 College Boulevard, Leawood, Kansas 66211.

**Venue and Jurisdiction**

6. The preceding paragraphs of the Complaint are incorporated.

7. This court possesses jurisdiction under 28 U.S.C. §1332 as Plaintiff is a citizen of Missouri, Defendants Brannon, JPI and Doctors Hospital are citizens of Kansas, and Defendant OSI is a citizen of California or Kansas. As such, there is complete diversity among Plaintiff and Defendants. Venue is proper under 28 U.S.C. §1391(b)(1) because a substantial part of the events or omissions giving rise to these claims occurred within this judicial district.

**Common Allegations**

8. The preceding paragraphs of the Complaint are incorporated.

9. Brannon is a medical doctor licensed to practice medicine in Kansas, Missouri and California. He is the President and majority owner of OSI. He is the sole member and owner of JPI.

10. OSI manufactures, markets, sells and distributes surgical devices for profit. These devices include the Titanium Hip Tool Locking Plate Bone Graft Stabilization System. The products OSI manufactures, markets, sells and distributes are "single use" products. Brannon and/or OSI designs the devices it manufactures, markets, sells and distributes, and considers them proprietary in nature. Defendants claim that they have obtained approval from the federal government to use and market these products. JPI actively markets, advertises and promotes these devices and the procedures associated with them. On information and belief, Defendants have engaged in a systematic and widespread promotion of the use of these products that are "off-label" and are inconsistent with, and contrary to, any alleged use and marketing authorized under applicable rules and regulations pertaining to such products. This marketing reached persons across the country.

11. Brannon derives a personal financial benefit from OSI's and JPI's commercial activities, including the sale of devices to physicians and other health care providers. Brannon claims that the exclusive use of the OSI devices he develops and designs allegedly enables patients to avoid or postpone joint replacement surgeries, and are superior to other medical procedures for the same condition. Defendants actively market these claims. These procedures are performed at Doctors Hospital, which profits from them.

12. Prior to March 4, 2015, Plaintiff suffered from right hip pain. Prior to March 4, 2015, Plaintiff was seen and evaluated by Brannon for that pain, and a physician-patient relationship was established.

13. Brannon represented to Plaintiff that the cause of his right hip pain was caused, in part, by avascular necrosis within the hip joint and/or within the right femoral head. Brannon represented to Plaintiff that while the traditional treatment for his condition was a total hip arthroplasty (total hip replacement), such a procedure for Plaintiff was unnecessarily invasive and complicated. Instead, Brannon recommended a "joint preservation" procedure, which involved procedures "invented" by Brannon, and involved the use of devices solely available through OSI, Brannon's company. Brannon specifically represented to Plaintiff that the existence of avascular necrosis in Plaintiff's hip joint/right femoral head was the predominating indication and justification for the "joint preservation" procedure and the use of the surgical devices OSI and he designed and sold and which JPI actively marketed. Brannon convinced Plaintiff not to undergo a total hip arthroplasty, representing to him that such a procedure was unnecessary and inferior to the "joint preservation" procedure, which included the use of OSI's products that Brannon allegedly innovated. Brannon made these representations even though he knew that the use of these devices and products had been approved for use only in instances involving an interosseous fracture, and not instances involving avascular necrosis.

14. On or about February 18, 2015, Plaintiff underwent an x-ray of his right hip. The x-ray was performed at and by Doctors Hospital and was interpreted by Dr. Patricia McFarlane. The images taken on February 18, 2015 revealed, among other things, that the "right femoral head, femoral neck, and intertrochanteric and subtrochanteric right femur are normal in appearance;" that there were "no osteolytic or osteoblastic lesions" seen; and that there were "no radiographic findings of avascular necrosis of the femoral head." In addition, there were no findings of an interosseous fracture of the femoral head or femur.

15. Prior to March 4, 2015, the results of the February 18, 2015 x-ray were communicated to and known by Brannon. Prior to March 4, 2015, Brannon had actual knowledge that there was no radiologic evidence that Plaintiff had avascular necrosis. At no time did Brannon communicate the results of the February 18, 2015 x-ray to Plaintiff.

16. On March 4, 2015, Plaintiff underwent surgery at Doctors Hospital. The surgery was performed by Brannon. Brannon's pre-operative diagnosis included "avascular necrosis" of the right hip. Brannon's post-operative diagnosis included "avascular necrosis" of the right hip. At the time Brannon made these entries in his report, he knew that Plaintiff did not have avascular necrosis of the right hip.

17. Brannon's operative notes refer to a pre-operative MRI of Plaintiff's right hip, which allegedly revealed the existence of avascular necrosis. A pre-operative MRI of Plaintiff's right hip was never taken. When Brannon made these entries in his report, he knew that there had been no pre-operative MRI findings that Plaintiff had avascular necrosis in his right hip.

18. During the March 4, 2015 surgical procedure, Brannon used surgical instruments designed, manufactured and sold by Brannon and/or OSI. During the procedure, surgical devices designed, manufactured and sold by Brannon and/or OSI were implanted into Plaintiff's body,

including a hip tool locking plate and compression screw. Doctors Hospital charged Plaintiff $131,371.56 for surgical equipment and devices designed, manufactured and sold by Brannon and/or OSI, for which Brannon and/or OSI received financial compensation. In addition, Doctors Hospital charged Plaintiff an additional $115,097.96 for the "joint preservation" procedure Brannon allegedly performed and for which he takes credit as its inventor. On information and belief, Brannon personally profited from these charges.

19. During the March 4, 2015 surgical procedure, bone samples were taken from Plaintiff's right hip, including his femoral head. These samples were taken to pathology, where they were examined after the surgery by John R. Dobson, M.D. The examination revealed viable bone, fat and marrow, and "argued against avascular necrosis."

20. Following the March 4, 2015 surgery, Plaintiff experienced severe pain and discomfort in his right hip. He elected to see David W. Anderson, M.D. After examination and consultation, Dr. Anderson ascertained that Plaintiff had a displaced right femoral head fracture that had been caused by the surgical devices implanted by Brannon. Dr. Anderson determined that the March 4, 2015 surgery, including the surgical hardware used by Brannon, had failed.

21. On March 9, 2015, Dr. Anderson performed a surgical procedure on Plaintiff at the University of Kansas Hospital. The surgery was a conversion of Plaintiff's prior hip surgery to a right total hip arthroplasty. During the surgery, a bone core sample was taken of Plaintiff's right femoral head and sent to pathology. The pathology results confirmed that there was no evidence of any avascular necrosis within the femoral head. Pre- and post-operative imaging studies ordered by Dr. Anderson likewise revealed the absence of avascular necrosis.

22. Following the March 9, 2015 procedure, Plaintiff continued to suffer from pain and discomfort in his right hip. Multiple procedures were necessary in an attempt to alleviate and treat Plaintiff's pain. Plaintiff continues to experience pain and discomfort in his right hip.

**Count I – Professional Negligence – Brannon, MD**

23. The preceding paragraphs of the Complaint are incorporated.

24. In performing services for Plaintiff, Dr. Brannon had a duty to use that degree of learning and skill ordinarily possessed by members of his profession and that school of medicine in the community in which he practiced, or in similar communities, and in the application of that skill and learning, Dr. Brannon was obligated to use ordinary care and diligence.

25. Dr. Brannon violated his duty, and was thereby negligent, in, among other things:

a. Recommending and performing a procedure that was not medically-indicated or appropriate under the circumstances;

b. Utilizing procedures, instruments and devices that were not appropriate or suitable to treat the patient;

c. Failing to order appropriate pre-operative tests and studies to accurately ascertain Plaintiff's true medical condition;

d. Disregarding the results of pre-operative tests and studies;

e. Representing to Plaintiff that he had avascular necrosis when Dr. Brannon knew or should have known that he did not;

f. Persuading Plaintiff to forego a total hip arthroplasty and instead undergo a procedure that was no appropriate under the circumstances;

g. Failing to use the appropriate degree of learning and skill, and failing to use ordinary care in diligence in performing the March 4, 2015 procedure;

h. Utilizing techniques and devices for a purpose and to treat a condition that had not been approved under appropriate and applicable regulations, and which constituted an "off-label" use that was inappropriate and negligent under the circumstances; and

g. In other respects not specifically listed, but which may arise throughout the course of discovery.

26. As a direct and proximate result of such negligence, Plaintiff suffered and incurred both past and future economic and non-economic damages, including but not limited to medical expenses, hospital expenses, prescription medication expenses, pain, suffering and disability.

**Count II – Vicarious Liability – OSI, JPI and Doctors Hospital**

27. The preceding paragraphs of the Complaint are incorporated.

28. At all relevant times, Dr. Brannon was acting individually and as an agent, employee and/or representative of Defendants OSI, JPI and Doctors Hospital.

29. The negligence and malpractice committed by Dr. Brannon arose out of the course and scope of his agency or employment with Defendants OSI, JPI and Doctors Hospital.

30. As a direct and proximate result of such negligence, for which Defendants OSI, JPI and Doctors Hospital are vicariously liable, Plaintiff suffered and incurred both past and future economic and non-economic damages, including but not limited to medical expenses, hospital expenses, prescription medication expenses, pain, suffering and disability.

**Count III – Fraud – Brannon, OSI, JPI and Doctors Hospital**

31. The preceding paragraphs of the Complaint are incorporated.

32. Dr. Brannon made false or untrue representations as a statement of existing and material fact, including but not limited to:

a. That Plaintiff was not an appropriate candidate for total hip arthroplasty;

b. That Plaintiff suffered from avascular necrosis in his hip;

c. That avascular necrosis was present in Plaintiff's hip;

d. That Plaintiff's condition could be appropriately treated by undergoing a procedure utilizing the Titanium Hip Tool Locking Plate Bone Graft Stabilization System;

e. That diagnostic studies showed that Plaintiff had avascular necrosis;

f. That the surgical procedure Dr. Brannon planned to perform on March 4, 2015 procedure was medically indicated and medically appropriate for Plaintiff, and superior to a total hip arthroplasty;

g. That conservative, non-operative treatment was inappropriate for Plaintiff and would not be beneficial; and

h. That the procedure and devices to be used had been approved for treating the condition of avascular necrosis, as opposed to for treating interosseous fractures.

33. Dr. Brannon knew that these representations were false or untrue, or were recklessly made without knowledge concerning them.

34. Dr. Brannon made these representations intentionally and for the purpose of inducing Plaintiff to act upon them.

35. Plaintiff reasonably relied and acted upon the representations made by Dr. Brannon.

36. In relying upon Dr. Brannon's representations, Plaintiff suffered and incurred both past and future economic and non-economic damages, including but not limited to medical expenses, hospital expenses, prescription medication expenses, pain, suffering and disability.

37. When Dr. Brannon made these representations, he was acting individually and as an agent, employee and/or representative of Defendants OSI, JPI and Doctors Hospital.

38. The representations were made within the course and scope of Dr. Brannon's agency or employment with Defendants OSI, JPI and Doctors Hospital.

**Count IV – Civil Conspiracy – Brannon, MD, OSI, JPI, and Doctors Hospital**

39. The preceding paragraphs of the Complaint are incorporated.

40. Defendants acted with a full meeting of the minds, and with the object of deceiving Plaintiff into undergoing the March 4, 2015 surgical procedure. On information and belief, Defendants' conduct transcended their interactions with Plaintiff, and extended to a systematic and widespread course of conduct which involved other patients across the country.

41. Defendants acted in order to accomplish the object of financially profiting from the unnecessary and inappropriate March 4, 2015 surgical procedure, and did in fact profit from it.

42. As a direct result of Defendant's conspiracy, and the overt unlawful acts committed in furtherance of it, Plaintiff suffered and incurred both past and future economic and non-economic damages, including but not limited to medical expenses, hospital expenses, prescription medication expenses, pain, suffering and disability.

**Count V – Kansas Consumer Protection Act – Brannon, MD, OSI, JPI, and Doctors Hospital**

43. The preceding paragraphs of the Complaint are incorporated.

44. Defendants, with respect to their interactions and transactions with Plaintiffs, were "suppliers" under K.S.A. 50-624(l).

45. Defendants engaged in one or more deceptive acts or practices in connection with their consumer transactions with Plaintiff, including but not limited to:

a. Making representations knowingly or with reason to know that property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;

b. Using exaggeration, falsehood, innuendo or ambiguity as to a material fact, and;

c. Willfully failing to state a material fact, or willfully concealing, suppressing or omitting of a material fact, including but not limited to the fact that the surgical procedure and attendant devices were not approved for the use intended by Defendants.

46. Defendants' conduct constituted "unconscionable acts and practices" under K.S.A. 50-627, in that:

a. Defendants took advantage of Plaintiff's inability to reasonably protect his interests due to Plaintiff's physical infirmity, ignorance or other similar factor; and

b. Defendants made a misleading statement of opinion on which Plaintiff was likely to rely to his detriment.

47. As a result of Defendants' deceptive and unconscionable acts and practices, Plaintiff suffered and incurred both past and future economic and non-economic damages, including but not limited to medical expenses, hospital expenses, prescription medication expenses, pain, suffering and disability.

**Count VI-Breach of Implied Warranty of Fitness - Brannon, MD, OSI, JPI, & Doctors Hospital**

48. The preceding paragraphs of the Complaint are incorporated.

49. At the time of the transaction between Defendants and Plaintiff, which involved, among other things, the sale of the subject surgical products, Defendants knew or had reason to know of the particular purpose for which the products were required.

50. Defendants knew or had reason to know that Plaintiff was relying on Defendants' skill or judgment to select or furnish suitable products for such particular purpose.

51. Defendants' actions and conduct created an implied warranty that the products would be suitable and fit for such purpose.

52. The products were not suitable for such purpose, and as a result, Defendants breached such warranty.

53. As a direct result of this breach, Plaintiff suffered and incurred both past and future economic and non-economic damages, including but not limited to medical expenses, hospital expenses, prescription medication expenses, pain, suffering and disability.

**Count VII – Strict Liability Failure to Warn - Brannon, MD, OSI, JPI, & Doctors Hospital**

54. The preceding paragraphs of the Complaint are incorporated.

55. Defendants sold a product in a defective condition that was unreasonably dangerous to Plaintiff and caused physical harm to Plaintiff.

56. Defendants were in the business of making, selling, and marketing the subject product.

57. Defendants expected that the product would, and the product did in fact, reach Plaintiff, the consumer, without substantial change in the condition in which it was sold.

58. The subject product was defective due to a defect in warnings, and such defect existed at the time it left Defendants' hands. Such warnings were defective, in part, in that they failed to warn or instruct Plaintiff that the product was being used "off-label" and in a manner that had not been approved by applicable regulatory authorities.

59. The product was used by Plaintiff in an ordinary manner considering the product's characteristics and common usage, yet was dangerous to an extent beyond which would be contemplated by an ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics.

60. As a result of the sale of Defendants' defective and unreasonably dangerous product, Plaintiff suffered and incurred both past and future economic and non-economic damages, including but not limited to medical expenses, hospital expenses, prescription medication expenses, pain, suffering and disability.

**Count VIII – Punitive Damages – All Defendants**

61. The preceding paragraphs of the Complaint are incorporated.

62. Defendants' conduct herein was willful, wanton, fraudulent, grossly negligent and/or malicious, justifying the imposition of punitive or exemplary damages to punish Defendants and to deter them, and others, from engaging in like conduct.

WHEREFORE, Plaintiff prays for judgment against Defendants in an amount that is fair, reasonable and in excess of $75,000.00, for his costs and expenses, for attorney's fees and civil penalties under the Kansas Consumer Protection Act, and for such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury.

Respectfully Submitted,

PETERSON & ASSOCIATES, P.C.

/s/ Derrick A. Pearce
Derrick A. Pearce KS #16572
dap@petersonlawfirm.com
David M. Peterson #70317
dmp@petersonlawfirm.com
801 W. 47th Street, Suite 107
Kansas City, Missouri 64112
(816) 531-4440
Fax: (816) 531-0660
**ATTORNEYS FOR PLAINTIFF**

K:\Active Cases\Luttrell, Charles Roy\Pleadings\Petition.docx