IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHARLES R. LUTTRELL,                    )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )      Case No. 17-2137-JWL
                                        )
JAMES K. BRANNON, M.D.;                 )
ORTHOPEDIC SCIENCES, INC.;              )
JOINT PRESERVATION INSTITUTE            )
        OF KANSAS, L.L.C.;              )
DOCTORS HOSPITAL, L.L.C.;               )
MAURICIO GARCIA, M.D.;                  )
THE HEADACHE & PAIN CENTER, P.A.;       )
        and                             )
PATIENTFIRST HEALTHCARE                 )
        ALLIANCE, P.A.,                 )
                                        )
                    Defendants.         )
                                        )
_____)

## MEMORANDUM AND ORDER

This matter comes before the Court on various motions to dismiss filed by James

Brannon and Joint Preservation Institute of Kansas, L.L.C. ("JPI") (Doc. # 87); by

Orthopedic Sciences, Inc. ("OSI") (Doc. # 85); by Mauricio Garcia and The Headache &

Pain Center, P.A. ("HPC") (Doc. # 106); and by PatientFirst Healthcare Alliance, P.A.

("PatientFirst") (Doc. # 108); and on a motion for judgment on the pleadings or for

summary judgment by Doctors Hospital, L.L.C. ("DH") (Doc. # 131).  For the reasons set

forth below, each motion is **granted in part and denied in part**.  Specifically, the

following claims are dismissed:

RICO (Count III):   Claims for damages other than those representing payments by plaintiff for unnecessary medical treatment; claims based on predicate acts of mail fraud or wire fraud (plaintiff may amend); claims based on predicate acts of controlled substance violations under Kansas law; claims against JPI, OSI, DH, and PatientFirst based on predicate acts of controlled substance violations under federal law (plaintiff may amend); claims based on predicate acts of money laundering (plaintiff may amend); claims under 18 U.S.C. § 1962(a).

Fraud (Count V):  All claims.

KCPA (Count VI):  All claims (plaintiff may amend to allege claims based on acts of billing).

Conspiracy (Count IV):  All claims (plaintiff may amend to allege claims based on surviving RICO and KCPA claims).

Product liability (Counts VII and VIII):  All claims against JPI, HPC, DH, and PatientFirst; claim against OSI for failure to warn based on direct (not vicarious) liability (Count VIII).

With respect to certain claims, as more fully set forth herein, plaintiff is granted leave to file, on or before **July 3, 2018**, a second amended complaint, by which he may attempt to cure certain pleading deficiencies.  Defendants' motions are otherwise denied.


I.    **Background**

By his first amended complaint, plaintiff alleges that he was prescribed medications by Dr. Brannon and Dr. Garcia for pain management and that Dr. Brannon performed various surgeries on him.  Included in that treatment by Dr. Brannon was hip surgery using a BGSS device; plaintiff alleges that the surgery failed (requiring another procedure by another doctor) and that the surgery recommended and performed by Dr. Brannon was not appropriate given plaintiff's actual medical condition.   Plaintiff alleges that the two

physicians entered into a scheme that also involved the other defendants, which entities are related to the doctors and to each other.  According to plaintiff's complaint, JPI was Dr. Brannon's practice entity; OSI, the manufacturer of the device, was majority owned by Dr. Brannon, who also invented the device; DH (whose president was Dr. Garcia) and HPC (for whom Dr. Brannon and Dr. Garcia were directors) provided facilities for plaintiff's treatment; and DH and HPC were entirely owned by PatientFirst, whose owners and directors included Dr. Brannon and Dr. Garcia and whose president was Dr. Garcia.

Plaintiff has asserted various claims against defendants.  In Counts I and II, plaintiff asserts medical malpractice claims against Dr. Brannon.  He asserts federal RICO claims against all defendants in Count III.  In Counts IV and V, he asserts civil conspiracy and fraud claims against all defendants.  In Count VI, he asserts a claim under the Kansas Consumer Protection Act against all defendants other than Dr. Garcia.  In Counts VII and VIII, plaintiff asserts product liability claims (implied warranty of fitness, strict liability failure to warn) against all defendants other than Dr. Garcia and HPC.  In Counts IX and X, plaintiff asserts than OSI, JPI, and PatientFirst are vicariously liable for the acts of Dr. Brannon, and that PatientFirst is the alter ego of subsidiaries HPC and DH.  Finally, in Count XI, plaintiff asserts a claim for punitive damages against all defendants.

## II.    **Motion to Dimsiss Standard**

The Court will dismiss a cause of action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when

an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic*, 550 U.S. at 555. The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555. The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III.    Initial Procedural Matters

Separate motions and briefs have been filed by defendants Brannon/JPI, Garcia/HPC, OSI, DH, and PatientFirst. In addition to making particular arguments for dismissal of particular claims against them, defendants (except for OSI) have also joined in other arguments by other defendants that would also apply to them. The Court appreciates such economy; it notes, however, that if one defendant's legal argument turns on its own particular circumstances, the Court will not necessarily consider that argument as made by another defendant that has not specifically briefed how the argument applies also to it.

4

Defendant DH filed an answer to plaintiff's amended complaint, and it subsequently filed a motion to dismiss or for summary judgment. Plaintiff correctly notes that a party may not move to dismiss under Rule 12(b)(6) once it has answered. The Rules also provide for a motion for judgment on the pleadings, however, *see* Fed. R. Civ. P. 12(c), and the Court has therefore considered DH's motion under that rule.

Defendant HPC did not file an answer before filing its motion to dismiss. Nevertheless, plaintiff argues that HPC should be precluded from pursuing such relief because DH has answered and DH and HPC are both alter egos of defendant PatientFirst. The Court rejects this argument. HPC and DH are separate parties, and plaintiff has not cited any authority suggesting that his *allegations* of alter ego liability somehow preclude the two defendants from acting separately in litigating this suit. In addition, as with DH, there can be no prejudice to plaintiff, as HPC could simply pursue the same arguments in a motion for judgment on the pleadings.

## IV.   <u>RICO</u>

### A.   <u>*Injury to Business or Property*</u>

In Count III of his amended complaint, plaintiff asserts claims against all defendants under the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* RICO allows for a civil action by a person "injured in his business or property" by a violation of Section 1962 of the Act. *See id.* § 1964(c); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496-97 (1985) (a RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or

property by the conduct constituting the offenses").  Congress has thus excluded personal injuries from the kinds of injury that may underlie a RICO claim.  *See RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2108 (2016).  A private plaintiff cannot recover for emotional, personal, or speculative future injuries under RICO.  *See Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 888-89 (10th Cir. 2017).  The circuit courts agree that the requirement of injury to "business or property" excludes all personal injuries including pecuniary losses flowing therefrom.  *See Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 564-65 & n.4 (6th Cir. 2013) (citing cases).

Defendants argue that plaintiff's RICO claims should be dismissed because he has not plausibly alleged an injury to his business or property as required.  In his amended complaint, plaintiff alleges as follows:

> Plaintiff has standing to bring these RICO claims because Plaintiff was economically injured and experienced violations of Plaintiff's property in the following included, but not limited to ways: co-pays, out-of-pocket medical costs, increased Medicaid liens, reduced earning capacity, lost wages, incidental costs and future medical costs including drug rehabilitation treatment, therapy, orthopedic surgery, among other economic damages to be proved at trial.

Defendants argue that any such damages constitute personal injuries or pecuniary damages that flow from his personal injuries sustained as a result of the allegedly negligent medical care.

In response, plaintiff argues that although he seeks personal injury damages in his other claims, his RICO claims are limited to damages for the money he paid, as a result of defendants' scheme to defraud, for unnecessary medical treatment, which payments constitute an injury to property under the statute.  Plaintiff thus does not dispute that other

damages listed in the allegation quoted above would not be recoverable under RICO. For instance, damages for reduced earning capacity, lost wages, and future medical costs would represent pecuniary damages that flowed directly from the personal injury suffered from the alleged medical malpractice. Accordingly, plaintiff's RICO claims are dismissed to the extent that they seek damages other than amounts that he paid out of pocket for unnecessary medical treatment.[1]

In arguing that his payments for unnecessary treatment constitute an injury to property under RICO, plaintiff relies on the recent case of *Blevins v. Aksut*, 849 F.3d 1016 (11th Cir. 2017). In that case, the Eleventh Circuit recognized the general rule precluding claims under RICO for both personal injuries and pecuniary losses flowing therefrom. *See id.* at 1021. It nevertheless held that "[i]n the context of unnecessary medical treatment, payment for the treatment may constitute an injury to property" under RICO, because the payments themselves are economic injuries that were for the procedures and did not flow from any personal injuries. *See id.*

Defendants urge the Court not to follow *Blevins*. They argue that *Blevins* goes against the majority rule recognized by the Sixth Circuit in *Jackson*; but the Eleventh Circuit recognized that general rule (even citing *Jackson* for it) and held that the alleged injuries fell outside the scope of that prohibition because they did not flow from personal injuries. *See id.* (citing *Jackson*, 731 F.3d at 565). Moreover, the cases cited by defendant

---

[1] Plaintiff also alleges increased Medicaid liens, but such liens would only require satisfaction if plaintiff recovers from defendants, and plaintiff has not explained how he has suffered injury because of payments made by another party. Plaintiff would be entitled to recover under RICO only those amounts that he paid for medical treatment.

as establishing that majority rule did not discuss how the rule applied to payments for unnecessary medical treatment. Defendants have cited only one unpublished case that involved such an injury, *Gotlin ex rel. County of Richmond v. Lederman*, 483 F. App'x 583 (2d Cir. 2012). In *Gotlin*, the plaintiff alleged that the defendants fraudulently misrepresented the efficacy of a particular medical treatment, which caused the victims to undergo therapy unnecessarily. *See id.* at 585. With no analysis, the court upheld the district court's conclusion that the monetary losses for the amounts paid for the treatment were incidental to personal injuries and thus did not confer standing under RICO. *See id.* at 586.

The Court concludes that the Tenth Circuit would most likely follow *Blevins* in this case. *See, e.g.*, *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1232 (10th Cir. 2006) (noting Congress's directive that RICO be liberally construed to effectuate its remedial purposes). Plaintiff's alleged injury in paying for unnecessary treatment did not flow from any personal injury suffered because he received that treatment; rather, the personal injury resulted from his decision to have the allegedly unnecessary treatment in the first place. In addition, the Court rejects defendants' argument that plaintiff has not pleaded sufficient facts to state a plausible claim that he underwent unnecessary medical treatment. Accordingly, defendants' motion to dismiss plaintiff's RICO claims on the basis of a lack of standing is denied to the extent that plaintiff seeks damages consisting of payments that he made for unnecessary medical treatment.

B.     <u>*Enterprise Under 18 U.S.C. § 1962(c)*</u>

Plaintiff has asserted claims under both Section 1962(a) and Section 1962(c) of RICO. Section 1962(c) provides in relevant part as follows:

> It shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

See 18 U.S.C. § 1962(c). "Enterprise" is defined by the Act to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." See id. § 1961(4). The Supreme Court has confirmed that "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001). Defendants argue that plaintiff has not satisfied this distinctness requirement because he generally alleges that all of the defendants formed a single group, acted for each other, and essentially are indistinguishable from each other.

The Court rejects this argument at the pleading stage. Plaintiff has alleged that defendants collectively formed an association-in-fact and thus formed an enterprise under the statute. It is true that plaintiff has alleged that PatientFirst is the alter ego of its two subsidiaries, DH and HPC, and he has alleged that corporate entities are vicariously liable for the acts of Dr. Brannon. Plaintiff has also alleged an "interconnected" and "interwoven" group of defendants. The Supreme Court has held, however, that a corporate enterprise and its employee are distinct from each other for purposes of this requirement, even if the employee is the corporation's sole owner. See id. at 163. Thus, the fact that the parties forming the enterprise may be related by ownership does not necessarily doom

plaintiff's RICO claims.  Defendants cite *Roberts v. C.R. England, Inc.*, 318 F.R.D. 457 (D. Utah 2017), in which the court rejected a RICO claim for lack of distinctness.  *See id.* at 489-90.  In that case, however, plaintiff had alleged that the defendant and the enterprise were alter egos of each other.  *See id.* at 489.  In this case, plaintiff has not alleged that all of the defendants are alter egos of each other.

The Court also rejects OSI's argument that plaintiff's complaint fails to satisfy the requirement in Section 1962(c) that the person have conducted or participated in the enterprise's affairs.  OSI notes that the Tenth Circuit has held that the defendant must have had some part in directing the enterprise's affairs.  *See Safe Streets*, 859 F.3d at 883. Moreover, "a defendant must do more than simply provide, through its regular course of business, goods and services that ultimately benefit the enterprise."  *See id.* at 884 (quoting *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1251 (10th Cir. 2016)).  OSI argues that it simply provided the BGSS device that was implanted in plaintiff during surgery. According to plaintiff's allegations, however, OSI was not simply a disinterested party who did nothing more than supply a good that ultimately benefited the enterprise; rather, plaintiff has alleged that OSI joined with others in a scheme to benefit its owner.  In *Safe Streets*, the Tenth Circuit also reiterated that "the defendant need not have primary responsibility for the enterprise's affairs, a formal position in the enterprise, or significant control over or within the enterprise to be liable under RICO," and that the enterprise member need only have played "a bit part" in conducting the enterprise's affairs.  *See Safe Streets*, 859 F.3d at 883-84 (internal quotations omitted) (quoting *George*, 833 F.3d at

1251).   The Court concludes that plaintiff has alleged sufficient facts to satisfy the

enterprise element of liability under Section 1962(c).[2]

>      *C.      Continuity*

Both Section 1962(c) and Section 1962(a) require a showing of a pattern of

racketeering activity, consisting of at least two predicate acts.   *See* 18 U.S.C. §§ 1961(5),

1962(a), (c).   In order to satisfy this requirement, there must be both a relationship between

the predicate acts and some element of continuity.   *See H.J. Inc. v. Northwestern Bell Tel.

Co.*, 492 U.S. 229, 239 (1989).   The Supreme Court has explained the continuity

requirement as follows:

> "Continuity" is both a closed- and open-ended concept, referring
> either to a closed period of repeated conduct, or to past conduct that by its
> nature projects into the future with a threat of repetition.   It is, in either case,
> centrally a temporal concept---and particularly so in the RICO context, where
> *what* must be continuous, and the *relationship* these predicates must bear one
> to another, are distinct requirements.   A party alleging a RICO violation may
> demonstrate continuity over a closed period by proving a series of related
> predicates extending over a substantial period of time.   Predicate acts
> extending over a few weeks or months and threatening no future criminal
> conduct do not satisfy this requirement:   Congress was concerned in RICO
> with long-term criminal conduct.   Often a RICO action will be brought before
> continuity can be established in this way.   In such cases, liability depends on
> whether the *threat* of continuity is demonstrated.

*See id.* at 241-42 (citations omitted) (emphasis in original).

Defendant OSI argues that plaintiff has not pleaded facts (such as a those involving

other victims) to support a reasonable inference that there is a threat of future violations by

defendants here.   In the above excerpt, however, the Supreme Court made clear that the

---

[2] The Court rejects the argument that the roles of the particular defendants in the
alleged scheme have not been pleaded with sufficient detail.

continuity requirement may be satisfied either by showing an open-ended pattern, with the threat of violations continuing into the future, *or a closed-ended pattern consisting of repeated conduct in the past of sufficient duration*.  Plaintiff has alleged predicate acts occurring over a period of several years with respect to his medical treatment.  Thus, plaintiff has pleaded sufficient facts to meet this requirement.

### D.    Predicate Acts – Mail Fraud and Wire Fraud

In his complaint, plaintiff asserts four types of predicate violations:  mail fraud in violation of 18 U.S.C. § 1341; wire fraud in violation of 18 U.S.C. § 1343; dealing in a controlled substance in violation of 18 U.S.C. § 841 and Kansas statutes; and money laundering in violation of 18 U.S.C. § 1956.  *See* 18 U.S.C. § 1961(1) (defining "racketeering activity" to include particular violations).  Plaintiff alleges that defendants committed mail and wire fraud in billing and accepting payments for unnecessary medical treatments relating to his pain management through prescription medications and to his hip surgery.  Plaintiff also alleges wire fraud based on false advertising with respect to an article in the Kansas City Business Journal concerning the price of surgery using the BGSS device.

OSI argues that it cannot have committed mail fraud or wire fraud because it was not involved in the mailing of the bills or the receipt of payments for plaintiff's treatment. OSI further notes that plaintiff has alleged that "defendants" generally committed the predicate acts.  In a case cited by OSI, however, the First Circuit noted that predicate acts under RICO may include aiding and abetting the listed offenses, s*ee Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1560 (1st Cir. 1994), and this Court has reached the

same conclusion, *see Independent Drug Wholesalers Group, Inc. v. Denton*, 1993 WL 191393, at *3 (D. Kan. May 13, 1993) (Lungstrum, J.).   In addition, a person who "knowingly causes [something] to be delivered by mail" may be guilty of mail fraud, *see* 18 U.S.C. § 1341, and a person causes the mails to be used if he "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended."   *See Pereira v. United States*, 347 U.S. 1, 8-9 (1954); *see also Aetna*, 43 F.3d at 1560 ("plaintiff does not need to prove that each defendant personally used the mails but only that the defendant acted with knowledge that the use of the mails will follow in the ordinary course of business, or acted in circumstances where such use can be reasonably foreseen") (quoting *United States v. Maze*, 414 U.S. 295, 299 (1974)).   Thus, the fact that OSI did not itself send out the bills or receive the payments is not dispositive.

OSI and the other defendants are correct, however, that plaintiff has merely referred to "defendants" generally in alleging these predicate acts, and therefore the particular basis for finding violations by each defendant is unknown.   Plaintiff's RICO claims are therefore subject to dismissal.   *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (plaintiff must give fair notice of the wrongful conduct by each defendant).   Plaintiff is granted leave, however, to amend his complaint to allege how each defendant committed

particular predicate acts (including whether RICO liability is asserted against any defendant only vicariously[3]).[4]

Finally, the Court rejects OSI's argument that the allegedly false statement concerning price in the magazine article represented mere puffery, as the price of the device would have a sufficient basis in fact. OSI also argues that the magazine is the entity that transmitted the article by wire (over the internet); but the wire fraud statute also applies to one who "causes [material] to be transmitted" by wire, *see* 18 U.S.C. § 1343, and OSI has not provided any authority to suggest that it could not have committed wire fraud as a matter of law merely because some other party made the transmission.

### E.     *Predicate Acts – Dealing in a Controlled Substance*

RICO includes in its definition of racketeering activity "dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year;" and "dealing in a controlled substance or listed chemical . . . punishable by any law of the United States." *See* 18 U.S.C. § 1961(1). In his complaint, plaintiff alleges violations of K.S.A. § 65-4123, which prohibits the distribution or dispensing of controlled substances except by valid prescription order. As defendants

---

[3] Until plaintiff makes clear his asserted basis for each defendant's liability, the Court defers ruling on PatientFirst's argument that there cannot be vicarious RICO liability, which issue was not adequately briefed by the parties.

[4] The Court rejects the argument by defendants Garcia and HPC that these frauds have not been alleged with sufficient particularity. Plaintiff has sufficiently identified the particular bills and payments and alleged that they were fraudulent because the treatments were unnecessary.

point out, however, violation of that statute is only a misdemeanor and therefore not punishable by more than one year of imprisonment, as required for treatment as a predicate act under RICO. *See* K.S.A. § 65-4127c.[5]  Accordingly, the Court dismisses plaintiff's RICO claims to the extent based on predicate violations of Kansas law.

With respect to the predicate federal controlled substance offenses, plaintiff has only identified specific conduct by Dr. Brannon, Dr. Garcia, and HPC relating to his receipt of prescription pain medications.  Accordingly, plaintiff's claims against the other defendants are subject to dismissal, although plaintiff may amend his complaint to make clear how each defendant is alleged to have violated federal controlled substance law.[6]

## F.    *Predicate Acts – Money Laundering*

Plaintiff also alleges money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(ii) as predicate acts.  A person violates that statute by conducting a financial transaction involving the proceeds of specified unlawful activity while knowing that the transaction is designed to avoid a reporting requirement under federal or state law.  *See id.*  The specified unlawful activity may include the offenses listed in RICO as possible predicate acts.  *See id.* § 1956(c)(7)(A).  Plaintiff alleges that the "enmeshed relationships between Brannon, OSI, PatientFirst, and [DH] were created in order to avoid or under report" three federal

---

[5] Plaintiff did not respond to this argument in his briefs.

[6] The Court again rejects the argument that plaintiff has not pleaded sufficient facts with respect to the treatments being unnecessary or other details about the particular prescriptions.

reporting obligations, and that "Brannon and OSI, and by extension, PatientFirst, Garcia and [DH] undertook a common scheme" to defraud plaintiff and Missouri Medicaid.

Plaintiff's allegations are not sufficient, however, to allege plausibly a money laundering violation by any defendant.  Specifically, plaintiff has not alleged that any particular defendant knowingly conducted financial transactions involving *proceeds* from specified offenses, with the transactions designed to avoid reporting violations.  It is not enough for plaintiff simply to have alleged reporting violations by Dr. Brannon and OSI. Accordingly, plaintiff's RICO claims are subject to dismissal to the extent based on predicate money laundering violations.  If plaintiff can allege the necessary facts, he is granted leave to amend his complaint to state a cognizable claim based on predicate money laundering by specific defendants.

G.    *Liability Under 18 U.S.C. § 1962(a)*

The title of Count III of plaintiff's amended complaint indicates that plaintiff also asserts a claim under Section 1962(a) of RICO, which provides in relevant part as follows:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

*See* 18 U.S.C. § 1962(a).  Count III contains only the following allegations that appear to be directed to Section 1962(a):

> 132.    Upon information and belief, a portion of the profits derived from the predicate acts of racketeering activity were invested back into OSI, JPI, PatientFirst and [DH].

16

133.    But for these reinvestments, Brannon and OSI would not have been in a position to continue to operate and sell the Titanium Hip Tool which directly and proximately harmed Plaintiff.

Dr. Garcia and HPC argue that plaintiff has not alleged any basis for their liability under Section 1962(a) by these allegations, which mention only the other defendants. Plaintiff has not responded to this argument by Dr. Garcia and HPC, and the Court agrees that these allegations do not state such a claim against those defendants. Accordingly, plaintiff claim under Section 1962(a) against Dr. Garcia and HPC are hereby dismissed.

The Court further concludes that plaintiff has not pleaded sufficient facts to state a claim against the other defendants under this section of RICO. Again, in his briefs, plaintiff has not addressed any argument directed specifically at liability under Section 1962(a), and thus it appears that he has abandoned this claim. Plaintiff has alleged that the use of the device harmed him, but such an allegation suggests personal injury damages, and as discussed above, plaintiff's RICO claims are limited to claims for economic damages for payments actually made by plaintiff for unnecessary treatments.

Moreover, a plaintiff must plead and prove that such damages were caused not by the underlying racketeering activity, but specifically by the defendant's investment of racketeering proceeds in an enterprise. *See Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149-51 (10th Cir. 1989). Plaintiff's bare allegation of reinvestment back into OSI, BPI, DH, and PatientFirst are not sufficient. In *Brittingham v. Mobil Corp.*, 943 F.2d 297 (3d Cir. 1991), the Third Circuit explained why mere reinvestment is not enough:

The causal connection is tenuous at best. The direct cause of plaintiffs' alleged injuries was the fraudulent conduct. Plaintiffs have neither alleged

nor demonstrated a connection with the use or investment of racketeering income other than the normal reinvestment of corporate profits.

If this remote connection were to suffice, the use-or-investment injury requirement would be almost completely eviscerated when the alleged pattern of racketeering is committed on behalf of a corporation. RICO's pattern requirement generally requires long-term continuing criminal conduct. Over the long term, corporations generally reinvest their profits, regardless of the source. Consequently, almost every racketeering act by a corporation will have some connection to the proceeds of a previous act. Section 1962(c) is the proper avenue to redress injuries caused by the racketeering acts themselves. If plaintiffs' reinvestment injury concept were accepted, almost every pattern of racketeering activity by a corporation would be actionable under § 1962(a), and the distinction between § 1962(a) and § 1962(c) would become meaningless.

*See id.* at 305 (citation omitted). Plaintiff has not alleged any facts that would suggest anything other than normal reinvestment of profits here. Plaintiff has alleged only predicate acts involving him as the victim, and he has not alleged facts to support a plausible claim that the reinvestment of profits from treating a single patient allowed Dr. Brannon and OSI to continue to operate long enough for Dr. Brannon to convince plaintiff to have unnecessary hip surgery, when otherwise they would have been unable to do so. Finally, although plaintiff has alleged reinvestment *in* JPI, DH, and PatientFirst, he has not alleged reinvestment *by* those entities, as required for a claim against them. Accordingly, plaintiff's claims under RICO's Section 1962(a) are dismissed in their entirety.

## V. <u>Fraud</u>

### A. *<u>Subsumed in Medical Malpractice Claims</u>*

In Count V of his amended complaint, plaintiff asserts a claim for fraud against all defendants. Plaintiff alleges that Dr. Brannon misrepresented or failed to state facts

relating to whether plaintiff had a particular hip condition; the appropriateness, benefits, and risks of particular surgery for plaintiff; the benefits, superiority, and price of implanting a particular device in that surgery; and Dr. Brannon's conflict of interest arising from his relationship to other defendants. Plaintiff further alleges that, with respect to these misrepresentations and omissions, Dr. Brannon was acting not only individually but also as agent or employee of JPI, OSI, HPC, DH, and PatientFirst. Finally, in a single sentence, plaintiff alleges upon information and belief that "all defendants engaged in the fraudulent distribution of Schedule II narcotics without any legitimate purpose as more fully set forth elsewhere in this Complaint."

Defendants Brannon and JPI argue that plaintiff cannot maintain his fraud claim under Kansas law because the claim is subsumed within plaintiff's medical malpractice and informed consent claims.[7] In *Bonin v. Vannaman*, 261 Kan. 199 (1996), the Kansas Supreme Court held that the plaintiff's fraud claim against his treating physician was more properly considered a claim for malpractice. *See id.* at 210. The court explained:

> It is true that Dr. Vannaman's alleged conduct fulfills all of the elements of fraud by silence . . . . However, Dr. Vannaman's alleged conduct was also proscribed by a legal duty which he had an obligation to uphold. When it is alleged that such a legal duty is violated, the law has classified the cause of action created by this breach as a form of negligence called malpractice, not fraud or breach of contract, even if the violation of such duty also technically fulfills the elements of fraud or breach of contract. [Plaintiff] does not allege a valid claim of fraud against Dr. Vannaman.
>
> This does not mean that a doctor can never be liable for fraud or breach of contract. Instead, this simply means that a fraud or breach of contract cause of action can only be based on a physician's misconduct if that

---

[7] With respect to plaintiff's state-law claims, all parties have applied the law of Kansas, where plaintiff received his medical treatment from defendants.

misconduct is beyond a breach of the legal duty which every doctor has the obligation to uphold.

*See id.* (citation omitted).  The court also repeated its reasoning from an earlier case:

As malpractice covers every way in which a patient is injured through the dereliction of a doctor in his professional capacity, the approach, depending on the facts, can be through any of several familiar forms of action.  But no matter what the approach, it remains an action for malpractice, not one for deceit, contract, or anything else.

*See id.* at 211 (quoting *Noel v. Proud*, 189 Kan. 6, 10 (1961)); *see also Williamson v. Amrani*, 283 Kan. 227, 240 (2007) (*Bonin* and other cases have held that "a plaintiff cannot bring a claim for breach of contract or fraud where the gravamen of the claim is medical malpractice").

In *Kelly v. VinZant*, 287 Kan. 509 (2008), the supreme court applied this rule from *Bonin* in upholding the dismissal of a fraud claim.  *See id.* at 516-19.  After quoting the pertinent language from *Bonin*, the court summed up its application of the rule as follows: "As *Bonin* states, when fraud is a part of the informed consent process, the claim is for malpractice, not fraud."  *See id.* at 518.  Moreover, the court stated that "[t]he conclusion that the claim sounds in medical malpractice, not fraud, does not change even if the fraud vitiates the consent."  *See id.*

In this case, all of the alleged misrepresentations and omissions by Dr. Brannon were made in the context of the informed consent process prior to plaintiff's hip surgery.  Indeed, in Count II of the amended complaint, plaintiff asserts a professional negligence claim against Dr. Brannon, based on a lack of informed consent, based on a failure to disclose facts relating to whether plaintiff had a particular hip condition; the

appropriateness, benefits, and risks of a particular surgical procedure; and Dr. Brannon's financial conflict of interest. Thus, under the rule of *Bonin* and *Kelly*, plaintiff's fraud claim is subsumed within his informed consent claim and is subject to dismissal.

In response to this argument, plaintiff emphasizes that he alleges intentional conduct (not merely negligence) by which interrelated defendants sought to profit. The Kansas Supreme Court has made clear, however, that this rule applies even to conduct that would otherwise satisfy all of the elements of fraud, including intentional conduct. Plaintiff also notes the statement from *Bonin* (repeated in *Kelly*) that a doctor can be liable for fraud in the right circumstances. As an example, plaintiff cites *Robinson v. Shah*, 23 Kan. App. 2d 812 (1997). In that case, the court held that the plaintiff could maintain a fraud claim against a doctor based on the doctor's conduct in concealing his original malpractice, which resulted in the expiration of the statute of limitations for a malpractice action. *See id.* at 824. That case is easily distinguished from the present case, however. In *Kelly*, the supreme court discussed *Robinson* as follows:

> Indeed, there is also Kansas precedent holding that when alleged fraud occurs separately from and subsequent to the malpractice and gives rise to damages separate and distinct from those flowing from the malpractice, a plaintiff is entitled to allege and prove such a cause of action. Typically, these actions arise from fraudulent statements intended to conceal malpractice.

*See Kelly*, 287 Kan. at 518 (citing *Robinson*, 23 Kan. App. 2d 812). In the present case, plaintiff has not alleged fraud occurring after the original malpractice that resulted in harm separate from the harm suffered from the malpractice. Rather, plaintiff has alleged fraud

based on the same facts that form the basis for his malpractice claim, and he has not alleged any separate damages resulting from the fraud.

As set forth by the Kansas Supreme Court, a fraud claim "can only be based upon a physician's misconduct if that misconduct is beyond a breach of the legal duty which every doctor has the obligation to uphold." *See Bonin*, 261 Kan. at 210; *accord Kelly*, 287 at 517. Plaintiff argues that the alleged fraud goes beyond a doctor's normal legal duty, but he has not explained why a doctor would not be required, as a part of the informed consent process, to disclose and state truthfully the matters on which this fraud claim is based. Indeed, in his informed consent, plaintiff asserts just such a duty. As summed up by the supreme court, "when fraud is part of the informed consent process, the claim is for malpractice, not fraud." *See Kelly*, 287 Kan. at 518. The fraud alleged by plaintiff occurred as a part of the informed consent process. Accordingly, plaintiff cannot maintain an action for fraud.

Although plaintiff did not rely on the allegation in arguing that his fraud claim was not subsumed, the Court notes that plaintiff also alleges in this count, in conclusory fashion, that defendants engaged in the fraudulent distribution of narcotics without a legitimate purpose. As a preliminary matter, this allegation, devoid of any details concerning representations or omissions made by any particular defendant, fails to satisfy the requirement that fraud be alleged with particularity. *See* Fed. R. Civ. P. 9(b). In addition, the proper prescription of medication falls within the normal professional duties of

physicians, and thus any fraud claim based on such conduct would be precluded by the rule

from *Bonin* and *Kelly* discussed herein.[8]

### B.    *Immunity Under K.S.A. § 40-3403(h)*

Plaintiff's fraud claims against JPI, HPC, DH, and PatientFirst—and his other state-

law claims against those defendants—fail for an independent reason.  K.S.A. § 40-3403(h)

provides as follows:

> A health care provider who is qualified for coverage under the [health care
> stabilization] fund shall have no vicarious liability or responsibility for any
> injury or death arising out of the rendering or the failure to render
> professional services inside or outside this state by any other health care
> provider who is also qualified for coverage under the fund.

The Kansas Supreme Court has interpreted this statue broadly, holding that the statute

"absolves a health care provider not just from vicarious liability but from any

responsibility, including independent liability, where the injured party's damages are

derivative of and dependent upon the rendering of or the failure to render professional

services by another health care provider."  *See Cady v. Schroll*, 298 Kan. 731, 732, 745

(2014).  Immunity under the statute does not depend on the type of health care provider or

the relationship between providers.  *See id.* at 746.  Nor does immunity depend on the

theory of liability asserted; instead, the focus is on the source or cause of the plaintiff's

injuries.  *See id.* at 746, 747.

---

[8] Plaintiff has not asserted a medical malpractice claim against Dr. Garcia relating
to his prescription of medication for plaintiff (Counts I and II were asserted only against
Dr. Brannon), and the conclusory fraud allegation discussed above does not even mention
Dr. Garcia specifically.  Thus, plaintiff would be required to obtain leave to amend his
complaint to assert such a malpractice claim against Dr. Garcia.

In its various briefs, plaintiff has not disputed that JPI, HPC, and DH are "health care providers" under the Kansas statutes. Plaintiff does argue that PatientFirst is merely a holding company and not really a health care provider. Plaintiff has not cited any law to support that argument, however, and the term is defined by statute to include "a professional corporation organized pursuant to the professional corporation law of Kansas by persons who are authorized by such law to form such a corporation and who are healthcare providers as defined by this subsection." *See* K.S.A. § 40-3401(f).

In opposing application of this statute, plaintiff again argues that he has alleged not only malpractice but also a scheme among many defendants to make money. The alleged scheme, however, was based on the medical treatment and care of plaintiff, and plaintiff has not explained how his claims against these entity defendants do not arise out of another health care provider's rendering of or failure to render professional services. As noted above, the Kansas Supreme Court has directed that the statute be applied broadly, without regard to the particular theory of liability asserted. Accordingly, plaintiff's fraud claims against JPI, HPC, DH, and PatientFirst are dismissed for this reason as well.[9]

## VI.   KCPA

### A.   *Application of Immunity Under K.S.A. § 40-3403(h)*

In Count VI of his amended complaint, plaintiff asserts claims against all defendants other than Dr. Garcia under the Kansas Consumer Protection Act (KCPA), K.S.A. §§ 50-

---

[9] This statute would also apply to any attempt by plaintiff to impose liability on Dr. Garcia for the injuries arising from his treatment by Dr. Brannon and *vice versa*.

623 *et seq.*  In that count, plaintiff alleges that Dr. Brannon, as inventor of the device, engaged in the manufacture, sale, and distribution of products; and that he "individually and through his various entities including OSI, JPI, PatientFirst, [HPC] and [DH]" manufactured, marketed, and sold to plaintiff the BGSS device that he used during the hip surgery on plaintiff.  Plaintiff then alleges that "defendants" engaged in deceptive acts or practices in connection with their consumer transactions with plaintiff (presumably in violation of Section 50-626) through misrepresentations and omissions relating to the suitability and benefits of the BGSS device for plaintiff; the price of the surgery using the BGSS; plaintiff's suffering from a particular hip condition; the suitability, benefits, and risks of the surgery using the device for plaintiff; and Dr. Brannon's conflict of interest from his relationship to the entity defendants.  Plaintiff also alleges that defendants through their conduct engaged in unconscionable acts and practices in violation of Section 50-627. Plaintiff alleges that defendants unfairly and improperly profited from these violations. Finally, plaintiff alleges as follows:

> Plaintiff is not asserting this cause of action against Dr. Brannon personally for personal injuries alleged to have resulted from medical negligence but is restricting this claim to those damages arising from the sale of the Product not sounding in personal injury (i.e. price gauging [*sic*], etc.). To the extent Dr. Brannon was acting as an employee and/or agent of the other defendants, however, plaintiff is seeking all damages against the other defendants to which he is entitled under the [KCPA].

It thus appears from the complaint that, in asserting his claims under the KCPA, plaintiff alleges only affirmative conduct in violation of the Act by Dr. Brannon.  The conduct of which he complains is the same conduct underlying his malpractice and fraud claims, which are based solely on conduct by Dr. Brannon.  Plaintiff certainly has not

25

identified with particularity any affirmative conduct by any of the entity defendants in violation of the statute, as required by Rule 9(b).  *See Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1247 (D. Kan. 2007) ("Allegations of unfair trade practices under the KCPA must be pleaded with particularity in accordance with Rule 9(b).") (citations omitted).[10]  Finally, the above-quoted allegation indicates that his claims against the entity defendants are based on Dr. Brannon's conduct as "employee and/or agent of the other defendants."   Thus, plaintiff asserts only claims of derivative liability against the entity defendants under the KCPA.

As discussed above, however, Section 40-3403(h) provides immunity for JPI, HPC, DH, and PatientFirst against such claims.  Again, these claims arise out of conduct by Dr. Brannon in the informed consent process, and thus they arise out of the rendering of or failure to render professional services by Dr. Brannon, a health care provider.  Plaintiff has not argued that Section 40-3403(h) should not apply to particular state-law claims, and as noted above, the applicability of this immunity does not depend on the theory of liability asserted.  *See Cady*, 298 Kan. at 746, 747.

There is one exception, however, within plaintiff's KCPA allegations.  In addition to the allegedly deceptive or unconscionable conduct cited above, plaintiff's complaint also contains the following allegation (in ¶ 250.e):

> Pursuant to KSA 50-627(b)(2), the price of the BGSS products and procedure charged by the Defendants grossly exceeded the price at which similar

---

[10]  Plaintiff has not disputed that his claims under the KCPA based on misrepresentations and omissions must be pleaded with particularity under Rule 9(b).

products and/or procedures were obtainable in similar transactions by similar customers.

Financial damages resulting from the act of billing plaintiff (or the act of selling a product for a particular price) would arguably fall outside the scope of Section 40-3403(h)'s immunity from liability for "injury or death arising out of the rendering of or the failure to render professional services." Defendants have not addressed the specific application of this immunity to a claim by plaintiff under the KCPA for financial injuries relating to billing or the sale of a product. Thus, the Court will not apply Section 40-3403(h) to that particular KCPA claim at this time. All other claims under the KCPA against JPI, HPC, DH, and PatientFirst, however, are dismissed on the basis of that immunity.

    B.  <u>K.S.A. § 50-635(b)</u>

   Various defendants argue that plaintiff's KCPA claim is precluded by the following provision of the Act:

> The Kansas consumer protection act does not allow for a private cause of action or remedy against a licensed health care provider for causes of action for personal injury or death resulting, or alleged to have resulted, from medical negligence.

*See* K.S.A. § 50-635(b). This statute was added to the KCPA by the Kansas Legislature in 2007 in response to the Kansas Supreme Court's decision in *Williamson v. Amrani*, 283 Kan. 227 (2007). *See Kelly*, 287 Kan. at 522 (this amendment "effectively overruled" *Williamson*); *Stormont-Vail Healthcare, Inc. v. Zoble*, 2010 WL 4157102, at *4 (Kan. Ct. App. Oct. 8, 2010) (unpub. op.) (Kansas Legislature amended the KCPA in response to *Williamson*). In *Williamson*, the plaintiff asserted a claim against her surgeon under the KCPA based on alleged misrepresentations about the benefits and effectiveness of

plaintiff's surgery. *See Williamson*, 283 Kan. at 228. The Kansas Supreme Court held that the physician-patient relationship fell within the scope of the KCPA, and that the rule of *Bonin*—that fraud claims based on the breach of a doctor's professional duty, including claims of fraud occurring in the informed consent process—did not apply to the KCPA, by which the legislature had created a specific statutory cause of action. *See id.* at 240-42.

Thus, by adding Section 50-635(b) to the KCPA, the legislature evinced an intent to preclude claims under the KCPA based on the breach of a doctor's professional duty. As described above, plaintiff has alleged deceptive and unconscionable acts under the KCPA occurring during the informed consent process, consisting of misrepresentations and omissions relating to plaintiff's surgery. Just as such allegations may not support a fraud claim under Kansas law, they also may not serve as the predicate for a claim under the KCPA. Accordingly, the Court dismisses these KCPA claims against Dr. Brannon and the other health care provider defendants (JPI, DH, HPC, PatientFirst). In addition, because plaintiff has asserted a claim against OSI only derivatively based on the conduct of Dr. Brannon, the Court also dismisses the claim against that defendant.

Again, however, there is one exception in the plaintiff's pleading of the KCPA claims—the allegation that the excessive price charged for plaintiff's surgery and the BGSS device constituted an unconscionable act (¶ 250.e). By that allegation, which suggests a purely financial injury, plaintiff has not asserted a claim for "personal injury or death," and thus that claim falls outside the scope of Section 50-635(b). *See Stormont-Vail*, 2010 WL 4157102, at *4 (amendment did not exempt health care providers from coverage under the KCPA for such conduct as pricing of or billing for services).

Accordingly, the immunities provided by Section 40-3403(h) and Section 50-635(b) do not preclude plaintiff's claim under the KCPA against any of the defendants based specifically on the pricing of his procedure. All other KCPA claims against all defendants are dismissed, however.

C.  *Doctors Hospital – K.S.A. § 65-442(b)*

Because DH remains a defendant to a limited claim under the KCPA (based on ¶ 250.e of the amended complaint), the Court addresses DH's argument that it is immune from liability to plaintiff on the state-law claims under K.S.A. § 65-442(b), which provides as follows:

> There shall be no liability on the part of and no action for damages shall arise against any licensed medical care facility by a person because of the rendering of or failure to render professional services within such medical care facility by a person licensed to practice medicine and surgery if such person is not an employee or agent of such medical care facility.

*See id.* DH seeks summary judgment on the issue of the applicability of this statute, on the basis of its CEO's affidavit stating that DH is a licensed medical care facility and that Dr. Brannon (who by contract was an independent contractor through JPI for HPC) was not an employee of DH and merely had privileges there.

Plaintiff argues that consideration of summary judgment on this issue be deferred pursuant to Fed. R. Civ. P. 56(d) so that he may obtain discovery concerning Dr. Brannon's relationship with DH and the other defendants. DH argues in reply that plaintiff has not met the requirements for such a request. The Court need not resolve that issue, however. The statute on which DH relies requires that the practitioner not be an employee *or agent* of the facility. Agency is clearly a broader concept than mere employment, and DH has

provided evidence only that Dr. Brannon was not an employee. Thus, DH has not met its initial burden of establishing the absence of a material fact concerning the application of this statute. *See Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Accordingly, the Court denies DH's motion for summary judgment on this issue.[11]

### D.    *Aggrieved Consumer*

Defendants also argue that plaintiff has not sufficiently alleged that he is an "aggrieved consumer" as required for a private action for damages or civil penalty under the KCPA. *See* K.S.A. § 50-634(b). The "aggrieved consumer" provision requires a causal connection between loss or injury to the plaintiff and a violation of the Act. *See Finstad v. Washburn Univ. of Topeka*, 252 Kan. 465, 473-74 (1993).

In his amended complaint, plaintiff alleges that defendants unfairly profited from their deceptive and unconscionable acts and that he is therefore entitled to damages or a civil penalty. He has *not* alleged, however, that he suffered any injury or loss as a result of any violation of the KCPA. The entirety of plaintiff's KCPA claims are subject to dismissal for this reason as well.

In response, plaintiff argues that he does not merely seek damages in this count but that he also seeks a civil penalty. The KCPA, however, also requires a consumer seeking a civil penalty to have been "aggrieved". *See* K.S.A. § 50-634(b). Plaintiff also argues (but has not alleged in this count) that defendants' violations have caused him to be subject

---

[11] The Court denies plaintiff's conclusory request for an award of fees and costs incurred in responding to DH's motion.

to excessive liens in favor of Missouri Medicaid, which made payments for plaintiff's treatment and surgeries.  As discussed above in the context of the RICO claims, however, such liens would only require satisfaction if plaintiff recovers from defendants.  Plaintiff has not provided authority or explained how he suffered any financial loss (as a result of a billing or pricing violation) based on payments that someone else made for his treatment.

In summary, the only KCPA claim that could survive for plaintiff is one based on unconscionable billing or pricing, but such a claim is also subject to dismissal because plaintiff has not alleged facts to show that he suffered any financial injury from such a violation.  It is not clear that plaintiff could not allege such facts, particularly in light of his allegations elsewhere in the complaint that he did make at least some payments out-of-pocket for his treatment.  Thus, plaintiff is granted leave to amend his complaint to attempt to plead a sufficient claim for this particular KCPA violation.

### E.    *Sale of a Medical Device*

Finally, the Court addresses some defendants' argument that there was no "consumer transaction" here, as required under the KCPA, *see* K.S.A. § 50-627(a), because the BGSS device was sold to DH, not to plaintiff, and that the device is not a consumer good available for purchase by the public.  *See Ellibee v. Aramark Correctional Servs., Inc.*, 37 Kan. App. 2d 430, 432 (2007) ("the KCPA's protection is limited to individuals who directly contract with suppliers for goods or services") (citing *CIT Group/Sales Fin., Inc. v. E-Z Pay Used Cars, Inc.*, 29 Kan. App. 2d 676, 685 (2001)).  With respect to medical devices, defendants rely especially on cases from Ohio interpreting a similar consumer

protection statute. *See, e.g.*, *Smith v. Smith & Nephew, Inc.*, 5 F. Supp. 3d 930, 932 (S.D. Ohio 2014) (citing cases).[12]

The Court notes, however, that the KCPA defines "consumer transaction" to include the sale or disposition not only of property (goods), but also of services. *See* K.S.A. § 50-624(c). Thus, plaintiff could rely on his obtaining medical services from Dr. Brannon as the requisite "consumer transaction" to which the alleged unconscionable practice must relate. Indeed, this makes some sense with respect to the remaining claim based on billing or pricing, as any such billing would be directed to him. Plaintiff's complaint is not clear on this issue, however, as he bases this count on his allegation that Dr. Brannon and the other defendants marketed and sold the BGSS device to plaintiff, and he pleads that he seeks only damages "arising from the sale of the Product" from Dr. Brannon. Accordingly, if plaintiff attempts to amend his complaint to allege sufficient facts to support a KCPA claim based on billing or pricing, he should also make clear the consumer transaction on which he relies. Moreover, to the extent he either relies on a sale of the BGSS device as the pertinent transaction or alleges injury from the sale of the device to him (and the sale

---

[12] Plaintiff suggests that, for purposes of the KCPA, he could be considered a third-party beneficiary of a sale of the device from OSI to DH. Plaintiff relies on *Bohls v. Oakes*, 75 S.W.3d 473 (Tex. Ct. App. 2002), in which the court recognized that a third-party beneficiary could qualify as a consumer of goods or services in certain circumstances. *See id.* at 479. In *Ellibee*, however, the Kansas Court of Appeals rejected a third-party beneficiary argument based on *Bohls* where no representations had been made directly to the plaintiff. *See Ellibee*, 37 Kan. App. 2d at 432-33 (noting that under *Bohls* a relevant inquiry was whether the alleged misrepresentations were made to the plaintiff seeking third-party-beneficiary status). Similarly in this case, plaintiff has not alleged that OSI or DH made any misrepresentations to him concerning OSI's sale of the device to DH, and thus plaintiff would not be entitled to rely on a third-party-beneficiary theory here.

of medical treatment to him), he must allege facts supporting a plausible claim that the device was sold directly to him and not merely to DH for use in his surgery.

## VII.    Civil Conspiracy

In Count IV of the amended complaint, plaintiff asserts a claim for civil conspiracy. That count, however, does not identify the particular cause of action underlying the conspiracy claim. Dr. Garcia and HPC presume that plaintiff is attempting to assert a claim for a conspiracy to violate RICO, and they argue that the conspiracy claim should therefore be dismissed to the same extent that the RICO claims against them are dismissed. In response, plaintiff argues that the conspiracy claim is also based on underlying fraud and KCPA claims. Again, however, the complaint does not make that clear. Accordingly, the conspiracy claim is subject to dismissal, but plaintiff is granted leave to amend the complaint to identify the particular causes of action underlying the conspiracy claim. Of course, in so doing, plaintiff should recognize that such a claim may survive only to the extent that the underlying claims have survived. In this case, that means that there can be no conspiracy claim based on an underlying fraud claim; and a claim based on any underlying KCPA claim would be limited to the narrow theory that plaintiff has been allowed to pursue herein.

## VIII.    Product Liability Claims

In Counts VII and VIII of the amended complaint, plaintiff has asserted claims against all defendants other than Dr. Garcia for breach of the implied warranty of fitness

and for strict liability failure to warn.  Such claims arise out of plaintiff's medical treatment by Dr. Brannon and the informed consent process; therefore, as discussed above, defendants JPI, DH, HPC, and PatientFirst are protected by immunity from such state-law liability, and these claims are therefore dismissed as asserted against those defendants.[13]

Defendant OSI, the alleged manufacturer of the BGSS device that is the subject of these product claims, argues that plaintiff's failure-to-warn claim against it must be dismissed under the learned intermediary doctrine.  As recognized by the Tenth Circuit, Kansas has adopted the learned intermediary rule, under which "the manufacturer's duty to warn its customer is satisfied when the prescribing physician is made aware of the risks and dangers of the product, since the patient cannot obtain the medical product except through the physician."  *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 974 (10th Cir. 2001) (citing *Humes v. Clinton*, 246 Kan. 590 (1990)).

> Where a product is available only . . . through the services of a physician, the physician acts as a "learned intermediary" between the manufacturer or seller and the patient.  It is his duty to inform himself of the qualities and characteristics of those products which he prescribes or administers to or uses on his patients, and to exercise an independent judgment, taking into account his knowledge of the patient as well as the product.  The patient is expected to and, it can be presumed, does place primary reliance upon that judgment.  The physician decides what facts should be told to the patient.  Thus, if the product is properly labeled and carries the necessary instructions and warnings to fully apprise the physician of the proper procedures for use and the dangers involved, the manufacturer may reasonably assume that the physician will exercise the informed judgment thereby gained in conjunction with his own independent learning, in the best interest of the patient.  It has also been suggested that the rule is made necessary by the fact that it is

---

[13] Because the common-law claims against PatientFirst have been dismissed, the Court need not address that defendant's argument for dismissal of those claims based on the statute of limitations.

ordinarily difficult for the manufacturer to communicate directly with the consumer.

*See Humes*, 246 Kan. at 602 (quoting *Terhune v. A.H. Robins Co.*, 577 P.2d 975, 978 (Wash. 1978)), *quoted in part in Ralston*, 275 F.3d at 974-75.

By its terms, this doctrine applies here to OSI. Plaintiff has alleged that Dr. Brannon is the inventor of the BGSS device and the controlling owner of OSI. Thus, plaintiff has alleged no facts to support a plausible conclusion that OSI knew more about the device and its proper use than Dr. Brannon, who as the treating physician chose to use the device in plaintiff's surgery. Accordingly, since the prescribing physician had the same knowledge that OSI had, OSI must have discharged its duty to provide information to Dr. Brannon, the physician, and the doctrine thus precludes this claim as asserted against OSI.

Plaintiff argues that the rule should not apply here because JB and OSI are essentially one and the same. Plaintiff has not cited any authority, however, to suggest that the rule does not apply in such circumstances. Indeed, the rule is *most* apt in such a circumstance as, again, the manufacturer cannot have any more knowledge than the prescribing physician in such case.

The claim is dismissed, however, only to the extent that plaintiff has asserted a direct claim against OSI in this count. Although plaintiff has not alleged facts to support a claim that Dr. Brannon and OSI are alter egos, he has alleged that Dr. Brannon acted as OSI's agent and that OSI is therefore vicariously liable for Dr. Brannon's acts. Thus, although the learned intermediary doctrine shields OSI from direct liability for a failure to warn, plaintiff may still maintain a vicarious claim against OSI.

IT IS THEREFORE ORDERED BY THE COURT THAT the various motions filed by defendants (Doc. ## 85, 87, 106, 108, 131) are **granted in part and denied in part**, as set forth herein.  With respect to certain claims, as more fully set forth herein, plaintiff is granted leave to file, on or before **July 3, 2018**, a second amended complaint, by which he may attempt to cure certain pleading deficiencies.

IT IS SO ORDERED.

Dated this 19th day of June, 2018, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

36