## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHARLES R. LUTTRELL,      )
                                 )
          Plaintiff,     )
                                 )     Case No. 17-2137-JWL-GEB
          v.          )
                                 )
JAMES K. BRANNON, M.D.;   )
ORTHOPEDIC SCIENCES, INC.;  )
JOINT PRESERVATION INSTITUTE  )
OF KANSAS, L.L.C.;     )
DOCTORS HOSPITAL, L.L.C.;   )
MAURICIO GARCIA, M.D.; THE   )
HEADACHE & PAIN CENTER, P.A.;  )
and PATIENTFIRST HEALTHCARE  )
ALLIANCE, P.A.,      )
                                 )
          Defendants.   )

## DEFENDANT OSI'S MEMORANDUM
## IN SUPPORT OF ITS MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 8, 9, and 12(b)(6), Defendant Orthopedic Sciences, Inc. ("OSI"), submits this memorandum in support of its Motion to Dismiss, which seeks dismissal of Count III (the RICO claim) and Count VI (the KCPA claim) of the Second Amended Complaint ("SAC") (Doc. 151). As was true prior to the SAC's filing, and remains true now, this case is, at best, a medical-malpractice and products-liability case. Earlier, OSI and the other Co-Defendants sought, among other things, dismissal of Counts III and VI. While the Court granted Defendants' request, it allowed Plaintiff to amend his RICO and KCPA allegations, which Plaintiff has since done. As shown below, Plaintiff's amendments do not cure the challenged claims' deficiencies. Accordingly, Counts III and VI of the SAC should now be dismissed with prejudice.

In addition to the arguments contained herein, OSI also adopts and incorporates by reference the issues and arguments raised by all other motions to dismiss filed by the other Co-Defendants to the extent they are not inconsistent.

## I.    Procedural History

Initially, Plaintiff filed a twelve-page complaint that asserted seven state-law causes of action—one of which was a KCPA claim. (*See generally* Doc. 1). Plaintiff later amended his complaint to add new allegations, new defendants, and new claims, including a RICO claim, which caused the complaint to swell to sixty-eight pages. (*See generally* Doc. 84).

Recognizing that the first amended complaint ("FAC") failed to plausibly allege RICO and KCPA claims, OSI and the other Co-Defendants filed motions to dismiss. (*See generally* Docs. 85, 87, 106, 108, & 131). In the memorandum supporting its motion, OSI argued, among other things, that the RICO claim was infirm because Plaintiff had failed to adequately allege (1) that a § 1962 violation had occurred, (2) that Plaintiff had suffered a cognizable injury, and (3) to the extent that a cognizable injury was adequately alleged, that OSI had caused it. (*See generally* Doc. 86, pgs. 6–24). With respect to the KCPA claim, OSI argued that it was not plausible because Plaintiff had not adequately alleged that he was a consumer engaged in a consumer transaction for the sale of a consumer good. (*See generally* Doc. 86, pgs. 24–28).

Overall, the Court agreed that Plaintiff's RICO and KCPA claims were deficient in their then-current form and should be dismissed. Regarding the RICO claim, to the extent that it was based on 18 U.S.C. § 1962(c), the Court found that Plaintiff had adequately alleged an enterprise and cognizable injury (out of pocket expenses), (*see* Doc. 149, pgs. 5–11), but had failed to plausibly plead the existence of predicate acts, (*see* Doc. 149, pgs. 12–16). Due to the latter finding, the Court did not reach OSI's causation argument. As for the KCPA claim, the Court concluded that Plaintiff had not adequately alleged that he was a proper party to bring a KCPA claim because he had not alleged that he was aggrieved by Defendants' alleged acts. (*See* Doc. 149, pg. 31). In light of this conclusion, the Court did not go on to decide whether Plaintiff had

been part of a consumer transaction or whether the Bone Graft Stabilization System ("BGSS") was a consumer good. Thinking it possible that Plaintiff may be able to cure the identified deficiencies, the Court granted Plaintiff leave to amend his RICO claim to the extent that it was based on § 1962(c),[1] as well as his KCPA claim.

Since the Court's ruling, Plaintiff has filed the SAC, which adds another twenty-two pages of allegations. Despite the SAC being ninety pages in length, it still fails to adequately allege a RICO or KCPA claim for the reasons that follow.

## II.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a claim must be plausible, which means that it must contain enough factual content to enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding a motion to dismiss, the Court must accept the complaint's well-pleaded allegations as true and construe them in the light most favorable to the plaintiff. *See Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002). However, conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681. Furthermore, when alleging RICO predicate acts that are based on fraud, a plaintiff must also plead with the level of specificity required by Fed. R. Civ. P. 9(b). *See, e.g.*, *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989–90 (10th Cir. 1992). At bottom, a plaintiff's well-pleaded allegations must raise the right to relief above the speculative level in order to meet the threshold pleading standard. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

---

[1]    In its earlier order, the Court dismissed with prejudice Plaintiff's RICO claim to the extent that it was based on § 1962(a). (*See* Doc. 149, pgs. 16–18).

### III.   Argument

The SAC does not plausibly plead a RICO or a KCPA claim against OSI. Regarding the RICO claim, it fails because Plaintiff does not adequately allege the enterprise element, that OSI committed a predicate act, or that a causal connection exists between the alleged predicate acts and Plaintiff's only cognizable injury—out of pocket expenses.[2] Similarly, the KCPA claim fails because Plaintiff does not constitute a consumer for KCPA purposes nor was he part of a consumer transaction involving a consumer good.

**RICO**

Plaintiff's RICO claim is based on 18 U.S.C. § 1964(c). "To maintain a cause of action under § 1964(c), a plaintiff must plead and ultimately prove: (1) that the defendant violated § 1962; (2) that the plaintiff's business or property was injured; and (3) that the defendant's violation is the cause of that injury." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017). A defendant violates § 1962(c) if he "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity [i.e., predicate acts]." *Id.* at 882. Significantly, "[t]he requirements of § 1962(c) must be established as to each individual defendant." *Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008).

### A.   The SAC does not adequately allege a violation of § 1962(c) because it does not plausibly plead the existence of an enterprise.

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161

---

[2]     OSI does not concede that out of pocket expenses stemming from personal injury create a viable cause of action under RICO, but acknowledges that this Court has found differently.

(2001). There appear to be at least two recognized ways in which a plaintiff can run afoul of the distinctiveness requirement. The first, which the Court declined to entertain in its earlier order, is by asserting a RICO claim against parties that have "overlapping ownership, management, and finances" to such a degree that the defendants are essentially alter egos of each other. *See, e.g., Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 484–90 (D. Utah. 2017). The second way is when "the 'enterprise' [the plaintiff] specified in his complaint is simply the [same] group of individual defendants accused of engaging in the racketeering." *Switzer v. Coan*, 261 F.3d 985, 992 (10th Cir. 2001); *Zavala v. Wal-Mart Stores, Inc.*, 447 F. Supp. 2d 379, 382–83 (D.N.J. 2006) ("If the members of the enterprise are the same as the persons, the distinctness requirement has not been met, as the person and the enterprise must not be identical.").

The Tenth Circuit has been clear that the enterprise must be separate from the pattern of racketeering itself, and distinct from the persons engaging in it. *Ad-X Int'l, Inc. v. Kolbjornsen*, 97 F. App'x 263, 266–67 (10th Cir. 2004) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981); *Cedric Kuschner Promotions, Ltd.*, 533 U.S. at 161–62). Here, the identified "persons" and alleged members of the enterprise are the same. In paragraph 186 of the SAC, Plaintiff asserts that "[e]ach and every Defendant is a culpable person." In paragraph 141, Plaintiff declares that "Defendants formed an enterprise and associations-in-fact with each other." Therefore, "because no defendants exist separate from the alleged enterprise," and because there are no factual allegations that the enterprise itself existed or acted separate from the persons who prescribed the drugs, performed the surgery, or sold the BGSS, Plaintiff has failed to adequately allege an enterprise capable of supporting a § 1962(c) claim. *F/V Robins Nest, Inc. v. Atl. Marine Diesel, Inc.*, No. 92-3900, 1994 WL 594592, at *6 (D.N.J. Oct. 24, 1994). Furthermore, because "[t]his pleading failure is not an omission that can be remedied by amendment; rather, it is

5

woven into the fabric of the Second Amended Complaint, and c[an]not be removed without restructuring the entire RICO theory," the RICO claim must be dismissed with prejudice on the ground that it does not plausibly allege the enterprise element. *Zavala*, 447 F. Supp. 2d at 384.

Alternatively, RICO liability "depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their *own* affairs." *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 163. The transaction at the heart of Plaintiff's RICO claim involved two doctors (Brannon and Garcia) who prescribed pain medication, (*see, e.g.*, Doc. 151, ¶¶ 27, 29, 30, 47, 61, 94, 119, 208, 209, & 251), one of whom (Brannon), performed hip surgery on March 4, 2015, (*see e.g.*, Doc. 151, ¶¶ 25, 26, 36, 37, 40, 41, 52, 56, & 95) at a hospital (Doctors Hospital), (*see e.g.,* Doc. 151, ¶¶ 36 and 40), by implanting a medical device (BGSS) sold to a hospital (Doctors Hospital) (*see, e.g.*, Doc. 151, ¶¶ 22, 40, 41, & 220), by a manufacturer (OSI), (*see e.g.*, Doc. 151, ¶¶ 22, 25, & 40).

There are no factual allegations that the association-in-fact alleged in paragraphs 60, 91, 118, 141, and 160 of the SAC did anything as an enterprise, whether described as an association-in-fact or an entity. This includes the surgeries performed, the bills sent, and the recommendations made, none of which were factually alleged to have been performed, sent, or made by the enterprise itself, rather than an assortment of individual actors who are alleged to have made up the enterprise. At least in *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017), the Marijuana Growers conceded that they had agreed to grow marijuana for sale at 6480 Pickney Road adjacent to the plaintiff's land. *Id.* at 880 & 884. In other words, the entity itself, the association-in-fact, agreed to and did grow the marijuana for sale at a specific location adjacent to plaintiff's property. In contrast, all of the Defendants involved in this case are alleged to have conducted separate acts in furtherance of their own legitimate business

interests. These legitimate business interests are wholly independent of the "enterprise's affairs" or the RICO conspiracy as alleged by Plaintiff.

As a result, Plaintiff's RICO claims fail for both lack of distinctiveness and the failure to allege that OSI either conducted or participated in the "enterprise's affairs" separate from its own affairs, medical device manufacturing.

**B.  The SAC does not adequately allege a violation of § 1962(c) because it does not plausibly plead the occurrence of predicate acts.**

Plaintiff contends that OSI violated § 1962(c) by engaging in the following racketeering activities: (1) mail fraud, (2) wire fraud, (3) money laundering, and (4) fraud relating to controlled substances in violation of 18 U.S.C. § 1961(1)(D). As a procedural matter, the SAC includes a number of factual allegations that relate to events that occurred at least four years before when the SAC was filed. (*See* Doc. 151, ¶¶ 64, 123, 204, 209, & 220). To the extent that these events were not timely pled, they cannot form a basis for RICO liability, and claims based upon them should be dismissed with prejudice. *See, e.g.*, *Dummar v. Lummis*, 543 F.3d 614, 621 (10th Cir. 2008) (stating that a four-year limitations period applies to civil-RICO claims starting on the date of injury). Accordingly, Plaintiff's additional allegations to support his RICO claims from September 25, 2012 through December 30, 2013 must be dismissed because they are barred. Turning now to the substance of the predicate acts, they are not plausibly alleged.

**1.  The mail and wire fraud allegations are not pled with particularity.**

Starting with Plaintiff's mail and wire fraud allegations, they are subject to "[t]he particularity requirement of Rule 9(b)," which means that the SAC must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). Despite OSI's pointing out in its initial motion to dismiss that the FAC failed to meet this

standard, (*see* Doc. 84, pgs. 13–16), the SAC still does not satisfy Rule 9(b)'s requirements. While the SAC does allege the specific dates that bills were purportedly sent to Missouri Medicaid, (*see* Doc. 151, ¶¶ 209 & 220), it is silent about, among other things, what exactly the bills were for. As for the bills that were purportedly sent to Plaintiff, the SAC alleges even less. Other than saying that Defendants "submitted . . . bills directly to Plaintiff for office visits which concluded with prescriptions for narcotic pain medication which was not medically indicated and beyond prescribing practices [and for medical treatment which ultimately culminated with the implantation of the BGSS]," (Doc. 151, ¶¶ 211 & 222), the SAC does not allege any date that such bills were sent or anything else specific to them. Likewise, to the extent that Plaintiff's wire fraud theory is based on the wiring of money, it fails to meet Rule 9(b)'s particularity standard because the SAC offers nothing specific about any purported wire. (*See* Doc. 151, ¶¶ 223–33). Accordingly, all of Plaintiff's mail and wire fraud allegations (except those relating to his internet advertising theory (*see* Doc. 151, ¶¶ 234–41)) fail to meet the requisite particularity standard. *See, e.g.*, *Gamble v. Overton*, No. 05-192, 2007 WL 9707043, at *6 (D. Wyo. Nov. 8, 2007) (dismissing a RICO claim based on "general allegations claiming that wire and mail fraud occurred" because, among other things, "the [c]omplaint [wa]s silent as to the specific dates of the fraudulent billing [and] the content of the transmissions").

### 2. The money laundering allegations do not adequately allege laundering of money.

Plaintiff's money laundering allegations are equally as deficient. It is not enough to allege that OSI received ill-gotten gains. Plaintiff must also allege that OSI attempted to hide such gains by structuring a transaction in such a way so as "to conceal or disguise . . . the source . . . of the proceeds of specified unlawful activity" or "to avoid a reporting requirement under State or Federal law." 18 U.S.C. § 1956(a)(1). Plaintiff appears to be attempting to assert both a

concealment and an avoidance theory, alleging that Defendants "mov[ed] money from one individual/organization to another individual/organization for the purpose of concealing the source of funds which were proceeds collected from Plaintiff and Plaintiff's Missouri Medicaid for unnecessary medical treatment," (Doc. 151, ¶ 290), and that OSI attempted to avoid federal law reporting requirements by "[mis]characterizing its illicit payment back to Brannon as a 'loan.'" (Doc. 151, ¶ 285).

Regarding Plaintiff's concealment theory, it fails because it is nothing more than "a formulaic recitation of the elements of a [money laundering claim]." *Bell Atl. Corp.*, 550 U.S. at 555. Most notably, the SAC does not describe how OSI attempted to conceal the source of the so-called ill-gotten gains. Merely stating that money was moved from one party to another does not suffice because such an allegation is just another way of stating the conclusion that the parties engaged in a financial transaction. Furthermore, because money laundering is not a continuing offense, the SAC needs to provide some factual content about the particular transactions that Plaintiff believes constitute attempts to conceal the source of the allegedly laundered proceeds, which it does not do. *Cf. United States v. Marshall*, 248 F.3d 525, 540 (6th Cir. 2001) (stating that financial transactions need to be reviewed individually); *United States v. Kramer*, 73 F.3d 1067, 1072–73 (11th Cir. 1996) (same). In short, the SAC lacks the factual allegations necessary to push Plaintiff's concealment theory from conceivable to plausible. Accordingly, it should be dismissed.

The same is true for Plaintiff's avoidance theory. The fundamental problem with this theory is that the SAC provides no plausible basis for the Court to conclude that OSI's loan to Dr. Brannon, which was reported to the Centers for Medicare and Medicaid Services ("CMS") and catalogued on CMS's website, is anything other than a loan. For instance, Plaintiff does not

allege that Dr. Brannon was not required to pay the money back or that OSI's payment to Dr. Brannon lacked the typical characteristics of a loan. Thus, it is clear that this theory is based on nothing more than speculation and conjecture, which is insufficient to get a claim past a motion to dismiss. *See, e.g.*, *Rhodes v. Dollar General Corp.*, No. 11-2690, 2012 WL 5398000, at *3 (D. Kan. Nov. 2, 2012) ("Allegations that raise the specter of mere speculation are not enough." (citation omitted)). In addition, this Court previously determined that Plaintiff's FAC failed to allege that OSI knowingly conducted financial transactions involving proceeds from specified offenses to avoid reporting violations. (*See* Doc. 149, p. 16). None of Plaintiff's allegations in his SAC articulate a violation of a reporting obligation, nor do they explain how any of the transactions were designed to avoid a reporting obligation.

In addition, the SAC fails to allege sufficient facts to show that OSI produced ill-gotten gains constituting "specified unlawful activity" for purposes of § 1956. Under the money laundering statute, only "specified unlawful activit[ies]" are actionable. *See* 18 U.S.C. § 1956(a)(1). To be considered a "specified unlawful activity," an act must fall into one of the lists set forth in § 1956(a)(7). Here, none of the statutes that Plaintiff cites and alleges for his money laundering claim—42 U.S.C. § 1320a-7h, 42 U.S.C. § 1320a-7b, and 42 U.S.C. § 1395nn—falls within the enumerated categories,[3] which provides yet another basis for dismissing Plaintiff's Count III claim. Plaintiff's pleading deficiency of "specified unlawful activity" is apparent in his pleadings. He alleges Defendants engaged in financial transactions involving moving money from one individual or organization to another individual or organization for the purpose of concealing funds. (Doc. 151, ¶ 290). However, Plaintiff utterly

---

[3]     Section 1956(c)(7)(F) states that "any act or activity constituting an offense involving a Federal health care offense" is an "unlawful activity" for purposes of the money laundering statute. However, "Federal health care offense" is defined at 18 U.S.C. § 24(a) and it does not include any of the statutes cited by Plaintiff. Thus, section 1956(c)(7)(F) is of no help to the SAC.

fails to cite or show a violation of a reporting requirement that would give rise to any allegation supporting the concealment of funds. Accordingly, Plaintiff's money laundering predicate act should be dismissed, and his Count III RICO claim fails.

### 3. The SAC fails to plausibly show that OSI committed any fraud in relation to a controlled substance.

As for Plaintiff's fraud relating to controlled substances allegations, they too are subject to dismissal on plausibility grounds. Plaintiff concedes that OSI, a medical device manufacturer, had no direct hand in prescribing any controlled substances to him. (*See* Doc. 151, ¶ 251 (setting forth a list of Defendants who prescribed Plaintiff controlled substances, of which OSI is not part)). Plaintiff instead relies on the allegations in the following two paragraphs to show that OSI committed an offense dealing with a controlled substance, in violation of 18 U.S.C. § 1961(1)(D):

> 254. As more fully described in the mail fraud allegations portion of the RICO claim, PatientFirst, Doctors Hospital, JPI and OSI committed predicate acts in violation of federal controlled substance law by directly participating in the billing of Missouri Medicaid and Plaintiff for office visits where controlled substances were prescribed for a non-legitimate purpose, specifically excessively billing Plaintiff and Plaintiff's Missouri Medicaid and make [sic] Plaintiff more susceptible to pressure to undergo expensive and unnecessary surgeries. Those allegations are hereby incorporated by reference.

> 256. JPI and OSI's violations of federal controlled substance law are in reference to their aiding and abetting of the fraudulent billing for unnecessary medical treatment were [sic] narcotic medications were prescribed The allegations contained in the mail fraud section of this RICO claim are hereby incorporated by reference.

Paragraphs 254 and 256 do not have the effect that Plaintiff desires. The controlled substance allegations are merely a regurgitation of the mail fraud allegations that were insufficient to plead mail fraud because they lacked the requisite particularity. The result is no different simply because the allegations are moved from the § 1961(1)(B) context (mail fraud)

and dropped into the § 1961(1)(D) context. *See, e.g.*, *De Wit v. Firstar Corp.*, 879 F. Supp. 947, 975 (N.D. Iowa 1995) (applying Rule 9(b) to allegations that were based on fraud and a purported violation of § 1961(1)(D)); *Harrision v. Enventure Capital Group, Inc.*, 666 F. Supp. 473, 478 (W.D.N.Y. 1987) (same). As a result, Plaintiff's controlled substances theory should also be dismissed.

### 4. The SAC's use of "Upon information and Belief" is inappropriate and fails to plausibly show that OSI committed any fraud in relation to his predicate acts under RICO.

The Tenth Circuit has long held that where the plaintiff's allegations are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir.2008) (*quoting Twombly*, 550 U.S. at 570). In this case, Plaintiff has used broad sweeping general language "Upon information and belief" to show alleged violations of various predicate acts under RICO. (Doc. 151, ¶¶ 211 & 222). None of these allegations provides substantive pleading, but, rather, they consist largely of conclusory allegations that are wholly inappropriate when alleging "Upon information and belief" without factual support. *Dorf v. City of Evansville*, No. 11-CV-351-S, 2012 WL 1440343, at *4 (D. Wyo. Apr. 22, 2012), *aff'd sub nom. Dorf v. Bjorklund*, 531 F. App'x 836 (10th Cir. 2013). Accordingly, Plaintiff cannot use "Upon information and belief" as a crutch to support his inability to substantively plead a factual basis for the predicate acts of his RICO claim.

### C. Even if a § 1962(c) violation has been alleged, Plaintiff's RICO claim must still be dismissed because causation is lacking between Plaintiff's cognizable RICO injury and each of his alleged predicate acts.

In its earlier order, the Court limited Plaintiff's RICO injury to just the "amounts that [Plaintiff] paid out of pocket for unnecessary medical treatment." (Doc. 149, pg. 7). Therefore, in

order to have a viable RICO claim, the SAC must show the alleged predicate acts "not only w[ere] a 'but for' cause of [Plaintiff's out-of-pocket expenses], but w[ere] the proximate cause as well." *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (citation omitted). When evaluating RICO causation, "the central question [that the Court] must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (2006). Applying that standard here, it is clear that the SAC falls well short of what is needed to adequately plead causation.

### 1. The SAC fails to allege that Plaintiff made any payment based on a bill mailed to him.

There is no connection between the alleged mail fraud predicate acts and Plaintiff's cognizable injury. Despite OSI's pointing out in its initial motion to dismiss that the FAC failed to show that any of the purportedly mailed bills directly injured Plaintiff (*see* Doc. 86, pg. 22), the SAC still makes no allegation that Plaintiff actually paid any amount based on a bill that he, or even Missouri Medicaid for that matter, received. While it may be sufficiently alleged that Missouri Medicaid may have been injured from Defendants' alleged mail fraud, Plaintiff has failed to adequately allege that he was directly injured. The fact that Plaintiff has failed to overcome this inadequacy, in spite of OSI's flagging of the issue, makes it clear that the causal gap between Plaintiff's mail fraud allegations and his cognizable injury cannot be bridged because, if it could, it would have already been done. Accordingly, Plaintiff's mail fraud theory should be dismissed and leave to amend should not be granted.

### 2. Plaintiff made no wire payment nor did he rely on any advertisement transmitted over the internet.

As alluded to above, there are two different sets of allegations for this theory: (1) allegations relating to the alleged wire transfer of money; and (2) allegations relating to the

transmission of advertising materials over the internet. Neither set is capable of sustaining a RICO claim. Beginning with the transfer of money allegations, they fail because they are based on money that Missouri Medicaid allegedly wired to Defendants. (Doc. 151, ¶ 233). Again, the allegations suggest that Missouri Medicaid may have been injured by Defendants' alleged conduct, but they do not plausibly show that Plaintiff sustained a cognizable injury under RICO. Similarly, the SAC fails to show that OSI's transmission of advertising materials injured Plaintiff. As pointed out in OSI's initial motion to dismiss, Plaintiff's advertising allegations are flawed because they do not allege that Plaintiff actually viewed the advertising materials and relied upon them. (*See* Doc. 86, pg. 22). The SAC does nothing to fix this previously-identified flaw. Accordingly, dismissal without leave to amend is warranted.

### 3. To the extent Plaintiff was injured, such injury was due to the underlying medical treatment, not the alleged money laundering.

Plaintiff's money laundering theory should also share the same fate. The causal connection breaks down because Plaintiff's alleged injury arises from the medical treatment that he received, not the alleged subsequent acts of laundering the proceeds from such treatment. *See Oki Semiconducter Co. v. Wells Fargo Bank, Nat'l Assoc.*, 298 F.3d 768, 774 (9th Cir. 2002) (finding that causation was lacking because "[t]he direct and proximate cause of Oki's loss was not Tran's money laundering at Wells Fargo; it was theft"). As a result, Plaintiff's RICO claim cannot be based on a money laundering theory.

### 4. Any allegations concerning OSI's involvement with controlled substances did not directly injure Plaintiff.

The SAC does not plausibly show that OSI's alleged involvement with controlled substances was the cause of Plaintiff's out of pocket expenses. The only alleged connection between OSI and controlled substances is that OSI played some undefined role in having bills for

"unnecessary medical treatment" mailed out. (*See* Doc. 151, ¶ 256). However, the SAC does not allege that Plaintiff made any payment based on a bill that was purportedly mailed to him. Therefore, RICO liability against OSI cannot be predicated based on the distribution of allegedly unnecessary medication.

## KCPA

The KCPA provides consumers protection from suppliers who commit deceptive acts or unconscionable practices in connection with a consumer transaction. *See* K.S.A. 50-626(a) and 50-627(a). In its earlier order, the Court dramatically reduced the scope of Plaintiff's KCPA claim by limiting it to just the extent that the price for the BGSS product and/or related joint preservation procedure "grossly" exceeded the price at which similar products and/or procedures can be obtained in similar transactions by similar consumers. (*See* Doc. 149, pgs. 29 & 31). The Court dismissed Plaintiff's KCPA claim because Plaintiff "ha[d] not alleged facts to show that he suffered any financial injury from [any unconscionable billing or pricing practice]." (Doc. 149, pg. 31). As discussed below, the SAC fails to cure this deficiency, plus it fails to show that Plaintiff engaged in any consumer transaction with OSI. Accordingly, the KCPA claim should now be dismissed with prejudice.

### A.  Plaintiff is not an aggrieved consumer for KCPA purposes.

To bring a KCPA action, a consumer must have suffered some loss or injury as a result of the defendant's violation of the KCPA. *See, e.g.*, *Finstad v. Washburn Univ. of Topeka*, 252 Kan. 465, 473–74 (1993). Here, the only possible KCPA violation that occurred was the alleged charging of a grossly excessive price for the BGSS and/or the related medical procedure. *See* K.S.A. 50-627(b)(2). Therefore, to have a plausible KCPA claim, Plaintiff must plead facts

sufficient to enable this Court to reasonably infer that Plaintiff paid more than he otherwise would have had the BGSS and/or related medical procedure cost less.

Plaintiff has not met his pleading requirement. While the SAC does allege that Plaintiff "was forced to pay co-pays, medical costs, and other out-of-pocket expenses," (Doc. 151, ¶ 357), it offers the Court no basis to conclude that these payments were more than Plaintiff would have otherwise paid had the BGSS not been implanted or the joint preservation procedure not performed. In other words, the SAC provides this Court with no baseline to determine if a cognizable KCPA loss actually occurred because it does not allege how much a different medical device and/or procedure would have cost Plaintiff *personally* in co-pays, medical costs, and other out-of-pocket expenses, which is necessary because Plaintiff was not the only payor. (*See* Doc. 151, ¶ 320 (admitting that "[a] majority of the cost of the hip surgery was paid from . . . Missouri Medicaid")). In light of this deficiency, Plaintiff has failed to adequately allege that he was injured due to the alleged excessive cost of the BGSS and/or related medical procedure and the KCPA claim should be dismissed on that ground.

**B. Plaintiff has not adequately alleged that he was part of a "consumer transaction."**

In its earlier order, the Court identified two possible KCPA transactions in this case: one, the sale of the BGSS; and two, the performance of the joint preservation procedure. (Doc. 151, pgs. 32–33). Although it is not entirely clear from the SAC which of the two possible transactions Plaintiff is relying upon, it ultimately does not matter because both are insufficient to support a KCPA claim against OSI.

1. **The transaction relating to the sale of the BGSS does not support a KCPA claim.**

This theory is deficient for two reasons. First, the BGSS is not a consumer good for purposes of the KCPA. To constitute a consumer good, a product must be "for personal, family, household, business or agricultural purpose." K.S.A. 50-624(b). As recognized by several courts, medical devices do not fit into any of the enumerated categories.[4] For instance, in Ohio, a state that has a consumer protection statute similar to the KCPA, a number of courts have found that a medical device is not a "consumer good" for consumer protection statute purposes. *See Smith v. Smith & Nephew, Inc.*, 5 F. Supp. 3d 930, 932 (S.D. Ohio 2014) (concluding that plaintiff's claim failed because defendant's hip replacement system was not a "consumer good" and the hospital, not plaintiff, was the "consumer" for purposes of the act because it purchased the system); *Williams v. Boston Scientific Corp.*, No. 12-1080, 2013 WL 1284185, at *6 (N.D. Ohio Mar. 27, 2013) (finding that plaintiff's claim failed because the vaginal sling placed in plaintiff was not a "consumer good" and the hospital, not the plaintiff, was the consumer); *Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 798 n.2 (N.D. Ohio 2012) (stating that a needle-free flu injector was not a "consumer good" because it was not a good for personal, family or household use).

Similarly, the Second Circuit, in interpreting the Vermont Consumer Protection Act, held that a plaintiff was not a "consumer" under the Act because the purchase of a prescription medical device, not available for consumer purchase for use, did not equate to "personal use." *Otis-Wisher v. Medtronic, Inc.*, 616 F. App'x 433, 435 (2nd Cir. 2015). Other courts have also

---

[4] The KCPA is based on the Uniform Consumer Sales Practices Act ("UCSPA")—as such, the Kansas Supreme Court has relied upon other state courts' interpretations of their respective consumer protection acts based on the UCSPA for purposes of interpreting the KCPA. *See Williamson v. Amrani*, 283 Kan. 227, 239, 152 P.3d 60 (2007) *superseded by statute on other grounds as stated in Kelly v. VinZant*, 287 Kan. 509, 520–22, 197 P.3d 803 (2008).

adopted this reasoning and held that the recipient of a medical device or product was not to be considered a "consumer" under the applicable statute because the device or product was not actually purchased by the plaintiff, but, rather, was "used by a practitioner as part of a professional service." *Hogan v. The Md. State Dental Ass'n*, 843 A.2d 902, 906–07 (Md. Ct. Spec. App. 2004); *see also In re Minn. Breast Implant Litig.*, 36 F. Supp. 2d 863, 876 (1998) (breast implants are not "consumer products" for purpose of the Magnuson-Moss Act ("MMA")); *Goldsmith v. Mentor Corp.*, 913 F. Supp. 56, 63 (D.N.H. 1995) (testicular prosthesis is not a "consumer product" for purposes of the MMA); *Kemp v. Pfizer, Inc.*, 835 F. Supp. 1015, 1024–25 (E.D Mich. 1993) (prosthetic heart valve is not a "consumer product" for purposes of the MMA).

Here, it is obvious that the BGSS is a medical device. Not only is this fact easily gleaned from the SAC, but Exhibit O to the SAC confirms this as well. As a result, the BGSS should not be viewed as a "consumer good," and, thus, any transaction relating to it should not be treated as a "consumer transaction."

Even if the BGSS were viewed as a "consumer good" (which it should not be), the sale of the BGSS in this case does not support a KCPA claim. As noted by the Court in its earlier order, the reason for this is that Plaintiff is a mere third-party beneficiary of the transaction between Doctor's Hospital and OSI. (*See* Doc. 149, pg. 32, n.12). While it is true that the SAC, unlike the FAC, states that "OSI sold the BGSS directly to Plaintiff," (Doc. 151, ¶¶ 182, 271 & 352), this allegation is simply not plausible and should be ignored. Medical devices are not like car parts. A person cannot buy them online or in-person and then take the part to their doctor (mechanic) to have them installed. As stated on page six of Exhibit O to the SAC, "Federal Law (USA) restricts [the BGSS] to sale by or on the order of a physician." Accordingly, Plaintiff could not

have been "directly in contract with the [BGSS's] supplier," which is what is needed for a KCPA claim to survive a motion to dismiss. *Krause v. Nationstar Mortg., LLC*, No. 15-2682, 2015 WL 4041662, at *2 (D. Kan. July 1, 2015); *accord Kaster v. Intrust Bank*, 569 F. App'x 593, 599 (10th Cir. 2014) (stating that the KCPA's "protection is limited to individuals who directly contract with suppliers for goods or services" (internal quotation marks and alteration in original omitted)); *Hayes v. Find Track Locate, Inc.*, 60 F. Supp. 3d 1144, 1151 (D. Kan. 2014) (same). Therefore, dismissal with prejudice is in order.

### 2. The transaction relating to the joint preservation procedure cannot support a KCPA claim against OSI.

The SAC alleges that "Defendant JPI sold the joint preservation procedure directly to Plaintiff by and through its agent, employee and owner, Brannon." (Doc. 151, ¶ 353). Thus, as the SAC makes clear, Plaintiff alleges that it was JPI, not OSI, that was involved with the transaction for the related medical procedure. Accordingly, OSI could not have been in a contractual relationship with Plaintiff for that transaction. Therefore, the transaction relating to the surgery cannot support a KCPA claim against OSI.

### CONCLUSION

As stated in OSI's previous motion, this case is, at best, a medical-malpractice and products-liability case. Plaintiff continues to attempt to radically transform it into something it is not by asserting a civil RICO claim. However, the law does not support Plaintiff's endeavor because an enterprise has not been properly alleged, predicate acts have not been shown, and causation is wanting. Additionally, Plaintiff's KCPA claim finds no support in the law because Plaintiff is not an aggrieved consumer, the BGSS is not a consumer good, and Plaintiff did not participate in a consumer transaction. Therefore, in light of these facts, OSI requests that Count

III and Count VI of the SAC be dismissed. Furthermore, because amending the SAC would be futile, OSI asks that the dismissal be with prejudice.

Respectfully Submitted,

FOULSTON SIEFKIN, L.L.P.

/s/ Gary L. Ayers
Gary L. Ayers, #10345
David E. Rogers, #13320
Daniel J. Buller, #25002
gayers@foulston.com
drogers@foulston.com
dbuller@foulston.com
1551 N. Waterfront Parkway
Suite 100
Wichita, Kansas 67206-4466
Phone: (316) 291-9708
Fax: (866) 347-5133
9225 Indian Creek Pkwy.
Suite 600
Overland Park, Kansas 66210
Phone: (913) 253-2179
Fax: (866) 347-961

THE HEALTH LAW PARTNERS, P.C.

/s/ James R. Witham
Clinton Mikel, (Pro hac vice)
Adrienne Dresevic, (Pro hac vice)
James Randall Witham, (Pro hac vice)
cmikel@thehlp.com
adresevic@thehlp.com
jwitham@thehlp.com
32000 Northwestern Hwy.
Suite #240
Farmington Hills, MI 48334
Phone: (248) 996-8510
Fax: (248) 996-8525

**ATTORNEYS FOR DEFENDANT
ORTHOPEDIC SCIENCES, INC.**

20

## CERTIFICATE OF SERVICE

I certify that on the 15th day of August, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send email notification of electronic filing to counsel for all parties of record.


/s/ Gary L. Ayers
Gary L. Ayers