## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CHARLES R. LUTTRELL** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 17-CV-02137-JWL-GEB** |
| | ) | |
| **JAMES K. BRANNON, M.D.,** | ) | |
| **ORTHOPEDIC SCIENCES, INC.,** | ) | |
| **JOINT PRESERVATION INSTITUTE** | ) | |
| **OF KANSAS L.L.C,** | ) | |
| **DOCTORS HOSPITAL, L.L.C.,** | ) | |
| **MAURCIO GARCIA, M.D.** | ) | |
| **THE HEADACHE & PAIN CENTER, P.A.** | ) | |
| **and PATIENTFIRST HEALTHCARE** | ) | |
| **ALLIANCE, P.A.** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM BY DEFENDANTS GARCIA AND
## THE HEADACHE & PAIN CENTER, P.A. TO DISMISS COUNTS
## III, IV, AND VI OF PLAINTIFF'S SECOND AMENDED COMPLAINT

BROWN & RUPRECHT PC

Matthew M. Merrill,  KS Bar #19021
Elizabeth D. Moeller, KS Bar #27016
2323 Grand Blvd., Suite 1100
Kansas City, MO 64108
Tele: (816) 292-7000
Fax:  (816) 292-7050
mmerrill@brlawkc.com
emoeller@brlawkc.com

SPENCER FANE LLP

Mark A. Thornhill,    D. Kan. #70197
Michael W. Seitz,     D. Kan. #78666
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Tele: (816) 474-8100
Fax:  (816) 474-3216
mthornhill@spencerfane.com
mseitz@spencerfane.com

***ATTORNEYS FOR DEFENDANTS GARCIA
AND THE HEADACHE & PAIN CENTER, P.A.***

WA 11658806.1

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  NATURE OF THE MATTER ................................................................................2

III.  FACTUAL AND PROCEDURAL BACKGROUND...........................................3

IV.  QUESTIONS PRESENTED....................................................................................4

V.  ARGUMENT ...........................................................................................................4

    A.  Standard for motion to dismiss ...................................................................4

    B.  The Court should dismiss the RICO claims (*Count III*) based on predicate acts of mail or wire fraud, because plaintiff does not allege damage "by reason of" the mail or wire fraud described in his complaint ...................................5

        i.  The alleged mail and wire fraud was directed at the State of Missouri, not plaintiff .................................................................7

        ii.  Defendants' mailings and wires with the State of Missouri were not plausibly a "but for" cause of plaintiff's copay damages ....................8

    C.  The Court should dismiss the RICO claims (*Count III*) based on predicate acts of money laundering, because plaintiff has not adequately alleged money laundering or that money laundering caused his copay damages ...............9

    D.  The Court should dismiss the RICO claims (*Count III*) based on controlled substances violations, because plaintiff has not alleged the supposedly illegal prescriptions caused his "office visit" copays ...........................................10

    E.  The Court should dismiss the KCPA claim against HPC (*Count VI*) because plaintiff's amendments do not cure the deficiencies this Court identified. .......................................................................................................11

        i.  Plaintiff fails to allege he was an "aggrieved consumer" or that HPC caused his financial injury.................................................11

        ii.  Plaintiff has not adequately alleged a "consumer transaction" between himself and HPC........................................................12

    F.  The Court should dismiss the civil conspiracy claim (*Count IV*) for the same reasons set out above, and because plaintiff has no private right of action under the federal statutes he invokes .......................................................13

VI.  CONCLUSION......................................................................................................14

WA 10902703.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ............................................................................................ 5, 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 4, 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 5

*Brooks v. Bank of Boulder*,
    891 F. Supp 1469 (D. Colo. 1995) ....................................................................... 13

*Bryson v. Gonzales*,
    534 F.3d 1282 (10th Cir. 2008) ............................................................................ 5

*CGC Holding Co., LLC v. Broad and Cassel*,
    773 F.3d 1076 (10th Cir. 2014) ............................................................................ 7

*Enneking v. Univ. Nat'l Bank*,
    No. 13-04070, 2013 WL 6804258 (D. Kan. Dec. 23, 2013) ................................... 6

*Farlow v. Peat, Marwick, Mitchell & Co.*,
    956 F.2d 982 (10th Cir. 1992) .............................................................................. 5

*Flair Intern. Corp v. Heisler*,
    173 F.3d 844 (2d Cir. 1999) (unpublished table decision) .................................... 9

*Hemi Group, LLC v. City of New York, New York*,
    559 U.S. 1 (2010) ............................................................................................... 5, 6

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
    193 F.3d 781 (3d Cir. 1999) ............................................................................... 14

*Robbins v. Wilkie*,
    300 F.3d 1208 (10th Cir. 2002) ............................................................................ 5

*Schroder v. Volcker*,
    864 F.2d 97 (10th Cir. 1988) .............................................................................. 13

*Tal v. Hogan*,
    453 F.3d 1244 (10th Cir. 2006) .......................................................................... 13

WA 10902703.1

**State Cases**

*Finstad v. Washburn Univ. of Topeka,*
    252 Kan. 465 (1993)...................................................................................... 12

## I.      INTRODUCTION

When it partially granted defendants' motions to dismiss (Doc. 149), this Court identified several deficiencies in plaintiff's complaint and gave plaintiff the opportunity to cure them. Plaintiff's second amended complaint does not address many problems the Court identified and, in fact, makes matters worse.

Most critically, plaintiff's RICO claim now fails for lack of causation. The Court strictly limited plaintiff's RICO damages to out-of-pocket copays he paid for supposedly "unnecessary" medical treatment. And the Court dismissed the bulk of plaintiff's RICO allegations for failure to plead predicate acts. In his second amended complaint, however, plaintiff re-asserts the same predicate acts (mail fraud, wire fraud, money laundering, and drug dealing) even though those acts have *no causal connection* to his copay damages—the only damages now at issue.

*First*, for the mail and wire fraud allegations, plaintiff fails to allege he paid copays "by reason of" the mail and wire communications he describes, which he concedes were directed to the State of Missouri rather than himself. Indeed, plaintiff's attempt to base a RICO case on mail and wire communications directed to the State contravenes settled precedent from the United States Supreme Court. *Second*, for the money laundering allegations, plaintiff still alleges no facts about how Dr. Garcia or HPC were plausibly involved in money laundering, or about how the alleged money laundering caused his copay damages. *Third*, for the controlled substances violations, plaintiff does not allege he paid copays for controlled substances, but instead alleges "office visit" copays that are not causally connected to the pain medicines defendants decided to prescribe.

The other claims against Dr. Garcia and HPC are still defective as well. In his amended KCPA claim, plaintiff does not address this Court's concerns about his inability to plead he was an "aggrieved consumer" or involved in a "consumer transaction" under the statute. And

1

plaintiff's conspiracy claim fails because he has not pleaded a substantive RICO or KCPA violation, and because plaintiff impermissibly asserts various federal statutes under which he has no private right of action.

Given these continued defects and plaintiff's repeatedly unsuccessful efforts to amend, the Court should dismiss the RICO, KCPA, and conspiracy claims in Counts III, IV, and VI, with prejudice. Dr. Garcia and HPC also adopt and incorporate by reference the arguments raised in their co-defendants' motions to dismiss and urge dismissal on those grounds too.

## II.    NATURE OF THE MATTER

Plaintiff's suit is a medical malpractice claim he hopes to transform into racketeering and fraud. In Count III of his second amended complaint, plaintiff sues Dr. Mauricio Garcia and The Headache & Pain Center, P.A. (HPC), among others, under RICO section 1962(c). In Counts IV and VI, Plaintiff asserts claims for conspiracy and under the Kansas Consumer Protection Act (KCPA).

This gist of plaintiff's RICO allegations is that all defendants acted in concert to single out plaintiff in 2012, so they later could persuade him to undergo a hip surgery that defendants knew was a hoax. Dr. Garcia and HPC's role in the conspiracy was to issue plaintiff prescriptions for "unnecessary" pain medicine, to make him more susceptible to unneeded surgery. The predicate acts underlying plaintiff's RICO claims are mail and wire fraud directed at the State of Missouri (billing Missouri Medicaid for unnecessary medical services), a money laundering scheme to hide the supposedly ill-gotten gains, and supposed violations of federal controlled substances laws in issuing plaintiff's prescriptions.

WA 11658806.1

### III.    FACTUAL AND PROCEDURAL BACKGROUND

At first, plaintiff's lawsuit focused on the hip surgery Dr. Brannon performed and was limited to claims under state law. Doc. 1. Plaintiff later amended his complaint to add new parties and new causes of action, including the RICO claims against Dr. Garcia and HPC.

This Court entered an order partially dismissing plaintiff's amended complaint on June 19. Doc. 149. For the RICO claim, the Court agreed with defendants that plaintiff's damages flow from his personal injuries and are not injuries to "business or property" that are compensable under RICO. *Id*. at 5-8. The Court did note that plaintiff also claims recovery for out-of-pocket copays, for allegedly unnecessary medical treatment, and allowed him to pursue this narrow category of RICO damages. *Id*. at 8. Thus, the Court strictly limited plaintiff's compensable RICO damages to "payments that he made for unnecessary medical treatment." *Id*. The Court also found plaintiff had not adequately alleged predicate acts based on mail fraud, wire fraud, money laundering, or violations of state controlled substances laws, while granting plaintiff leave to amend. *Id*. at 12-16.

As for the KCPA and conspiracy claims, the Court limited the KCPA claim to plaintiff's overpricing allegations, which focused on price gouging in connection with the BGSS device and Dr. Brannon's surgical procedure; and the Court dismissed the KCPA claim because plaintiff failed to allege he was an "aggrieved consumer" or that the procedure involved a "consumer transaction." Doc. 149 at 24-33. The Court also dismissed plaintiff's conspiracy claim, because it was based on defective RICO, KCPA, and fraud claims. *Id*. at 33.

Plaintiff filed a second amended complaint on July 3. The second amended complaint re-asserts plaintiff's RICO claims based on mail fraud, wire fraud, money laundering, and drug dealing. But plaintiff now fails to allege how those predicate acts caused his copay damages. The

second amended complaint also re-asserts the KCPA and conspiracy claims, which are subject to the various deficiencies described here.

## IV.    QUESTIONS PRESENTED

(1)    Whether plaintiff adequately alleges damage "by reason of" mail or wire fraud where his damages are limited to out-of-pocket copays and no allegedly fraudulent communications were directed to plaintiff.

(2)    Whether plaintiff adequately alleges money laundering by Dr. Garcia or HPC, and whether plaintiff adequately alleges he paid copays "by reason of" this supposed money laundering.

(3)    Whether plaintiff adequately alleges damage "by reason of" federal controlled substances violations, when his damages are "office visit" copays that are not causally connected to the pain medicines defendants decided to prescribe him.

(4)    Whether plaintiff adequately alleges he was an "aggrieved consumer" or involved in a "consumer transaction" with HPC in connection with the joint preservation procedure Dr. Brannon performed on plaintiff.

(5)    Whether plaintiff adequately alleges civil conspiracy when his substantive claims are defective and when he alleges a conspiracy to violate federal statutes under which he has no private right of action.

## V.    ARGUMENT

### A.    Standard for motion to dismiss

To survive a motion to dismiss under Rule 12(b)(6), a claim must be plausible, which means that it must contain enough factual content to enable the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept the complaint's well-pleaded allegations as true and

WA 11658806.1

construe them in the light most favorable to the plaintiff. *See Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002). On the other hand, the Court is not entitled to assume conclusory allegations are true. *Iqbal,* 556 U.S. at 681. A plaintiff's well-pleaded allegations must raise the right to relief above the speculative level to meet the threshold pleading standard. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

Furthermore, when alleging RICO predicate acts that are based on fraud, a plaintiff must plead the level of specificity required by Fed. R. Civ. P. 9(b). *See, e.g., Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989–90 (10th Cir. 1992).

**B.      The Court should dismiss the RICO claims (*Count III*) based on predicate acts of mail or wire fraud, because plaintiff does not allege damage "by reason of" the mail or wire fraud described in his complaint**

Civil liability in a RICO case requires a direct relationship between the predicate acts and the plaintiff's injuries. Under the plain language of section 1964(c), a plaintiff has no cause of action unless the plaintiff was injured in his business or property "by reason of" one of the predicate acts outlined in section 1962. *See* 18 U.S.C. § 1964(c).

The Supreme Court reads this "by reason of" language to require both "but for" causation as well a "direct relation between the injury asserted [and] the injurious conduct alleged." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 464 (2006). In other words, it is not enough for a plaintiff to allege a broad, systematic conspiracy that indirectly caused him harm. "[T]he compensable injury flowing from a [RICO] violation" is limited to "***the harm caused by [the] predicate acts***." *Id*. at 457 (emphasis added).

Courts are therefore skeptical of RICO claims involving mail and wire fraud directed at someone other than the plaintiff. The Supreme Court's two most recent decisions on this topic, *Hemi Group, LLC v. City of New York, New York* and *Anza v. Ideal Steel Supply Corporation* are

WA 11658806.1

good examples. In both cases, plaintiffs sued based on fraudulent mail and wire submissions the defendants sent to the State of New York. Both times, the Court held that "[t]he direct victim of this conduct was the State of New York, not [the plaintiffs]," and that the plaintiffs therefore could not establish the necessary link between their injury and the predicate acts. *Anza*, 547 U.S. at 458; *Hemi Group, LLC v. City of New York, New York*, 559 U.S. 1, 10 (2010). Consistent with these precedents, this District will not hesitate to dismiss a RICO case on the pleadings where "the[] acts of alleged illegal conduct were directed at [a third party]" instead of the plaintiff. *Enneking v. Univ. Nat'l Bank*, No. 13-04070, 2013 WL 6804258, at *4 (D. Kan. Dec. 23, 2013).

Requiring RICO plaintiffs to plead a direct link between the predicate acts and their compensable damages is important for two main reasons. First, because of its treble damages and attorneys' fees provisions, RICO is "an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Enneking*, 2013 WL 6804258, at *5 (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)). Indeed, "the very pendency of a RICO suit can be stigmatizing and its consummation can be costly." *Id*. Allowing persons who are indirectly or secondarily harmed by an alleged RICO scheme encourages frivolous lawsuits, tack-on RICO claims, and needlessly expensive litigation.

Second, when a defendant directs an alleged fraud at someone other than the plaintiff, the law allows "the immediate victims of [the] alleged RICO violation . . . to vindicate the laws by pursuing their own claims." *Anza*, 547 U.S. at 460. When a third party is the direct victim of the fraud and adequately incentivized to sue, "[t]here is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly." *Id*. The third party is "better situated than [the plaintiff] to seek recovery" and "can be expected to pursue appropriate remedies." *Hemi Group*, 559 U.S. at 12.

WA 11658806.1

### i. The alleged mail and wire fraud was directed at the State of Missouri, not plaintiff

Plaintiff unambiguously alleges mail and wire fraud directed at the State of Missouri, not at himself. Paragraphs 209 and 220 set out 75 predicate acts of alleged mail fraud. Each allegation involves defendants sending a Health Insurance Claim Form "to MO Healthnet Division"—that is, "to Missouri Medicaid"—though the mail. Second Am. Compl. ¶ 209. Plaintiff's allegations of wire fraud likewise involve defendants "receive[ing] money from Missouri Medicaid Insurance by wire." *Id.* ¶¶ 227, 233. Plaintiff expressly alleges defendants sent the communications with "specific intent to defraud Missouri Medicaid." *Id.* ¶ 207. Plaintiff unmistakably pleads the mail and wire fraud as a fraud on the State of Missouri, not as a fraud on himself.

The immediate and intended victim of this alleged mail and wire fraud was the State of Missouri. If plaintiff's allegations are true, defendants perpetrated a significant fraud on the State, and the State is more than incentivized and best positioned to seek recovery under RICO. That plaintiff also paid copays is, at best, an indirect effect of this alleged fraud. Indeed, plaintiff does not even allege he *knew* about the fraudulent mailings and wires, let alone that he relied on defendants' representations to the State or that those mailings and wires somehow led him to pay copays. *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1088-89 (10th Cir. 2014) ("[The plaintiff's reliance] frequently serves as a proxy for both legal and factual causation" in RICO cases and "causation is often lacking where plaintiffs cannot prove that they relied on defendants' alleged misconduct").

Finally, although plaintiff conclusorily asserts he was billed for copays, he does not say how or when defendants delivered him a bill. *See, e.g.*, Second Am. Compl. ¶¶ 30, 101, 252. It does not appear plaintiff is relying on copay bills to establish predicate acts under RICO. But

WA 11658806.1

even if he were, his allegations are insufficient. Plaintiff's bare allegations fail to state who delivered plaintiff the bills or how or when he paid them. The allegations therefore fall well short of the requirement that plaintiff plead acts of mail and wire fraud with particularity under Fed. R. Civ. P. 9(b). Even more important, plaintiff does not assert defendants delivered copay information by mail or that he paid copays by wire. There simply are no facts suggesting the copays were instances of mail or wire fraud.

The bottom line is that the only mail or wire fraud plausibly alleged in plaintiff's complaint is a fraud on the State of Missouri rather than on plaintiff himself. These allegations have no connection to plaintiff's copay damages and cannot state a cause of action under RICO.

### ii. Defendants' mailings and wires with the State of Missouri were not plausibly a "but for" cause of plaintiff's copay damages

Plaintiff's RICO claim based on mail and wire fraud also fails because plaintiff has not plausibly alleged the fraudulent communications were an actual "but for" cause of his compensable injuries. There is no explanation for how defendants' communications with the State of Missouri led to plaintiff paying copays. Plaintiff does not allege, for example, that Missouri Medicaid sent him a bill as a result of defendants submitting claims to the State, or that defendants' fraudulent submissions to the State somehow started a chain of events that led to plaintiff being charged copays.

To the contrary, when healthcare providers treat Missouri Medicaid patients, the copays are no more than a few dollars. *See, e.g.*, 13 C.S.R. § 70-4.050(3) (listing copays ranging from 50¢ to $3.00). And patients typically pay Missouri Medicaid copays at the time of service— *before* the provider sends any bills or requests for payment to the State. *Id*. § 70-4.050(11) ("Providers of services . . . must charge copayment or coinsurance as specified *at the time the service is provided*.") (emphasis added).

This temporal disconnect is fatal to plaintiff's ability to plead a RICO claim based on mail or wire fraud. Bills sent to the State *after* plaintiff's treatments could not plausibly be a "but for" cause of copays plaintiff paid *at the time of service. See, e.g., Flair Intern. Corp v. Heisler*, 173 F.3d 844 (2d Cir. 1999) (unpublished table decision) ("[A]s [the alleged mail and wire fraud] postdated the alleged losses, it could not have been even a 'but-for' cause of those losses, let alone their proximate cause."). Lack of but-for causation is an independent reason to dismiss plaintiff's RICO claims based on mail or wire fraud.

### C. The Court should dismiss the RICO claims (*Count III*) based on predicate acts of money laundering, because plaintiff has not adequately alleged money laundering or that money laundering caused his copay damages

Plaintiff's RICO claim also fails to allege money laundering, for a host of reasons set out in OSI's motion to dismiss. Dr. Garcia and HPC will not restate those arguments here. Among other things, plaintiff alleges no reporting obligations the alleged financial transactions were designed to avoid, or what specified unlawful activity defendants sought to conceal.

As they concern Dr. Garcia and HPC specifically, plaintiff's money laundering allegations refer vaguely to "reinvestment of proceeds." *See, e.g.,* Second Am. Compl. ¶¶ 267-70. Plaintiff alleges no specific financial transactions in which Dr. Garcia or HPC were involved.

Plaintiff's money laundering allegations instead center on Dr. Brannon and OSI's supposed obligations under the Physician's Payments Sunshine Act and self-referral and anti-kickback laws; and plaintiff outlines a "loan" OSI purportedly made to Dr. Brannon. *Id*. ¶¶ 285, 297-341. Plaintiff does not allege how Dr. Garcia or HPC were involved in this activity. Instead, the only money laundering allegations about Dr. Garcia or HPC are conclusory statements that they sent or received money from other co-defendants. This falls short of the Court's order that plaintiff plead facts that each "particular defendant knowingly conducted financial transactions

involving proceeds from specified offenses, with the transactions designed to avoid reporting violations." Doc. 149 at 16.

Plaintiff's money laundering allegations also fail for lack of causation. As with the mail and wire fraud allegations described above, plaintiff's RICO damages are strictly limited to his out-of-pocket copays. Plaintiff alleges no facts plausibly suggesting he paid copays *by reason of* Dr. Garcia or HPC's acts of money laundering. The RICO claim should be dismissed, with prejudice, where it is based on predicate acts of money laundering.

**D.     The Court should dismiss the RICO claims (*Count III*) based on controlled substances violations, because plaintiff has not alleged the supposedly illegal prescriptions caused his "office visit" copays**

Dr. Garcia and HPC believe first and foremost that plaintiff fails to allege any criminal distribution of controlled substances. Dr. Garcia is a licensed practitioner and plaintiff pleads no facts plausibly suggesting Dr. Garcia prescribed pain medicines without good faith or without a legitimate medical purpose. In fact, plaintiff admits he had "right hip pain," (Second Am. Compl. ¶ 31), and many supposedly illegal prescriptions were issued *following surgical procedures*, when pain medicines are most needed (*compare id*. ¶ 64(a)-(e) (listing surgery dates) *with id*. ¶ 204 (listing prescription dates)). Dr. Garcia and HPC reiterate their arguments for dismissal of this very serious criminal accusation, but they understand the Court may have already decided the issue against them. *See* Doc. 107 at 14-15; Doc. 149 at 15 n.6.

Dr. Garcia and HPC also urge dismissal for the separate reason that plaintiff fails to allege causation. The only compensable injury plaintiff alleges as part of the supposedly illegal prescriptions are copays he paid for "office visits." *See, e.g.*, Second Am. Compl. ¶¶ 252, 254. Plaintiff does not allege he paid copays to Dr. Garcia or HPC for the drugs themselves.

And there is no plausible inference these office visit copays were caused by, or directly linked to, the supposedly illegal prescriptions. Office visit copays are for seeing the patient, not

for the medicines a physician may or may not prescribe during the visit. In fact, under Missouri

Medicaid, "[a]n office visit is *not* covered if the only service is to obtain a prescription, the need

for which has been determined previously." State of Missouri, MoHealthNet Physician Manual

§ 13.20.A (2018) (emphasis in original).[1] Plaintiff would have paid office visit copays whether

or not Dr. Garcia prescribed him controlled substances during his visits, or even if Dr. Garcia

prescribed him nothing at all. The injurious conduct at issue here (writing supposedly illegal

prescriptions) simply has no causal link or direct relation to plaintiff's compensable damages

(office visit copays). The RICO claim should be dismissed, with prejudice, where it is based on

violations of federal controlled substances laws.

### E.   The Court should dismiss the KCPA claim against HPC (*Count VI*) because plaintiff's amendments do not cure the deficiencies this Court identified.

Plaintiff's second amended complaint re-asserts his KCPA claim against HPC without

addressing the deficiencies the Court identified in its June 19 order. When the Court dismissed

the KCPA claim, it granted plaintiff leave to amend only where his claims are the ***pricing*** of the

BGSS product or related surgical procedure "grossly exceeded" the price of similar products.

Doc. 149 at 26-27. The Court also required plaintiff to plead financial injury based on this

unconscionable billing or pricing—*i.e.* that he was an "aggrieved consumer" under the KCPA—

and to "allege facts supporting a plausible claim that the [BGSS] device was sold directly to him

and not merely to [Doctor's Hospital] for use in his surgery." *Id*. at 30-33. Plaintiff's

amendments do not comport with the Court's June 19 order.

### i.   Plaintiff fails to allege he was an "aggrieved consumer" or that HPC caused his financial injury

First, plaintiff still alleges no facts from which the Court can infer plaintiff was an

"aggrieved consumer" under the KCPA. For plaintiff to be "aggrieved" under K.S.A. § 50-

---

[1] Available at http://manuals.momed.com/collections/collection_phy/print.pdf.

634(b), he must have suffered some loss or injury as a result of a KCPA violation, and there must be a causal connection between the plaintiff's loss or injury and the defendant's violation. *Finstad v. Washburn Univ. of Topeka*, 252 Kan. 465, 473-474 (1993).

The *only possible* KCPA violation at issue is the "grossly" excessive price of the BGSS device or related surgical procedure. But plaintiff concedes that a "majority of the cost of the hip surgery" was paid by "Missouri Medicaid," not by plaintiff personally. Second Am. Compl. ¶ 320. While plaintiff says he also "was forced to pay co-pays, medical costs, and other out-of-pocket expenses," he fails to allege how much he paid or why his payments were more than they should have been. There is no way to determine whether plaintiff suffered a cognizable loss here, because he does not allege how much a different device or surgical procedure would have cost him. Since plaintiff has not alleged a personal loss or injury resulting from the alleged overpricing, he has not adequately alleged he is an "aggrieved consumer" under the KCPA.

### ii.   Plaintiff has not adequately alleged a "consumer transaction" between himself and HPC

Second, plaintiff still has not alleged a "consumer transaction" between himself and HPC. In addressing plaintiff's prior failure to plead a consumer transaction, the Court required plaintiff to make clear whether his overpricing allegations centered on the sale of Dr. Brannon's medical services or on an alleged sale of the BGSS device. Doc. 149 at 32. If it is the BGSS device, the Court required plaintiff to "allege facts supporting a plausible claim that the device was sold directly to him and not merely to [Doctor's Hospital] for use in his surgery." *Id*. at 33.

Plaintiff's second amended complaint is still ambiguous about whether his overpricing allegations concern Dr. Brannon's services or the BGSS device. Even so, neither qualifies as a "consumer transaction" under the KCPA, for the reasons described in detail in OSI's contemporaneous motion to dismiss and in HPC's prior submissions. Doc. 107 at 28-29. Plaintiff

also has not plausibly alleged the BGSS device was sold to him personally. HPC respectfully refers the Court to its prior briefing on this issue—and to briefing submitted by HPC's co-defendants—instead of restating the same legal arguments here.

As it concerns HPC specifically, there are no allegations implicating HPC in any consumer transaction involving the BGSS device or the related surgical procedure. The second amended complaint alleges that "Defendant JPI sold the joint preservation procedure directly to Plaintiff by and through its agent, employee and owner, Brannon." Doc. 151, ¶ 353. Thus, it was JPI, not HPC, involved with the transaction underlying plaintiff's KCPA claim. HPC could not and did not contract with plaintiff for the sale or purchase of the joint preservation surgery, and Plaintiff does not allege that it did. The surgery transaction cannot support a KCPA claim against HPC, and the claim should be dismissed.

**F.    The Court should dismiss the civil conspiracy claim (*Count IV*) for the same reasons set out above, and because plaintiff has no private right of action under the federal statutes he invokes**

Finally, plaintiff's conspiracy claim in Count IV should be dismissed for many of the same reasons set out above. Plaintiff alleges a conspiracy to commit "the various RICO violations laid out above" and with "the object of violating the KCPA." Second Am. Compl. ¶ 346. The conspiracy claim should be dismissed if the substantive RICO and KCPA claims do not survive this motion. *See, e.g.*, *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006); *Schroder v. Volcker*, 864 F.2d 97, 98 (10th Cir. 1988); *Brooks v. Bank of Boulder*, 891 F. Supp 1469, 1479 (D. Colo. 1995); *accord* Doc. 149 at 33 ("[P]laintiff should recognize that [a conspiracy] claim may survive only to the extent that the underlying claims have survived.")

Plaintiff's conspiracy claim also now refers to alleged conspiracies to violate "the False Claims Act, the Anti-Kickback Statute, and Stark's Law." Second Am. Compl. ¶ 346. But plaintiff does not allege how Dr. Garcia or HPC were involved in any conspiracy to violate those

13

statutes. Indeed, the sections discussing these alleged violations do not even mention Dr. Garcia or HPC, except to assert they were "complicit" in the alleged conduct. *Id.* ¶¶ 315-41.

In any event, "[a] claim of civil conspiracy cannot rest solely upon the violation of a federal statute for which there is no corresponding private right of action." *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 193 F.3d 781, 790 (3d Cir. 1999). Neither the Anti-Kickback Statute nor Stark's law contains a private right of action, and plaintiff has not followed the *qui tam* provisions of the False Claims Act. *See* 31 U.S.C. § 3730(b). Plaintiff cannot allege a civil conspiracy based on these statutes, because he has no private right of action under them.

## VI.    CONCLUSION

For all these reasons, Dr. Garcia and HPC urge the Court to dismiss Counts III, IV, and VI with prejudice.

WA 11658806.1

Respectfully Submitted,

BROWN & RUPRECHT PC

*/s/ Elizabeth D. Moeller*
Matthew M. Merrill,       KS Bar #19021
Elizabeth D. Moeller,      KS Bar #27016
2323 Grand Blvd., Suite 1100
Kansas City, MO 64108
Tele: (816) 292-7000
Fax:  (816) 292-7050
mmerrill@brlawkc.com
emoeller@brlawkc.com

SPENCER FANE LLP

*/s/ Michael W. Seitz*
Mark A. Thornhill,  D. Kan. #70197
Michael W. Seitz,    D. Kan. #78666
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Tele: (816) 474-8100
Fax:  (816) 474-3216
mthornhill@spencerfane.com
mseitz@spencerfane.com

***ATTORNEYS FOR DEFENDANTS
GARCIA AND THE HEADACHE &
PAIN CENTER, P.A.***

## CERTIFICATE OF SERVICE

On August 15, 2018, a true copy of this document was served electronically through this Court's CM/ECF system on all parties receiving electronic notice.

*/s/ Michael W. Seitz*
Attorney for Defendants Garcia and the
Headache & Pain Center, P.A.

WA 11658806.1