IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHARLES R. LUTTRELL,                          )
                                              )
                        Plaintiff,            )
                                              )
v.                                            ) Case No. 2:17-CV-02137-JWL-GEB
                                              )
JAMES K. BRANNON, M.D.,                       )
ORTHOPEDIC SCIENCES, INC.,                    )
JOINT PRESERVATION INSTITUTE                  )
OF KANSAS, L.L.C., and                        )
DOCTORS HOSPITAL, L.L.C.                       )
MAURICIO GARCIA, M.D.,                         )
THE HEADACHE & PAIN CENTER, P.A.               )
and PATIENTFIRST HEALTHCARE                    )
ALLIANCE, P.A.                                 )
                                              )
                        Defendants.            )
_____)

**DEFENDANTS JAMES K. BRANNON, M.D., AND
JOINT PRESERVATION INSTITUTE OF KANSAS, L.L.C.'S
MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants James K. Brannon, M.D., and Joint Preservation Institute of

Kansas, L.L.C. ("JPI"), submit this memorandum in support of their motion to

dismiss plaintiff's second amended complaint (Doc. 151). Defendants move this

Court for an Order dismissing plaintiff's claims for RICO violations (Count III) and

plaintiff's claims for Kansas Consumer Protection Act violations (Count VI).

## I.   NATURE OF THE MATTER

Plaintiff went to Dr. Brannon with complaints of right hip pain. Dr. Brannon

diagnosed avascular necrosis and performed a surgical procedure to preserve the

hip joint. (Doc. 151 at ¶¶ 32, 36.) In this action, plaintiff alleges that he did not

1

have avascular necrosis in his right hip, that the joint preservation surgery was unnecessary and contra-indicated, that the hardware used in the procedure failed, and that as a result of injuries caused by the procedure, he has continuing pain and has had to undergo further procedures and the expense those entail.  (*Id*. at ¶¶ 34, 56-58.)  Plaintiff has, in a series of complaints, sued Dr. Brannon and JPI, among others, for medical malpractice, (Count I), fraud (Count V)[1], civil conspiracy (Count IV), and unconscionable and deceptive acts and practices under the Kansas Consumer Protection Act (KCPA) (Count VI). (Doc. 1; Doc. 84; Doc. 151.) In addition, plaintiff claims, related to the devices used in the procedure, breach of implied warranty of fitness (Count VII), and strict liability failure to warn (Count VIII). (*Id*.)  Plaintiff also alleges a civil RICO claim against all defendants (Count III), as well as an informed consent claim against Dr. Brannon (Count II), a "vicarious liability" claim against JPI and others based on allegations against Dr. Brannon (Count IX), and an "alter ego" claim against another defendant.  (*Id*.)

Plaintiff's civil RICO claims (Count III) fail to state a claim upon which relief may be granted for reasons set forth below.  Plaintiff has failed to allege any facts demonstrating that the alleged mail fraud and wire fraud committed by Dr. Brannon and JPI caused plaintiff's injuries and should be dismissed.  In addition, plaintiff's claims for KCPA violations repeat the same type of allegations that were

---

[1]      The SAC still lists fraud as a separate count, but merely states that the claim is "subsumed in" the medical malpractice and informed consent claims, which is consistent with language the Court used in granting dismissal of that claim.  (Doc. 149.)

previously dismissed by the Court and should be dismissed with prejudice for failure to state a claim.

## II.  PROCEDURAL AND FACTUAL BACKGROUND

On March 3, 2017, plaintiff filed his Complaint.  The Complaint asserted claims for professional negligence against Dr. Brannon, vicarious liability as to the remaining defendants, and fraud, civil conspiracy, KCPA violations, breach of implied warranty of fitness, strict liability failure to warn and punitive damages as to all defendants.

On November 16, 2017, the Court granted plaintiff's Motion for Leave to Amend Complaint (Doc. 71) and on December 29, the Court entered an order deeming the First Amended Complaint filed as of that date.  (Doc. 83).  On December 29, 2017, defendants filed their respective motions to dismiss. Thereafter, the Court issued its Memorandum and Order granting in part and denying in part the defendants' various motions to dismiss, recognizing various deficiencies in plaintiff's pleading (Doc. 149).  On July 3, 2018, plaintiff filed his Second Amended Complaint ("SAC") (Doc. 151).

## III.  STATEMENT OF ISSUES

1.    Plaintiff's RICO claim based upon the predicate act of mail fraud fails to allege that the predicate act caused plaintiff's injuries and must be dismissed.

2.    Plaintiff's RICO claim based upon the predicate act of wire fraud fails to allege that the predicate act of wire fraud caused plaintiff's injuries and must be dismissed.

3.     Plaintiff cannot state a claim against Dr. Brannon and JPI for violation of the Kansas Consumer Protection Act.

4.     Other issues raised by co-defendants.

## IV.     ARGUMENT AND AUTHORITIES

The Court has afforded plaintiff ample opportunity to state his claims. Nevertheless, plaintiff has failed to state a plausible claim under RICO or the KCPA.  For the reasons stated herein, plaintiff's KCPA claim and the RICO claims based on alleged predicate acts of mail fraud and wire fraud fail.   Plaintiff's remaining RICO claims fail for reasons provided in the motions to dismiss.

### A.     Standard Applicable to Motions to Dismiss For Failure to State a Claim.

The court "will grant a motion to dismiss for failure to state a claim when a plaintiff's factual allegations fail to 'state a claim to relief that is plausible on its face.'" *Smith v. Louie's Wind Dive Overland Park, LLC*, No. 16-cv-2661, 2017 U.S. Dist. LEXIS 19088, at *2 (D. Kan. Feb. 9, 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Neonatal Prod. Group v. Shields*, 2014 U.S. Dist. LEXIS 165937, at *22 (D. Kan. Nov. 26, 2014). "The court must accept the facts alleged in the complaint as true, even if doubtful in fact, . . . and view all reasonable inferences from those facts in favor of the plaintiff." *Id.* (citing *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir.

2006)). "For the purposes of a motion to dismiss, the court 'must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Robles v. Amarr Garage Doors*, 2012 U.S. Dist. LEXIS 85106, *22 (D. Kan. June 20, 2012) (quoting *Iqbal*, 556 U.S. at 678)). "Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth." *Id.* "Second, the court must determine whether the factual allegations, when assumed as true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

    **B.**    **Plaintiff's RICO claim based upon the predicate act of mail fraud fails to allege that the mail fraud caused plaintiff's injury.**

    Plaintiff's RICO claim based upon alleged mail fraud fails because plaintiff fails to allege and cannot allege that the alleged mail fraud caused plaintiff's injury as to any payments of plaintiff's medical bills actually paid by Missouri Medicaid. Plaintiff alleges that defendants engaged in an enterprise "and associations-in-fact" with each other and that defendants conspired to and engaged in "racketeering activity" in violation of 18 U.S.C. 1961 by committing or engaging in mail fraud. (See SAC, at ¶¶ 141, 143(a)). Plaintiff further alleges that defendants "formed a scheme to defraud Plaintiff and Plaintiff's Missouri Medicaid by which Brannon, Garcia and Pain Center issued prescriptions for narcotic pain medication which were not medically indicated and beyond prescribing practices." (SAC, at ¶ 202). According to plaintiff, the "unnecessary prescriptions facilitated two goals," one

being that "each office visit provided an opportunity for Brannon, Garcia and Pain Center to bill Plaintiff and Plaintiff's Medicaid Insurance" and the other being that "Plaintiff became hopelessly addicted to pain medication which over time reduced his pain threshold and made him more willing to proceed with a risky and unnecessary surgery for a non-existent condition." (SAC, at ¶ 203(a)-(b)). The defendants then, "through Doctors Hospital and Pain Center," used the United States mails in furtherance of this scheme by submitting Health Insurance Claim Forms to Missouri Medicaid "and bills directly to Plaintiff for office visits which concluded with prescriptions for narcotic pain medication which was not medically indicated and beyond prescribing practices." (SAC, at ¶ 211).

Pursuant to 18 U.S.C. 1964(c), any person "injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . ." 18 U.S.C. 1964(c). "To prove a RICO violation, a plaintiff must show that the defendant violated the RICO statute, and the plaintiff was injured by reason of that violation." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014) (citing 18 U.S.C. §§ 1962, 1964(c)). "A defendant violates the act when he (1) participates in the conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Id.* (citing *Tal v. Hogan*, 452 F.3d 1244, 1261 (10th Cir. 2006)).

"Under RICO's 'by reason of' requirement, 'to state a claim . . . the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Id.* (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010)). "Sufficiently

establishing the element of causation – both actual and proximate – is crucial to proving any violation of RICO." *Id.* "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Id.* (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006)). *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010) ("[T]he plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well."); *VNA Plus, Inc. v. Apria Healthcare Group, Inc.*, 29 F. Supp. 2d 1253, 1260 ("The Supreme Court has interpreted this language to mean that a plaintiff must establish that the defendant's predicate acts actually and proximately caused plaintiff's injuries."). Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp., LLC v. City of New York City*, 559 U.S. at 9 (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992)). "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Id.*

Here, plaintiff has wholly failed to allege – and cannot allege – that any bills sent by Doctors Hospital and Pain Center through the mail to Missouri Medicaid actually caused any injury to plaintiff's business or property. In other words, plaintiff cannot allege that monies paid by Missouri Medicaid constitute out-of-pocket damages incurred by plaintiff. Indeed, plaintiff's Second Amended Complaint concedes that his "RICO allegation damages are strictly limited to the

money that **he directly paid out-of-pocket to Brannon, Garcia, OSI, JPI, Doctors Hospital, Pain Center and PatientFirst for unnecessary medical treatment.**" (SAC, at ¶¶ 116, 343 (emphasis added)). This allegation is consistent with the Court's ruling granting the defendants' various motions to dismiss in dismissing plaintiff's RICO claims for damages "other than those **representing payments by plaintiff** for unnecessary medical treatment." (Doc. No. 149, at p. 2 (emphasis added)).

Yet despite plaintiff's own allegation that his RICO claims are asserted solely based on damages that he himself "directly paid out-of-pocket," and despite the Court's ruling, plaintiff continues to allege predicate acts based upon alleged mail fraud for bills sent to and paid by Missouri Medicaid. (See SAC at ¶ 117, ¶ 209).

Plaintiff cannot allege that he has sustained any damages as result of any medical bills paid by Missouri Medicaid. Plaintiff simply did not incur any damages or injury to his business or property for any medical bills paid by Missouri Medicaid. Plaintiff lacks standing to recover for any payments made by Missouri Medicaid and the alleged predicate acts of mail fraud based upon Healthcare Insurance Forms sent to Missouri Medicaid fail to state a claim upon which relief can be granted. Therefore, plaintiff's RICO claim based upon the predicate act of mail fraud for medical bills sent to and paid by Missouri Medicaid fails to state a claim upon which relief can be granted and must be dismissed. *See Griffin v. Jones*, 2014 U.S. Dist. LEXIS 136831, at *13 (Ky. W.D. September 29, 2014) (plaintiff failed to adequately allege that misstatements of fact caused damages he claimed in

support of wire fraud claim); *Kerrigan v. Visalus, Inc.*, 112 F. Supp. 3d 580, 608 (Mich. E.D. June 12, 2015) (finding that plaintiffs have not pleaded requisite causal connection between their injuries and predicate acts committed by each defendant).

### C.    Plaintiff's RICO claim based upon the predicate act of wire fraud fails to allege that the wire fraud caused plaintiff's injury.

Plaintiff's RICO claim based upon the alleged predicate act of wire fraud fails because plaintiff fails to allege and cannot allege that the alleged wire fraud caused plaintiff's injury as to any payments of plaintiff's medical bills actually paid by Missouri Medicaid.   Plaintiff alleges that defendants engaged in an enterprise "and/or associations-in-fact" and that defendants conspired to and engaged in "racketeering activity" in violation of 18 U.S.C. 1961 by committing or engaging in wire fraud.   (See SAC, at ¶ 143(b)).   In support of this claim, plaintiff alleges that "Defendants formed a scheme to defraud potential patients and the insurance carriers for those potential patients by disseminating patently false information regarding the cost of the BGSS as compared to a standard total hip arthroplasty." (SAC at ¶ 234).   Plaintiff further alleges that on April 23, 2006, some nine years before Plaintiff's procedure, Dr. Brannon represented to the Kansas City Business Journal that the Hip Tool and BGSS were "priced comparably to hip replacement surgery," that this claim was "patently false," and that "these marketing claims were transmitted over the wire (via internet) to induce unsuspecting patients and patient's insurance providers that the costs between the BGSS and standard total hip arthroplasty were comparable . . . ."   (SAC at ¶¶ 234-239).   Plaintiff alleges that

the defendants' scheme "induced Missouri Medicaid to pay over 5 times more for Plaintiff's BGSS surgery than would have been required if Brannon, Doctors [Hospital] and PatientFirst simply performed a standard total hip arthroplasty." (SAC, at ¶ 241).

Significantly, Plaintiff does not allege that he paid any out-of-pocket expenses for the BGSS surgery.  Instead, plaintiff alleges only that Missouri Medicaid paid for the BGSS surgery.  Taking the allegations of the Second Amended Complaint as true for purposes of this motion only, plaintiff fails to allege any causation between the alleged predicate act of wire fraud (which occurred in 2006) and any out-of-pocket expenses paid directly by plaintiff for the BGSS surgery.  (See SAC at ¶ 241). That Missouri Medicaid paid for plaintiff's BGSS simply fails to establish that plaintiff himself incurred any damage to his business property as is required by 18 U.S.C. § 1962 to establish a viable RICO claim.  *See e.g.*, *Sedima v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) (a "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting [a RICO] violation").

For these reasons, plaintiff's claims for wire fraud fail to state a claim upon which relief can be granted and must be dismissed.

### D. Plaintiff cannot state a claim against Dr. Brannon and JPI for violation of the Kansas Consumer Protection Act.

Plaintiff's Second Amended Complaint attempts to allege violations of the Kansas Consumer Protection Act against Dr. Brannon and JPI.  (See SAC, at pp. 77-83).  Plaintiff's claims against Dr. Brannon and JPI for violations of the KCPA

for deceptive and unconscionable acts occurring during the informed consent process fail to state a claim upon which relief can be granted and were dismissed by the Court. (Doc. No. 149).

Although this Court has ruled that "the only KCPA claim that could survive for plaintiff is one based on unconscionable billing or pricing,"[2] the Court's order made clear that "Section 40-3403(h) provides immunity for JPI" against KCPA claims of derivative liability against JPI and the other entity defendants and that arise out of "conduct by Dr. Brannon in the informed consent process." (Order, Doc. No. 149, at 26). The Court ordered that with the exception of KCPA claims for financial injuries relating to billing or the sale of a product, all claims under the KCPA against JPI are dismissed on the basis of the immunity provided at K.S.A. 40-3403. (Doc. 149, at 27). In addition, with the exception of any KCPA claims based on the pricing of the procedure, the Court dismissed plaintiff's KCPA claims alleging "deceptive and unconscionable acts occurring during the informed consent process, consisting of misrepresentations and omissions relating to plaintiff's surgery." (Doc. 149, at 28).

Despite the court's order dismissing such claims, plaintiff's Second Amended Complaint attempts to reassert these claims. (SAC, at ¶¶ 353, 355(b), 356(a), (c), (e)).[3] Specifically, plaintiff attempts to allege that Dr. Brannon and JPI engaged in

---

[2] Plaintiff was granted leave to amend the First Amended Complaint to attempt to plead facts demonstrating that he personally suffered damages as a result of this particular KCPA violation. (See Order, Doc. 149 at 31).

[3] Several of plaintiff's allegations in the SAC of deceptive and unconscionable acts in violation of the KCPA occurring during the informed consent process are

a deceptive act or practice in connection a consumer transaction with the plaintiff based on various alleged failures to disclose information as part of the informed consent process.  (SAC, at ¶ 355(b)(i)-(viii)).  Plaintiff alleges that Dr. Brannon was "in the room directly convincing Plaintiff to have the unnecessary joint preservation surgery …"  (SAC at ¶ 353).  These allegations fail to state a claim against JPI based on the immunity found at K.S.A. 40-3403(h), and JPI incorporates by reference all of its arguments set forth in its memorandum in support of its motion to dismiss plaintiff's KCPA claims against it (Doc. 88, see also Doc. 119).  The Court dismissed all of plaintiff's KCPA claims against JPI with the sole exception of claims arising out of alleged wrongful billing practices.  (See Doc. 149 at 27).  These allegations fail to state a claim against Dr. Brannon because they allege conduct arising in the informed consent process, and Dr. Brannon incorporates by reference all of his arguments set forth in his memorandum in support of his motion to dismiss plaintiff's KCPA claims against him.  *See* K.S.A. 50-635(b). (Doc. 88, see also Doc. 119).

Similarly, plaintiff attempts to allege that JPI engaged in unconscionable acts and practices on the basis that JPI "took advantage of Plaintiff's inability to reasonably protect his interests dues to Plaintiff's physical and mental condition, ignorance and/or other similar factors,'" that JPI "had knowledge that Doctors Hospital and Pain Center were billing Plaintiff, and other similarly situated patients, for unnecessary medical treatment which constitutes an unconscionable

---

substantially the same as allegations set forth in the First Amended Complaint. (See Doc. No. 84, at ¶¶ 248, 250-51).

billing practice;" and that the transaction was "excessively one sided" because only defendants had "the skills and resources to determine the surgery was unnecessary." (SAC at ¶ 356.) The immunity found at K.S.A. 40-3403(h) bars a claim against JPI based on these allegations. Moreover, plaintiff fails to state a claim against JPI based on allegations that JPI knew of unconscionable conduct by someone else.

As to Dr. Brannon, the allegation that Dr. Brannon "took advance of Plaintiff's inability to reasonably protect his interests due to Plaintiff's physical and mental condition, ignorance and/or other similar factors" fails to state a claim because these allegations are merely a restatement of plaintiff's KCPA claims arising out of the informed consent process and based on Dr. Brannon's professional duty. *See* K.S.A. 50-635(b). Additionally, plaintiff's allegations that Dr. Brannon committed an unconscionable act or practice based on Dr. Brannon's alleged knowledge of "amounts being billed to Plaintiff" by others fail to state a claim. (SAC, at ¶ 356(c), (d)).

Finally, plaintiff again alleges that defendants "unfairly and improperly profited," and alleges that the surgery he underwent cost "far in excess of the cost of comparable treatment elsewhere," (SAC at ¶¶ 356(c) and 357). But he makes only a conclusory allegation regarding "co-pays, medical costs, and other out-of-pocket expenses" (SAC at ¶357), with no facts alleged that would state a plausible claim that the amounts of his "co-pays, medical costs, and other out-of-pocket expenses" were so excessive as to render the transaction unconscionable.

Plaintiff's Second Amended Complaint does not cure the deficiencies in the pleading of the KCPA claim. The claim should be dismissed.

### E.      Adoption of Co-Defendants' Arguments

Other defendants in this action have served dispositive motions which raise additional reasons why plaintiff's RICO and KCPA claims should be dismissed in their entirety. To the extent not inconsistent with the arguments raised above, Dr. Brannon and JPI adopt the co-defendants' arguments and in corporate the same as if fully set forth herein.

## V.   CONCLUSION

For the reasons set forth above (and any additional reasons provided by the co-defendants), plaintiff's claims for RICO violations (Count III) and plaintiff's claims for Kansas Consumer Protection Act violations (Count VI) should be dismissed.

Respectfully submitted,

MARTIN, PRINGLE, OLIVER,
  WALLACE & BAUER, L.L.P.

s/ David S. Wooding
David S. Wooding, #10781
100 N. Broadway, Suite 500
Wichita, KS 67202
(316) 265-9311
(316) 265-2955 (facsimile)
dswooding@martinpringle.com

and

MARTIN, PRINGLE, OLIVER,
  WALLACE & BAUER, L.L.P.

s/Lora M. Jennings
Lora M. Jennings   KS Bar #22044
9401 Indian Creek Parkway
Building 40, Suite 1150
Overland Park, KS 66210
(913) 491-5500
(913) 491-3341 (Fax)
lmjennings@martinpringle.com
*ATTORNEYS FOR DEFENDANT*
*JAMES K. BRANNON, M.D. and JOINT*
*PRESEVRATION INSTITUTE OF*
*KANSAS, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August, 2018, the foregoing Memorandum in Support of James K. Brannon, M.D. and Joint Preservation Institute of Kansas, L.L.C.'s Motion to Dismiss was electronically filed by using the Court's CM/ECF system, which will send e-mail notification of electronic filing to counsel for all parties of record.

s/ Lora M. Jennings
Lora M. Jennings   #22044

15