**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| CHARLES R. LUTTRELL | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 17-CV-2137-JWL-GEB |
| | ) | |
| JAMES K. BRANNON, M.D. | ) | |
| ORTHOPEDIC SCIENCES, INC. | ) | |
| JOINT PRESERVATION INSTITUTE | ) | |
| OF KANSAS, L.L.C., | ) | |
| DOCTORS HOSPITAL, L.L.C., | ) | |
| MAURICIO GARCIA, M.D., THE | ) | |
| HEADACHE AND PAIN CENTER, | ) | |
| P.A. and PATIENTFIRST | ) | |
| HEALTHCARE ALLIANCE, P.A. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' DOCTORS HOSPITAL L.L.C. AND PATIENTFIRST HEALTHCARE ALLIANCE, P.A.'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

In compliance with D. Kan. Rule 7.1 and 7.6, Defendants Doctors Hospital L.L.C. ("Doctors Hospital") and PatientFirst Healthcare Alliance, P.A. ("PatientFirst"), by and through counsel, respectfully submit this Memorandum in Support of Their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). These Defendants request that their motion be granted and that they be dismissed from this action and state the following in support.

**NATURE OF THE MATTER BEFORE THE COURT**

This is, in honesty, a medical malpractice and products liability action based on the care and treatment Plaintiff allegedly received from Dr. Garcia and Dr. Brannon from September, 2012 to March 4, 2015. Specifically, at issue are prescriptions for narcotic pain medications that Plaintiff alleges he received from the aforementioned doctors and an allegedly unnecessary joint-preservation surgical procedure performed by Dr. Brannon. Plaintiff alleges that as a result of the care and treatment he received, and the medical device that was implanted during his surgery, he

was forced to undergo additional medical treatments and suffered past and future economic and non-economic damages, including medical expenses, hospital expenses, prescription medication expenses, pain, suffering, and disability.

Approximately nine months after this case was first filed, Plaintiff filed a First Amended Complaint, which added as defendants PatientFirst, Dr. Garcia, and the Headache and Pain Center, P.A. (Doc. 84). The amendment also added claims under the Racketeering Influenced and Corrupt Organizations Act ("RICO") against all Defendants. This amendment prompted dispositive motions to be filed by all Defendants, which were granted in part and denied in part by the Court's Memorandum and Order of June 19, 2018 (Doc. 149).

In an attempt to cure many of the failures noted by the Court, Plaintiff has now filed a Second Amended Complaint ("SAC"). (Doc. 151). The SAC asserts eleven counts against the Defendants as follows:

1. Medical Negligence (Dr. Brannon)
2. Lack of Informed Consent (Dr. Brannon)
3. RICO violations under 18 U.S.C. § 1962(c) (all Defendants)
4. Civil Conspiracy (all Defendants)
5. Fraud (all Defendants, however, Plaintiff admits that this claim was previously dismissed by the Court)
6. Violations of the Kansas Consumer Protection Act ("KCPA") (All Defendants except Dr. Garcia)
7. Breach of Implied Warranty of Fitness (Dr. Brannon, OSI, JPI)
8. Strict Liability Failure to Warn (Dr. Brannon, OSI, JPI)
9. Vicarious Liability (OSI, JPI, PatientFirst)
10. Alter Ego Liability (PatientFirst)
11. Punitive Damages (all Defendants)

Doctors Hospital and PatientFirst now move for dismissal from this case pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiff has failed to allege specific facts to plausibly state a claim for relief against them.

## ISSUES PRESENTED

1. Whether Plaintiff's remaining RICO claim is subject to dismissal because the SAC failed to plead facts to plausibly show that his RICO damages were caused by the predicate acts?

2. Whether Plaintiff failed to allege specific facts to demonstrate that he was an aggrieved consumer as required under the KCPA?

3. Whether Plaintiff's claim for "vicarious liability" against PatientFirst necessarily fails because it is barred by K.S.A. 40-3403(h) and the futility of the underlying claims?

4. Whether Plaintiff's claims for Alter Ego liability against PatientFirst must also be dismissed for failure to state an underlying cause of action?

## AGRUMENT AND AUTHORITIES

**1. Standard of review**

A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The requirement of plausibility "serves not only to weed out claims that do not have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Plausibility requires that the allegations of a complaint should "raise a reasonable expectation that discovery will reveal evidence" supporting the elements of the claims. *Twombly,* 550 U.S. at 556.

While a complaint need not contain detailed factual allegations, it must contain more than labels and conclusions. *Twombly*, 550 U.S. at 553. A formulaic recitation of the elements of a cause of action fails to meet this standard. *Id.* The pleading attacked must also contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action. *Id.* In determining whether adequate facts exist, the court is not bound to accept legal conclusions stated as factual allegations. *Id.*

Because Plaintiff has alleged fraud in this case, heightened pleading standards apply. Federal Rule of Civil Procedure 9(b) mandates that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In order to satisfy this requirement, the complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (citation omitted). This rule requires "at a minimum" that plaintiffs support their fraud allegations "with all of the essential factual background that would accompany the first paragraph of any newspaper story-that is, the who, what, when, where and how of the events at issue." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (citation omitted); *see also Indep. Drug Wholesalers Grp., Inc. v. Denton*, Case No. 92-2164-JWL, 1993 U.S. Dist. LEXIS 2918, at *8-9 (D. Kan. Feb. 12, 1993) ("under Rule 9(b), plaintiffs must sufficiently allege each element of a RICO violation and its predicate acts of racketeering with particularity").

**2.     Count III must be dismissed because Plaintiff has failed to plead facts to plausibly show that his RICO damages were caused by the alleged predicate acts.**

"[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9, 130 S. Ct. 983, 989 (2010) (quoting *Holmes* v. *Securities Investor Protection Corporation*, 503 U.S. 258, 112 S. Ct. 1311, (1992)). This strict causation requirement derives from the language of the statute itself, which only provides a private cause of action for one "injured in his business or property *by reason of* a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c) (emphasis added). Thus, "establishing the element of causation—both actual and proximate—is crucial to proving any violation of RICO." *CGC Holding Co., Ltd. Liab. Co. v. Broad & Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014). "When a court evaluates a

RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006).

In the present case, the Court previously granted Plaintiff leave to amend this claim and allege how each Defendant committed particular predicate acts. (Doc. 149 at 13-14). Yet, Plaintiff's SAC failed to allege with the requisite specificity how Doctors Hospital or PatientFirst engaged in any predicate acts that caused damage to Plaintiff's business or property. The predicate acts as alleged are addressed in turn below.

### a. *The alleged mail fraud and wire fraud directed at Missouri Medicaid did not cause Plaintiff's copayment damages.*

Plaintiff's allegations of mail fraud and wire fraud against Doctors Hospital and PatientFirst are fatally deficient for lack of causation. Generally speaking, Plaintiff alleged that all Defendants formed a scheme to defraud Plaintiff and Missouri Medicaid through transmission of bills for unnecessary medical services rendered by Drs. Brannon and Garcia. To that end, Plaintiff alleged that Doctors Hospital utilized the mail in submitting fraudulent claim forms to Missouri Medicaid on forty-four separate instances. (Doc. 151 at 52-55). PatientFirst is "upon information and belief" only allegedly to have had knowledge that such transmissions would occur in the usual course of business, and to have "caused" Doctors Hospital or the Headache and Pain Center, P.A. to use the mail to submit claims across state lines. (Doc. 151 at 57). Defendants are also alleged to have collectively received payments via wire transfers from Missouri Medicaid for the aforementioned claims. (*Id*. at 60, ¶ 233).

Despite Plaintiff's attempt to frame the submission to and payment of claims by a third party as predicate acts, he has failed to plead facts to plausibly show how such acts were the but-for or proximate cause of the damages actually at issue. Specifically as to Plaintiff's copayments,

Plaintiff alleged no instances of a bill transmitted to him via mail or payment via wire that caused an injury to his business or property. Plaintiff only conclusory alleges that Doctors Hospital "used the United States mails in furtherance of this scheme by submitting… bills directly to Plaintiff for the unnecessary medical treatment" (*Id.* at 55, ¶ 222). In marked contrast to the amount of detail provided on the submission of Medicaid claims, Plaintiff omits entirely the factual elements regarding the allegedly fraudulent bills submitted to himself (i.e. who, when, how, and how much) as required by Fed. R. Civ. P. 9(b). **Importantly, Plaintiff does not allege that he actually paid a copayment because of any bills transmitted to him via the mail or wire.**

Under the common law, "[f]or a misrepresentation to be a cause in fact of the pecuniary loss that results from the plaintiff's action or inaction, the plaintiff must have relied upon the misrepresentation in incurring the loss." Restatement 2d of Torts, § 546, Comment b. The principle of reliance has equally been applied in RICO cases premised on fraud. *See CGC Holding Co., Ltd. Liab. Co.*, 773 F.3d at 1089 ("a plaintiff's ability to show a causal connection between defendants' misrepresentation and his or her injury will be predicated on plaintiff's alleged reliance on that misrepresentation."); *Summit Props. v. Hoechst Celanese Corp.*, 214 F.3d 556, 562 (5th Cir. 2000) ("when civil RICO damages are sought for injuries resulting from fraud, a general requirement of reliance by the plaintiff is a commonsense liability limitation.").

Plaintiff's SAC asserted no facts to plausibly explain how the subsequent submission of claims to Medicaid caused his copayments for medical services. Plaintiff did not assert that he relied on the submission of these claim forms in making his copayments, nor did he allege that he was even aware of the claims at the times he made payments. Furthermore, Plaintiff failed to alleged any instance of a bill transmitted to him personally via the mail or wire that he relied on in making a copayment. In sum, Plaintiff failed to assert sufficient facts to plausibly show how his

alleged RICO damages were caused by the alleged mail or wire fraud. This claim should be dismissed.

> **b. Plaintiff alleges no facts to demonstrate that Doctors Hospital and PatientFirst dealt in controlled substances or that the same caused his copayment damages for "office visits."**

The SAC acknowledges that Doctors Hospital and PatientFirst had no direct involvement with the predicate acts involving the criminal distribution of controlled substances under federal law. (*See* Doc. 151 at 63, ¶¶ 250-251) (alleging only that Drs. Garcia, Brannon, and The Headache and Pain Center, P.A. prescribed him controlled substances). Indeed, Doctors Hospital and PatientFirst's only involvement is alleged to be "directly participating in the billing of Missouri Medicaid and Plaintiff for office visits where controlled substances were prescribed for a non-legitimate purpose." (Doc. 151 at 64, 254-255).

These allegations are fatally flawed for multiple reasons. First, even assuming the allegations to be true, billing for "office visits" does not come under the 18 U.S.C. 841's prohibition against manufacturing, distributing, or dispensing controlled substances. Because the allegations do not contain any facts to plausibly demonstrate how Doctors Hospital or PatientFirst violated federal controlled substance law, they are subject to dismissal. (Doc. 149 at 15).

Fundamentally more problematic is that it is clear from the face of the SAC that the prescriptions at issue did not cause the alleged co-pay damages for "office visits." (Doc. 151 at 63, ¶ 252). Rather, it was Plaintiff's own conduct in scheduling and attending an office visit which proximately caused a charge for the same "office visit." This charge would have occurred whether or not a prescription for medication was subsequently written during that visit, and Plaintiff has failed to allege any medical expenses actually caused by an alleged dealing in controlled substances. As such, it is clear that the alleged RICO damages of copayments for "office visits"

were not caused by the allegedly violative conduct - the writing of a prescription for controlled substances.

In sum, Plaintiff failed to assert sufficient facts to plausibly show how Doctors Hospital or PatientFirst violated federal law governing controlled substances. Further, Plaintiff failed to allege specific facts to demonstrate how his alleged damages for copayments stemming from "office visits" were caused by the alleged predicate acts of dealing in controlled substances. This claim should be dismissed accordingly.

### c. Plaintiff failed to plead facts that plausibly show how the alleged money laundering of proceeds caused his copayment damages.

The allegations that Doctors Hospital and PatientFirst engaged in money laundering also fail for lack of causation. As the Court previously specified, the predicate act of money laundering is premised on "conducting a financial transaction involving the proceeds of specified unlawful activity while knowing that the transaction is designed to avoid a reporting requirement under federal or state law." (Doc. 149 at 15) (citing 18 U.S.C. § 1956(a)(1)(B)(ii)).

In the SAC, Plaintiff's money laundering allegations are devoid of any specificity, merely referring to the "reinvestment" of proceeds and "distribution" of funds obtained from the allegedly fraudulent billing for medical services. (Doc. 151 at 67-69). Plaintiff does not identify any specific transaction that Doctors Hospital or PatientFirst conducted with the proceeds, and does not identify any alleged reporting requirements avoided by Doctors Hospital or PatientFirst. Indeed, the only specific financial transaction alleged describes a purported loan from OSI to Dr. Brannon. This allegation is appropriately addressed in the co-defendants' motions to dismiss.

Even assuming for the sake of argument that Plaintiff's conclusory money laundering claims meet the specific pleading requirements of Fed. R. Civ. P. 9(b), which they do not, the allegations must still fail for lack of causation. Again, Plaintiff's "RICO allegation damages" are

strictly limited to the money he paid out-of-pocket for the allegedly unnecessary medical treatments. (Doc. 151 at 76, ¶ 343). There are no facts in the SAC to plausibly show that Plaintiff was (or is) aware of any unlawful financial "reinvestments" or "distributions," or that he relied on the same as inducement to make his copayment for office visits. Because Plaintiff failed to plead sufficient facts to plausibly show how his alleged RICO damages were caused by the predicate acts of money laundering, this claim must be dismissed.

Because neither Doctors Hospital nor PatientFirst is alleged to have participated in any racketeering activity that caused the RICO damages at issue, Count III of the SAC must be dismissed against them.

### 3. PatientFirst and Doctors Hospital should be dismissed because Plaintiff failed to allege he was an aggrieved consumer as required under the KCPA.

Pursuant to its Memorandum and Order of June 19, 2018, the Court dismissed Plaintiff's claims under the Kansas Consumer Protection Act, but allowed Plaintiff leave to amend to assert a limited claim based only on damages suffered from "the act of billing Plaintiff (or the act of selling a product for a particular price)." (Doc. 149 at 27). While the SAC attempted to re-assert this claim, Plaintiff again failed to include specific facts to demonstrate that he was an aggrieved consumer.

To recover damages, "a party must establish that he or she was aggrieved by a violation of the KCPA." *Kelly v. VinZant*, 287 Kan. 509, 525, 197 P.3d 803, 813 (2008). The Kansas Supreme Court defined "aggrieved" to mean one "whose legal right is invaded by an act complained of or whose pecuniary interest is directly affected by the [violative conduct]." *Id*. (citing *Finstad v. Washburn University*, 252 Kan. 465 (1993)).

In the SAC, Plaintiff makes the conclusory claim that he was aggrieved because he suffered co-pays, medical costs, and other out-of-pocket expenses as a result of Defendants' collective

"deceptive and unconscionable acts and practices." (Doc. 151 at 82, ¶ 357). Yet, Plaintiff failed to include any specific allegation about when he suffered these pecuniary losses, how much his copays were, and how they were "grossly excessive" compared to the costs of similar devices and procedures. This information is crucial to state a plausible claim in the case at hand, particularly because Plaintiff has admitted that he was on Missouri Medicaid at the time of the transaction, and that this program paid the "majority of the cost of the hip surgery." (Doc. 151 at 73, ¶ 320). *Given that Missouri Medicaid caps its recipients' responsibility for inpatient hospital services at $10.00 per hospitalization*,[1] the Court cannot plausibly infer that Plaintiff suffered any pecuniary losses caused by the alleged "grossly excessive" cost of the medical device or surgical procedure Plaintiff underwent. Indeed, whatever was billed for the medical device, even when compared to other similar products and procedures, Plaintiff's responsibility was necessarily no more than $10. This cost would have been the same no matter which similar procedure Plaintiff decided to undergo. Because Plaintiff failed to plausibly allege specific personal loss or injury resulting from the alleged overpricing, he is not an "aggrieved consumer" under the KCPA. This claim must be dismissed accordingly.

**4.     Plaintiff's claim for "vicarious liability" in Count IX of the SAC must be dismissed as it is barred by K.S.A. 40-3403(h) and the futility of the underlying claims.**

Count IX contains only the conclusory allegation that Dr. Brannon was at all times acting as an agent for PatientFirst, and that therefore, PatientFirst is vicariously liable for the "direct and proximate result of such acts and/or omissions set forth in more detail elsewhere in the [90-page] Complaint." (Doc. 151 at 88, ¶ 395). Although it is entirely unclear upon which of the various other claims Plaintiff bases this claim of vicarious liability, the effect is the same because all are

---

[1] 13 C.F.C. 70-4.050(5).

infirm. First, as the Court has already addressed, K.S.A. 40-3403(h) proscribes PatientFirst's vicarious liability for the acts of medical negligence and informed consent against Dr. Brannon arising out of his professional services as alleged in Counts I and II of the SAC. (Doc. 149 at 23-24).

Regarding Plaintiff's remaining RICO claim, it does not seem that Plaintiff attempts to assert vicarious liability against PatientFirst because the damages asserted in Count IX are not limited to the RICO damages as allowed by the Court's June 19, 2018, Memorandum and Order. (*See* Doc. 151 at 88) (asserting damages for both past and future economic and non-economic damages including pain, suffering, and disability). Although the majority of these damages were specifically disallowed by the Court, PatientFirst notes in an abundance of caution that any claim that it is vicariously liable under RICO must fail because: (1) Plaintiff's RICO claims failed to state a claim for relief as discussed above; and (2) PatientFirst is not vicariously liable under RICO as argued in its Motion to Dismiss the First Amended Complaint and incorporated herein. (Doc. 109 at 4-6).

To the extent Plaintiff attempts to assert PatientFirst may be vicariously liable for Dr. Brannon's alleged participation in a civil conspiracy (Count IV), this also must fail due to the civil conspiracy claim being premised on the unsound RICO and KCPA claims. Additionally, as argued in Dr. Garcia's contemporaneously-filed Motion to Dismiss, Plaintiff cannot maintain a claim for conspiracy based on the Anti-Kickback Statute, Stark's Law, or the False Claims Act because the former statutes do not contain a private right of action and Plaintiff failed to follow the *qui tam* provisions of the False Claims Act.

PatientFirst is also not vicariously liable for any of Dr. Brannon's alleged violations of the KCPA (Count VI), due to the prohibitions of K.S.A. 40-3403(h) and Plaintiff's failure to plead

plausible facts demonstrating that he suffered a pecuniary loss attributable to the sale or billing of services as discussed above. Finally, to the extent Plaintiff claims vicarious liability based on Count VII (Breach of Implied Warranty of Fitness) and Count VIII (Strict Liability Failure to Warn), these are barred against PatientFirst by the applicable statute of limitations as articulated in this Defendant's previous dispositive motions and incorporated herein. (Doc. 109 at 9-13).

In sum, Plaintiff has failed to state a claim for relief against PatientFirst based on a theory of vicarious liability, and Count IX must be dismissed.

**5.   Plaintiff's claims for Alter Ego liability (Count X) against PatientFirst must also be dismissed based on the failure to state an underlying cause of action.**

The Court should dismiss Plaintiff's claim for Alter Ego liability against PatientFirst because Plaintiff failed to state a plausible claim against its subsidiary entities over which PatientFirst is alleged to have exercised total dominion and control.

Under Kansas law, "[t]he doctrine of alter ego is used to impose liability on the individual who uses a corporation merely as an instrumentality to conduct his own business. Such liability arises from fraud or injustice perpetrated . . . on third persons dealing with the corporation." *Kan. Penn Gaming, LLC v. HV Props. of Kan. LLC*, No. 11-4155-RDR, 2012 U.S. Dist. LEXIS 85008, at *10 (D. Kan. June 19, 2012) (citing *Sampson v. Hunt*, 233 Kan. 572, 579, 665 P.2d 743, 751 (1983). Under the doctrine, "the court merely disregards the corporate entity and holds the individual responsible for his acts knowingly and intentionally done in the name of the corporation." *Sampson,* 233 Kan. at 579.

However, for the reasons set out in this Motion and the co-defendants' motions to dismiss, Plaintiff has failed to state a plausible claim for relief against the corporate entitles that PatientFirst is alleged to have used merely to conduct its own business - Doctors Hospital and The Headache

and Pain Center, P.A. Accordingly, Plaintiff also necessarily fails to plead a viable theory to pierce PatientFirst's corporate structure. The Court should therefore dismiss Count X.

**6.     Other issues raised by co-defendants are hereby incorporated.**

In an effort to reduce the amount of duplicate briefing, and in accordance with the Court's instructions in its Order on Plaintiff's Motion for Leave to Amend (Doc. 71), Doctors Hospital and PatientFirst hereby incorporate by reference the issues and arguments raised by it and the co-defendants in their motions to dismiss to the extent they are not inconsistent with the arguments asserted above.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Doctors Hospital and PatientFirst from this case pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff failed to state a claim for relief against either Defendant under RICO and Kansas law, and PatientFirst is not vicariously liable for the care and treatment allegedly provided by the co-defendants based on K.S.A. 40-3403(h) and the futility of the underlying claims. Finally, Plaintiff's attempts to pierce PatientFirst's corporate structure must also fail due to Plaintiff's failure to state plausible causes of action against Doctors Hospital and The Headache and Pain Center, P.A.

Submitted By:

**SIMPSON, LOGBACK, LYNCH, NORRIS, P.A.**

By: */s/ John Wesley Smith*
    Mark A. Lynch, KS Bar 14277
    John Wesley Smith, KS Bar 24935
    7400 West 110th Street, Suite 600
    Overland Park, Kansas 66210
    Telephone: (913) 342-2500
    Facsimile: (913) 342-0603
    mlynch@slln.com
    wsmith@slln.com
    ATTORNEYS FOR DEFENDANT DOCTORS
    HOPSITAL, L.L.C. AND PATIENTFIRST
    HEALTHCARE ALLIANCE, P.A.

## CERTIFICATE OF SERVICE

    I certify that on the 15th day of August, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send email notification of electronic filing to counsel for all parties of record.

By: */s/ John Wesley Smith*
    Attorney