IN THE UNITED STATES, DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CHARLES R. LUTTRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:17-cv-02137-HLT-GEB |
| | ) | |
| JAMES K. BRANNON, M.D., | ) | |
| ORTHOPEDIC SCIENCES, INC., | ) | |
| JOINT PRESERVATION INSTITUTE | ) | |
| OF KANSAS, L.L.C., | ) | |
| DOCTORS HOSPITAL, L.L.C., | ) | |
| MAURICIO GARCIA, M.D., | ) | |
| THE HEADACHE & PAIN CENTER, P.A. | ) | |
| and PATIENTFIRST HEALTHCARE | ) | |
| ALLIANCE, P.A. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO OSI'S MOTION TO DISMISS**

COMES NOW, Plaintiff Charles Luttrell, by and through his attorneys of record, for his Response in Opposition to the Motion to Dismiss by Orthopedic Sciences, Inc. and states as follows:

**PROCEDURAL HISTORY**

Plaintiff is concurrently responding to four separate motions to dismiss from the seven defendants in this matter. To conserve judicial resources and time, the procedural history regarding this case is articulated in the Plaintiff's Response in Opposition to Defendants James K. Brannon, M.D. and Joint Preservation Institute of Kansas, L.L.C.'s Motion to Dismiss and is hereby incorporated by reference.

**BACKGROUND**

On June 19, 2018, the Court entered its Memorandum and Order (Doc. #149) granting in part and denying in part Defendants' motions to dismiss. Specifically, the Court held:

1. "The Court concludes that the Tenth Circuit would most likely follow *Blevins* in this case. *See, e.g.*, *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1232 (10th Cir. 2006) (noting Congress's directive that RICO be liberally construed to effectuate its remedial purposes)." (6/19/2018 Order, Doc. #149 at pg. 8).

2. "Plaintiff's alleged injury in paying for unnecessary treatment did not flow from any personal injury suffered because he received that treatment; rather, the personal injury resulted from his decision to have the allegedly unnecessary treatment in the first place." (*Id.*).

3. "In addition, the Court rejects defendants' argument that plaintiff has not pleaded sufficient facts to state a plausible claim that he underwent unnecessary medical treatment." (*Id.*).

4. "Accordingly, defendants' motion to dismiss plaintiff's RICO claims on the basis of a lack of standing is denied to the extent that plaintiff seeks damages consisting of payments that he made for unnecessary medical treatment." (*Id.*).

5. "The Court concludes that plaintiff has alleged sufficient facts to satisfy the enterprise element of liability under Section 1962(c)." (*Id.* at pg. 11).

6. "The Court rejects the argument that the roles of the particular defendants in the alleged scheme have not been pleaded with sufficient detail." (*Id.* at pg. 11, footnote 2).

7. "Plaintiff has alleged predicate acts occurring over a period of several years with respect to his medical treatment.  Thus, plaintiff has pleaded sufficient facts to meet this requirement." (*Id.* at pg. 12).

8. "[A] person who "knowingly causes [something] to be delivered by mail" may be guilty of mail fraud, *see* 18 U.S.C. § 1341, and a person causes the mails to be used if he "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." (*Id.* at pg. 13)(citing *See Pereira v. United States*, 347 U.S. 1, 8-9 (1954); *see also Aetna*, 43 F.3d at 1560 ("plaintiff does not need to prove that each defendant personally used the mails but only that the defendant acted with knowledge that the use of the mails will follow in the ordinary course of business, or acted in circumstances where such use can be reasonably foreseen") (quoting *United States v. Maze*, 414 U.S. 295, 299 (1974)).

9. "Thus, the fact that OSI did not itself send out the bills or receive the payments is not dispositive." (*Id.* at pg. 13).

10. "Plaintiff is granted leave, however, to amend his complaint to allege how each defendant committed particular predicate acts (including whether RICO liability is asserted against any defendant only vicariously)."  (*Id.* at pgs. 13-14)(footnotes in quoted section omitted).

2

11. "The Court rejects the argument by defendants Garcia and HPC that these frauds have not been alleged with sufficient particularity. Plaintiff has sufficiently identified the particular bills and payments and alleged that they were fraudulent because the treatments were unnecessary." (*Id.* at pg. 14, footnote 4).

12. "With respect to the predicate federal controlled substance offenses, plaintiff has only identified specific conduct by Dr. Brannon, Dr. Garcia, and HPC relating to his receipt of prescription pain medications. Accordingly, plaintiff's claims against the other defendants are subject to dismissal, although plaintiff may amend his complaint to make clear how each defendant is alleged to have violated federal controlled substance law." (*Id.* at pg. 15)(footnote in quoted section omitted).

13. "The Court again rejects the argument that plaintiff has not pleaded sufficient facts with respect to the treatments being unnecessary or other details about the particular prescriptions." (*Id.* at pg. 15, footnote 6).

On July 3, 2018, Plaintiff filed his Second Amended Complaint ("SAC") consistent with the Court's Order.  (Doc. #151).  The SAC contained the following ten Counts:

      I.    Professional Negligence – Against Brannon

      II.    Lack of Informed Consent – Against Brannon

    **III.    Violations of the RICO Statute 18 U.S.C. § 1962(c) – Against All Defendants**

      IV.    Civil Conspiracy – Against All Defendants

      V.    Fraud – Subsumed in Medical Malpractice (Count I) and Informed Consent (Count II) claims.

    **VI.    Kansas Consumer Protection Act Violations – Against All Defendants**

     VII.    Breach of Implied Warranty of Fitness – Against Brannon and OSI

    VIII.    Strict Liability Failure to Warn – Against Brannon and OSI

     IX.    Vicarious Liability – Against OSI, JPI and PatientFirst

      X.    Alter Ego Liability – Against PatientFirst

     XI.    Punitive Damages – Against All Defendants.

Only counts III (RICO) and VI (KCPA) **bolded above** are subject to OSI's Motion to Dismiss.

## STANDARD OF REVIEW

The Court may dismiss a cause of action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic*, 550 U.S. at 555. The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555. The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## ARGUMENTS RAISED BY OSI

The following is a brief synopsis of the arguments raised by OSI in its Motion to Dismiss as listed by OSI's headings.

    I.   RICO (pgs. 4-15)

        A.  The SAC does not adequately allege a violation of § 1962(c) because it does not plausibly plead the existence of an enterprise (pgs. 4-7)

        B.  The SAC does not adequately allege a violation of § 1962(c) because it does not plausibly plead the occurrence of predicate acts (pgs. 7-12)

            1.  The mail and wire fraud allegations are not pled with particularity (pgs. 7-8)

            2.  The money laundering allegations do not adequately allege laundering of money (pgs. 8-11)

          3.   The SAC fails to plausibly show that OSI committed any fraud in relation to a controlled substance (pgs. 11-12)

          4.   The SAC's use of "Upon information and Belief" is inappropriate and fails to plausibly show that OSI committed any fraud in relation to his (sic) predicate acts under RICO (pg. 12)

   C.  Even if a § 1962(c) violation has been alleged, Plaintiff's RICO claim must still be dismissed because causation is lacking between Plaintiff's cognizable RICO injury and each of his alleged predicate acts (pgs. 12-15)

          1.   The SAC fails to allege that Plaintiff made any payment based upon a bill mailed to him (pg. 13)

          2.   Plaintiff made no wire payment nor did he rely on any advertisement transmitted over the internet (pgs. 13-14)

          3.   To the extent Plaintiff was injured, such injury was due to the underlying medical treatment, not the alleged money laundering (pg. 14)

          4.   Any allegations concerning OSI's involvement with controlled substances did not directly injure Plaintiff (pgs. 14-15)

II.  KCPA (pgs. 15-19)

   A.  Plaintiff is not an aggrieved consumer for KCPA purposes (pgs. 15-16)

   B.  Plaintiff has not adequately alleged that he was part of a "consumer transaction" (pgs. 16-19)

          1.   The transaction relating to the sale of the BGSS does not support a KCPA claim (pgs. 17-19)

          2.   The transaction relating to the joint preservation procedure cannot support a KCPA claim against OSI (pg. 19)

## **ARGUMENT**

## I.  Count III - RICO

OSI's Motion to Dismiss is fairly characterized as a motion to reconsider.  Such motions are governed by Local Rule 7.3 which states:

(a) Dispositive Orders and Judgments. Parties seeking reconsideration of dispositive orders or judgments must file a motion pursuant to Fed. R. Civ. P. 59(e) or 60. The court will not grant reconsideration of such an order or judgment under this rule.

(b) Non-Dispositive Orders. Parties seeking reconsideration of non-dispositive orders must file a motion within 14 days after the order is filed unless the court extends the time. A motion to reconsider must be based on:

> (1) an intervening change in controlling law;
> (2) the availability of new evidence; or
> (3) the need to correct clear error or prevent manifest injustice.

D. Kan. Rule 7.3. "[R]evisiting the issues already addressed 'is not the purpose of a motion to reconsider,' and 'advanc[ing] new arguments or supporting facts which were otherwise available for presentation when the original summary judgment motion was briefed' is likewise inappropriate." *Comeau v. Rupp*, 810 F. Supp. 1172, 1175 (D. Kan. 1992)(citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.). "A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider." *Cline v. S. Star Cent. Gas Pipeline, Inc.*, 370 F. Supp. 2d 1130, 1132 (D. Kan. 2005), *aff'd,* 191 F. App'x 822 (10th Cir. 2006)(*Sithon Mar. Co. v. Holiday Mansion*, 177 F.R.D. 504, 505 (D.Kan.1998)).

Here, OSI illustrates its true intentions by stating, "OSI does not concede that out of pocket expenses stemming from personal injury create a viable cause of action under RICO, but acknowledges that this Court has found differently." (OSI Mt. to Dismiss, Doc. #157, pg. 4, footnote 2). OSI proceeds to reargue that Plaintiff has not plead the existence of an enterprise nor the predicate acts required by RICO despite this Court's clear ruling that the First Amended Complaint meet these thresholds.

The Court did however grant leave to describe how each RICO participant committed particular predicate acts. Thus, the Second Amended Complaint adds to the First Amended Complaint; it does not subtract. Any argument that Defendants in general and OSI in particular

have a new opportunity to argue the threshold question of whether Plaintiff has standing to assert his RICO claims should be disregarded.  Therefore, the only question left to litigate in OSI's present motion, is whether Plaintiff has alleged in the SAC how and which each defendant committed the particular predicate acts, as this Court has previously ruled that the predicate acts themselves have been sufficiently pled.  Plaintiff has done so in the SAC.

As a second threshold matter, OSI inappropriately purports to adopt and incorporate by reference issues and arguments raised by other motions to dismiss.  (OSI Mt. to Dismiss, Doc. #157, pg. 1).  This Court has already clearly articulated that, "if one defendant's legal argument turns on its own particular circumstances, the Court will not necessarily consider that argument as made by another defendant that has not specifically briefed how the argument applies also to it." (6/19/2018 Order, Doc. #149 at pg. 4).   Accordingly,  OSI assertion should be summarily disregarded for lack of support or notice to Plaintiff as to how any of the multiple arguments raised by other motions to dismiss are applicable to OSI's particular circumstances.

**A. "The Court concludes that plaintiff has alleged sufficient facts to satisfy the enterprise element of liability under Section 1962(c)."  (6/19/2018 Order, Doc. #149 at pg. 11).**

Both the First Amended Complaint and the Second Amended Complaint sufficiently plead the existence of an enterprise.  This exact issue was extensively briefed by OSI (Doc. ## 86 & 120) and Plaintiff (Doc. # 97) and in the interest of economy, Plaintiff hereby incorporates his previous briefing by reference.  This Court rejected OSI's arguments at the pleading stage and held *inter alia*, "Plaintiff has alleged that defendants collectively formed an association-in-fact and thus formed an enterprise under the statute."  (6/19/2018 Order, Doc. #149 at pg. 9).  Further, "[a]ccording to plaintiff's allegations, however, OSI was not simply a disinterested party who did nothing more than supply a good that ultimately benefited the enterprise; rather, plaintiff has

alleged that OSI joined with others in a scheme to benefit its owner.  (*Id.* at pg. 10).  Finally, the Court concluded, "plaintiff has alleged sufficient facts to satisfy the enterprise element of liability under Section 1962(c)."  (*Id.* at pg. 11).

Despite the ***clear*** instruction from this Court that the pleading threshold of enterprise had been met, OSI devotes three pages of its Motion to Dismiss arguing the point.  Although, Plaintiff's position remains that this issue has been definitively settled by the Court, out of an abundance of caution Plaintiff responds to the points here.

OSI argues in the alternative that the SAC fails the enterprise threshold on either 1.) distinctiveness or 2.) defendants' business interests are independent from the "enterprise affairs". Both of these issues have been raised and considered by this Court and are easily disposed of.

This Court previously considered and rejected both arguments. (*Id.* at pgs. 9-11).  Incredibly, OSI's present motion cites *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001), *Roberts v. C.R. England, Inc.*, 318 F.R.D. 457 (D. Utah 2017) and *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017) as support for its position when this Court considered those ***exact same cases*** and ruled against OSI with regards to both arguments.  (*See id.*).

With regards to distinctiveness, "[t]he Court rejects this argument at the pleading stage. Plaintiff has alleged that defendants collectively formed an association-in-fact and thus formed an enterprise under the statute."  (6/19/2018 Order, Doc. #149 at pg. 9).  OSI raises a second nonsensical reference to ¶186 of the SAC which is a word-for-word copy of ¶118 of the First Amended Complaint.  Despite its insignificance to the question of distinctiveness of the parties in the context of a RICO claim, OSI is estopped from raising it now as it clearly had the opportunity to do so with its previous motion to dismiss the First Amended Complaint.

With regards to a showing that OSI conducted or participated in the enterprise affairs, "[t]he Court also rejects OSI's argument that plaintiff's complaint fails to satisfy the requirement in Section 1962(c) that the person have conducted or participated in the enterprise's affairs." (*Id.* at pg. 10). Further, "[a]ccording to plaintiff's allegations, however, OSI was not simply a disinterested party who did nothing more than supply a good that ultimately benefited the enterprise; rather, plaintiff has alleged that OSI joined with others in a scheme to benefit its owner." (*Id.*).

"RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4)." *United States v. Console*, 13 F.3d 641, 650 (3d Cir. 1993). The Supreme Court has held that an enterprise "is an entity separate and apart from the pattern of activity in which it engages," and that it is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 577 (1981). "The risk of fraud and abuse is particularly high in circumstances when such physicians-owners are the sole (or nearly the sole) users of the devices sold or manufactured by their PODs." Department of Health and Human Services, Office of Inspector General, Special Fraud Alert: Physician-Owned Entities at pg. 4 (March 26, 2013). "Whether a single conspiracy or multiple conspiracies have been shown is a question of fact resolved by the jury. A conspirator need not have agreed to commit every crime within the scope of the conspiracy, so long as it is reasonable to infer that each crime was intended to further the enterprise's affairs." *United States v. Hughes*, 895 F.2d 1135, 1140 (6th Cir. 1990).

Here, OSI was the manufacturing arm of the RICO enterprise which supplied orthopedic devices for implantation. The supplying of the BGSS was essential to the furtherance of fraud committed upon Plaintiff, without which, the surgery could not have taken place. The organization

of the enterprise has been adequately pled in the SAC.

Further, the "cost" of the BGSS was passed along to PatientFirst, HPC and Doctors Hospital, which in turn billed and collected money from Plaintiff and Plaintiff's Medicaid.  OSI relied upon PatientFirst, HPC and Doctors Hospital to perform the "collecting" portion of the RICO enterprise.  Thus, OSI's supply of the BGSS provided a necessary link in the chain which ultimately defrauded Plaintiff.

> **B.  "Plaintiff has alleged predicate acts occurring over a period of several years with respect to his medical treatment.  Thus, plaintiff has pleaded sufficient facts to meet this requirement." (6/19/2018 Order, Doc. #149 at pg. 12)[1].**

This Court has previously ruled that Plaintiff has sufficiently pled predicate acts occurring over several years.  However, the Court did grant leave "to amend his complaint to allege how each defendant committed particular predicate acts" as opposed to general identification of "defendants" when alleging predicate acts.  (*See id.* at pg. 13).  Therefore, the Court's holding cemented that the predicate acts *themselves* were adequately pled and the Second Amended Complaint only needed to assign which RICO entity(ies) perpetrated which predicate act(s).  The Second Amended Complaint does so.  Despite this holding, OSI spends 6 pages of its Motion to Dismiss arguing that the Second Amended Complaint "does not plausibly plead the *occurrence* of predicate acts."  (OSI Mt. to Dismiss, pg. 7)(emphasis added).  Clearly, this Court's ruling has laid to rest the question of whether the conduct alleged is adequately pled predicate acts under the RICO statute.

---

[1] This quote is pulled from the Court's discussion of satisfaction of the continuity requirement under the RICO statue.  The Court held as follows: "Defendant OSI argues that plaintiff has not pleaded facts (such as a those involving other victims) to support a reasonable inference that there is a threat of future violations by defendants here. In the above excerpt, however, the Supreme Court made clear that the continuity requirement may be satisfied either by showing an open-ended pattern, with the threat of violations continuing into the future, *or a closed-ended pattern consisting of repeated conduct in the past of sufficient duration*. Plaintiff has alleged predicate acts occurring over a period of several years with respect to his medical treatment. Thus, plaintiff has pleaded sufficient facts to meet this requirement." (6/19/2018 Order, Doc. #149 at pgs. 11-12)

As a threshold matter before discussion of each of the subsections of predicate acts, OSI makes the inaccurate statement that predicate acts occurring between September 25, 2012 and December 30, 2012 must be dismissed because they are time-barred by relying upon *Dummar v. Lummis,* 543 F.3d 614, 621 (10th Cir. 2008).  (*See id.* at pg. 7).  OSI asserts parenthetically that the holding in *Dummar* was "stating that a four-year limitations period applies to civil-RICO claims starting on the date of injury."  (*Id.*).  This characterization of *Dummar* is demonstrably incorrect.

The *Dummar* Court reviewed the 10th Circuit's holding in *Cory v. Aztec Steel Bldg., Inc.*, which stated:

> While the Supreme Court has not settled upon a definitive rule for when the limitations clock starts running, it has announced two possibilities: either when the plaintiff knew or should have known of his injury (the injury-discovery rule); or when the plaintiff was injured, whether he was aware of the injury or not (the injury-occurrence rule).

468 F.3d 1226.  The *Dummar* Court continued, "**It is unnecessary for us to choose between the two rules today**, because it cannot be disputed that Mr. Dummar's injury and his discovery of that injury occurred simultaneously, when the jury returned its verdict that the Holographic Will was invalid."  *Dummar*, at 621(emphasis added).  Compare the previous quoted language from the *Dummar* holding with OSI's characterization of *Dummar* as "stating that a four-year limitations period applies to civil-RICO claims starting on the date of injury."  To further illustrate OSI's disregard for the veracity of its argument, the 10th Circuit accurately characterized its holding *Dummar* as follows, "We have yet to adopt either an injury-discovery or injury-occurrence rule for a civil RICO claim in this circuit."  *Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1276 (10th Cir. 2014).  OSI will be unable to present any binding 10th Circuit or Supreme Court case law definitively setting the accrual rule under the RICO statute.

At best, the courts which have reviewed the RICO accrual rule in the 10th Circuit have been

able to defer ruling whether the injury-discovery or injury-occurrence rule would apply under the specific factual circumstance of the case at hand.[2]  Here, parties have yet to engage in discovery which will allow the Court to make a ruling as to whether the injury-discovery rule or the injury-occurrence rule would be implicated for the accrual of Plaintiff's claim.  It is clear, even from OSI's brief that a favorable ruling to OSI on the question of accrual would not eliminate all of Plaintiff's predicate acts, but rather reduce the number of predicate acts Plaintiff is able to rely upon as a basis for the RICO claim.  Therefore, because an answer on this question will not be dispositive at this stage to Plaintiff's RICO claims, and because Plaintiff is entitled to an opportunity to create a sufficient record to illustrate that the predicate acts between September 25, 2012 and December 30, 2013 are not barred under the injury-discovery accrual rule, Plaintiff respectfully requests that this Court deny OSI's request to dismiss these predicate acts.

Additionally, it appears that OSI has incorrectly calculated the date range of predicate acts which would even be subject to dismissal under any theory of RICO accrual.  Plaintiff filed his original complaint on March 3, 2017 (OSI was a named defendant) and moved the Court to file his First Amended Complaint under seal on September 29, 2017 (the First Amended Complaint was an attachment to this motion under seal).  Defendants resisted the motion for leave to file under seal the First Amended Complaint and even received extensions of time to respond to motion

---

[2] *Crowe v. Servin*, No. 17-CV-01344-GPG, 2017 WL 6349717, at *2 (D. Colo. Sept. 8, 2017)("The RICO statute does not provide an accrual rule. However, the Supreme Court has recognized that either the injury-discovery rule or the injury-occurrence rule applies. *See Rotella*, 528 U.S. at 553–54; *Dummar v. Lummis*, 543 F.3d 614, 621 (10th Cir. 2008)"); *Ortiz v. DePriest*, No. 14-CV-02639-RBJ, 2016 WL 6777828, at *7 (D. Colo. Nov. 8, 2016) ("This Court need not decide which of the two accrual rules governs Mr. Ortiz's civil RICO claim."); *Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1277 (10th Cir. 2014)("We need not decide in this case which accrual rule governs civil RICO claims because Kroenlein's claims are barred under either the injury-occurrence or the injury-discovery rule.")

requesting leave to amend.  After briefing, this Court ruled Plaintiff could file his First Amended Complaint which was filed December 21, 2017 (Doc. # 84).  It is difficult to tell from OSI's passing argument (132 words) how it calculated the date range for the predicate acts it believes are time-barred.  However, amending the complaint against OSI relates back to the original filing date of March 3, 2017.  Even under OSI's strained interpretation of the RICO accrual rule, predicate acts occurring after March 3, 2013 would be timely pled.

In the alternative, OSI has presented no case law or statutory authority supporting a conclusion that the statute of limitations would bar the inclusion of time-barred predicate acts as part of the illustration of a RICO *pattern of racketeering*.  At best, OSI may have an argument that certain financial losses from predicate acts that occurred beyond the statute of limitations bar *recovery* on those specific injury dates.  However, OSI has not presented any reason for this Court to conclude that the occurrence of those properly pled predicate acts cannot form the basis of a RICO conspiracy which also contains predicate acts that stretched into a time when no party will contend that Plaintiff's claims are untimely.  Ultimately, there are at least two predicate acts of racketeering activity alleged in the Second Amended Complaint which occurred within four years of filing rendering this issue as less than dispositive as to the threshold survivability of Plaintiff's RICO claims.  Plaintiff would expect such a defense to be properly pled in a motion in limine or motion for summary judgement after the close of discovery.  Therefore, Plaintiff respectfully requests that this Court deny OSI's motion to dismiss predicate acts which occurred between September 25, 2012 and December 30, 2013.

1. **Mail Fraud - "The Court rejects the argument by defendants Garcia and HPC that these frauds have not been alleged with sufficient particularity. Plaintiff has sufficiently identified the particular bills and payments and alleged that they were fraudulent because the treatments were unnecessary." (6/19/2018 Order, Doc. #149 at pg. 14, footnote 4).**

In recognition of the weakness of its argument, OSI is only able to cobble together one page of argument regarding purported pleading deficiencies in Plaintiff's mail and wire fraud predicate acts section of his RICO claim.  It bears repeating that this Court has previously rejected arguments that Plaintiff has failed to plead mail and wire fraud with particularity.  (*See* 6/19/2018 Order, Doc. #149 at pg. 14, footnote 4).  The Court did grant leave for Plaintiff to amend his complaint to allege how *each* defendant committed particular predicate acts of mail and wire fraud, which he has done so with the Second Amended Complaint.  However, it appears that OSI has limited its argument to the substance of the mail and wire fraud predicate acts and does not make any mention that attribution of a particular act to a particular RICO entity or defendant is lacking.

Plaintiff's position remains that the Court has already ruled that Plaintiff's mail and wire fraud claims have been plead with the requisite particularity.  However, out of an abundance of caution Plaintiff responds to certain arguments below.

OSI makes several pleading arguments about time, place and contents of the fraudulent bills submitted by OSI and other defendants as articulated in the Second Amended Complaint. Despite the Court's previous ruling that these frauds have been plead with the requisite particularity, OSI still grasps to the fiction that it is unable to understand which transactions are at issue in this RICO action.  However, the Second Amended Complaint has, as exhibits, the fraudulent bills which contains all of the requisite information necessary for OSI to have fair notice of the claims against it.  (Second Amended Complaint, Doc. # 151-1, Exhibits E & H) and the Court has previously held as such.

Because this Court has already held that the mail and wire fraud predicate acts have been pled with sufficient particularity and because OSI does not identify any material deficiency with the Second Amended Complaint, Plaintiff respectfully requests that this Court deny OSI's motion.

**2.    Money Laundering - "If plaintiff can allege the necessary facts, he is granted leave to amend his complaint to state a cognizable claim based on predicate money laundering by specific defendants." (6/19/2018 Order, Doc. #149 at pg. 16).**

Plaintiff has alleged the necessary facts to state a cognizable claim based upon predicate money laundering by specific defendants in the SAC as illustrated in paragraphs 257-341. As more fully articulated in the SAC, OSI, Brannon, Garcia, HPC, PatientFirst, Doctors Hospital and JPI all conspired to and did knowingly conduct financial transactions involving the proceeds from specified offenses, with the transactions designed to avoid reporting violations.

This Court has previously ruled that Plaintiff had leave to amend his complaint to state a cognizable claim based upon predicate money laundering by specific defendants. Specifically, the Court pointed out that "plaintiff has not alleged that any particular defendant knowingly conducted financial transactions involving *proceeds* from specified offenses, with the transactions designed to avoid reporting violations. It is not enough for plaintiff simply to have alleged reporting violations by Dr. Brannon and OSI." (6/19/2018 Order, Doc. #149 at pg. 16). Accordingly, Plaintiff filed his Second Amended Complaint addressing the issues identified by the Court.

"Brannon, Garcia, Doctors Hospital, Pain Center and PatientFirst reinvested and knowingly conducted financial transactions with the proceeds received from Plaintiff and Plaintiff's Missouri Medicaid to continue to operate the common scheme of defrauding Plaintiff and Plaintiff's Missouri Medicaid." (SAC, Doc. # 151. at ¶267). "But for this reinvestment of proceeds, Brannon, Garcia, Doctors Hospital, Pain Center and PatientFirst would not have been able to continue to the next phase of their collective scheme to defraud Plaintiff and Plaintiff's Missouri Medicaid." (*Id.* at ¶268). These proceeds were illicitly gained because the prescriptions were fraudulent for a lack of legitimate purpose and bills sent to Plaintiff and Plaintiff's Missouri Medicaid were also fraudulent. (*See id.* at ¶¶ 262-266). "But for this reinvestment of proceeds

from unnecessary medical treatment of other patients beyond Plaintiff, Brannon, Garcia, Doctors Hospital, Pain Center and PatientFirst would not have been able to continue to operate and enlist other unsuspecting patients into their scheme, including Plaintiff." (*Id.* at ¶270).

OSI sold the BGSS directly to Plaintiff through its sales representative Brannon. Doctors Hospital and HPC billed Plaintiff and Plaintiff's Missouri Medicaid for the cost of the BGSS, surgery supplies and surgical services. (*See id.* at ¶¶ 271-275). Payments made by Plaintiff and Plaintiff's Missouri Medicaid were funneled through Doctors Hospital, PatientFirst and JPI to OSI, among other recipients. (*See id.* at ¶¶ 276-283). "OSI then distributed its proceeds to Brannon in the form of a 'loan.'" (*Id.* at ¶284). This payment, characterized as a "loan," violates three federal reporting guidelines; The Physician's Payments Sunshine Act (42 U.S.C. § 1320a-7h), The Anti-Kickback Statute (42 U.S.C. § 1320a-7b) and The Stark Law (also known as the Physician Self-Referral Law)(42 U.S.C. § 1395nn). (*See generally id.* at ¶¶ 297-341).

The Second Amended Complaint clearly articulates that OSI concealed the source of the ill-gotten funds (as stemming from fraudulent transactions because they were received in payment from Missouri Medicaid (a federally-funded program) and Plaintiff for unnecessary medical treatment) to Brannon is the form of a "loan." The specified unlawful activity was the entirety of the predicate acts as attributed to OSI described in the Second Amended Complaint. OSI is under the impression that by characterizing illicit payments of $315,093.21 from itself to Brannon as "loans" these transactions are cloaked with protection. In fact, it was these very types of self-dealing that The Physician's Payments Sunshine Act (42 U.S.C. § 1320a-7h), The Anti-Kickback Statute (42 U.S.C. § 1320a-7b) and The Stark Law (also known as the Physician Self-Referral Law)(42 U.S.C. § 1395nn) were designed to prevent.

OSI complains that the SAC does not allege that Dr. Brannon was not required to pay the money back to OSI.  (*See* OSI Mt. to Dismiss, pg. 10).  However, OSI, as well as all other defendants have successfully resisted all discovery on that topic for several months.  Though, it is telling that OSI has not submitted any documentation as evidence that the loan was, in fact, paid back.  This is an important area of inquiry which Plaintiff seeks discovery.  Legitimate medical device companies do not provide hundreds of thousands of dollars in "loans" to the doctors which use their products. The SAC has addressed the concerns raised by this Court in its Order regarding the money laundering claim and Plaintiff deserves an opportunity to develop this theory of his case through discovery.

Concerning plausibility, OSI appears to operate under the impression that their business model is above reproach.  However, several high-profile examples of physician-distributor kick-back abuse have come to light over the past few years.  Recently, the United States District Court for the Central District of California denied a motion from a POD to dismiss claims against it stemming from the AKS on very similar facts to the present action.  *U.S. v Reliance Medical Systems, LLC*, concerned violations of the AKS brought by the United States against a POD (Reliance Medical Systems) and its physician-investors.  The U.S. alleged that the POD and physician investors violated the False Claims Act and AKS through a scheme by which the POD knew the physician-investors and hospitals would submit false or fraudulent Medicare claims for surgeries performed by the physician-investors. 2014 WL 5761113, at *2 (C.D. Cal. Nov. 5, 2014)(denying POD's motion to dismiss).  The U.S. alleged the Medicare claims were false or fraudulent because the claims were tainted by the kickbacks that the physician-investors received in exchange for their use of the POD's implants.  *Id.*  Further, the U.S. alleged that some of the surgeries performed were not medically necessary or were more extensive than necessary as a result of the scheme as the physician-investors allegedly performed surgeries to increase their

usage of the POD's products and thereby increasing the amount of kickbacks received). *Id.* The

*Reliance* Court denied the defendants motion to dismiss holding:

> There appear to be two reasons that Plaintiff contends that the claims submitted for Medicare reimbursement as part of the alleged scheme were false: (1) all of the claims involved unlawful kickbacks, and (2) some of the claims were for procedures or devices that were not medically necessary or were more extensive than necessary.
>
> …
>
> The use of a particular device, and the need for reimbursement for the cost of the device itself, does not occur in a vacuum. A physician must perform a surgery during which the device is implanted in a patient. The AKS plainly states that "a claim that includes items *or services* resulting from a violation ... constitutes a false or fraudulent claim." 42 U.S.C. § 1320a–7b(g) (emphasis added). This makes sense; without a qualified physician willing and able to perform the surgery to implant a Reliance device, there is no need for the device. Thus, the physician's services are themselves an integral part of the alleged scheme at issue here, and claims for reimbursement for physician services stemming from the scheme constitute false claims to the same extent that claims for reimbursement for the implants do. Therefore, the Court DENIES the Motion as to Plaintiff's claims based on violations of the AKS.
>
> …
>
> Generally, a defendant may be held liable for causing another to submit a false claim where the submission of such claim was "reasonably foreseeable." *See U.S. ex rel. Cantekin v. Univ. of Pittsburgh,* 192 F.3d 402, 415–16 (3d Cir.1999). If Plaintiff is successful in proving that the physician-investors received unlawful kickbacks for their use of [Defendant POD's] devices, it is plausible to infer that Defendants knew that the physicians would do whatever it took to continue receiving such large kickbacks, including performing unnecessary or more extensive than necessary surgeries. Therefore, the Court DENIES the Motion as to this alternative theory of liability.

*Id.* (denying motion to dismiss)(brackets added)(emphasis in original).

In a companion case from the same U.S District before a different judge, one of the

defendant physician-investors attempted to resist a motion to compel from the U.S. on Fifth

Amendment grounds. *See generally United States v. Sabit,* 2014 WL 1317082, at *1 (E.D. Mich.

Apr. 1, 2014). In *Sabit,* one of the physician-investors of the scheme described in *Reliance supra.*

attempted to avoid providing discovery to the federal government for his role in performing

unnecessary implants of spinal devices. *Id.* The *Sabit* court described the POD relationship in the case as follows:

> Sabit practiced medicine in California. Reliance sells spinal implants to hospitals. In May, 2010, Sabit was one of the first two physician investors in a company by the name of Apex Medical Technologies, LLC ("Apex") which was in the business of supplying Reliance's implantable medical devices to hospitals for use on their physician-investors' patients. Reliance operated Apex. Reliance conducted business in Ventura, California through Apex from May, 2010 until December, 2010. After he became an investor in Apex, Sabit's use of Reliance's surgically implanted devices increased dramatically. For example, Sabit used one type of implant, known as a PEEK cage, seven times in 2009, and after he became an Apex investor, used that same implant 49 times in 2010. (Klutz Decl. at ¶ 12). The government maintains that Sabit remained an Apex investor until July, 2012. During the two years that the government alleges Sabit was an Apex investor, the government asserts that Reliance paid him approximately $30,000 a month for a total of $400,000. *Id.* at ¶ 10.

*Id.* The government relied upon the AKS to support its motion to compel discovery. *Id.* In reviewing the AKS the *Sabit* court stated, "[t]he AKS makes it a felony for a person to solicit or receive a payment or any remuneration in exchange for furnishing goods for which payment may be made under a federal health program, including Medicare and Medicaid. 42 U.S.C. § 1320a–7b(b)." *Id.* As further support of its analysis, the *Sabit* court looked to the Department of Health and Human Services Office of Inspector General Special Fraud Alert which Luttrell cited and attached to the FAC. "On March 26, 2013, the Department of Health and Human Services Office of the Inspector General ("OIG") issued a special fraud alert declaring that physician-owned distributorships such as Reliance, "are inherently suspect under the anti-kickback statute." *Id.*

Here, OSI was part of a conspiracy to avoid the Anti-Kick Back Statute, 42 U.S.C. § 1320a–7b. Similar to the Dr. Sabit, Brannon initially practiced medicine in California and invested in a POD, specifically OSI. Brannon implanted the BGSS, as supplied by OSI, into Plaintiff. The bills for this surgery (among others) mailed to Plaintiff and Plaintiff's Missouri Medicaid were fraudulent on their face because the claims involved unlawful kick-backs (from OSI to Brannon) and the

procedure itself was not medically necessary and was more expensive than necessary.  *See Reliance,* 2014 WL 5761113, at *2.  All of these facts have been sufficiently pled in the Second Amended Complaint and Plaintiff respectfully requests that OSI's motion to dismiss the RICO count be denied.

3. **Controlled Substance - "The Court again rejects the argument that plaintiff has not pleaded sufficient facts with respect to the treatments being unnecessary or other details about the particular prescriptions." (6/19/2018 Order, Doc. #149 at pg. 15, footnote 6).**

OSI relies upon a two-step argument in this section which necessarily fails because the first prong of OSI's argument fails.  OSI asserts that the controlled substances allegations against it fail because the mail fraud allegations against it lack requisite particularity.  As described *supra*, Plaintiff plead mail fraud with requisite particularity and thus OSI has failed to satisfy the precedent to its two-step argument.  Although, now unnecessary, Plaintiff notes that OSI omitted the allegations in paragraph 253 from its motion.  The allegations contained in the Second Amended Complaint sufficiently plead the frauds committed by OSI with relation to its role in the fraudulent billing for over prescription of narcotic pain medications.

4. **Upon Information and Belief - "The Court rejects the argument by defendants Garcia and HPC that these frauds have not been alleged with sufficient particularity. Plaintiff has sufficiently identified the particular bills and payments and alleged that they were fraudulent because the treatments were unnecessary." (6/19/2018 Order, Doc. #149 at pg. 14, footnote 4).**

None of the cases identified by OSI support its proposition that the SAC's allegations are so general that OSI does not have notice of the claims against it.  With regards to the phrase "Upon Information and Belief," OSI misrepresents the holdings of the case law presented.  In *Dorf v. City of Evansville,* the court was concerned with the use of "upon information and belief" in the context of facts that should be known to the Plaintiffs themselves.  2012 WL 1440343, *6.  Further, the *Dorf* Court cites to *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir.2010) (noting that allegation

20

made "upon information and belief" remains appropriate post-*Iqbal* and *Twombly* "where the facts are peculiarly within the possession and control of the defendant"). *Dorf,* at \*6.

Here, it cannot be claimed that the SAC is without factual support. Indeed, the beyond the face of the pleadings, the SAC attaches 133 pages of exhibits. The allegations that contain the preface "upon information and belief" relate to information and facts particularly within the control of Defendants. Discovery on these matters has yet to commence and pleadings of this character are well within the acceptable legal norms prior to discovery.

### C. Causation - "In addition, the Court rejects defendants' argument that plaintiff has not pleaded sufficient facts to state a plausible claim that he underwent unnecessary medical treatment."  (6/19/2018 Order, Doc. #149 at pg. 8).

OSI also argues in the alternative that even if this Court finds that the Second Amended Complaint sufficiently alleges a RICO violation (which it has), that the claim should still be dismissed for lack of a causal link. It appears that this argument is somewhat of an afterthought with only two pages devoted to the points raised, separated into four sections. However, despite this Court's previous order finding that Plaintiff pleaded sufficient facts to state a plausible claim that he underwent unnecessary medical treatment and that he was damaged by paying for this medically unnecessary treatment, Plaintiff responds to the arguments below.

### 1. Plaintiff Payments - "Accordingly, defendants' motion to dismiss plaintiff's RICO claims on the basis of a lack of standing is denied to the extent that plaintiff seeks damages consisting of payments that he made for unnecessary medical treatment."  (6/19/2018 Order, Doc. #149 at pg. 8).

Plaintiff directly paid a portion of the treatment costs stemming from the medically unnecessary BGSS hip procedure. Further, Plaintiff directly paid OSI and other defendants multiple times throughout the course of Plaintiff's medically unnecessary treatment, as more fully described in the SAC. Each of these payments is an injury to Plaintiff's property and bestows RICO standing. *See Blevins*, 849 F.3d at 1021.

"In the context of unnecessary medical treatment, payment for the treatment may constitute an injury to property." *Blevins v. Aksut*, 849 F.3d 1016, 1021 (11th Cir. 2017)(holding that injured plaintiffs allegations of medically unnecessary heart surgeries constituted injuries to "business or property" reversing district court's dismissal of RICO claims)(expanding on *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP,* 634 F.3d 1352, 1363 (11th Cir. 2011).

The apparent fact that Plaintiff's Medicaid, and not Plaintiff, was the *primary* target of Defendants' fraud is of no consequence. Plaintiff need not be the "direct target" of the predicate acts to have RICO standing. *See Diaz v. Gates,* 420 F.3d 897, 901 (9th Cir. 2005)(holding that there is "no room in the statutory language for an additional, amorphous requirement that, for an injury to be to business or property, the business or property interest have been the "direct target" of the predicate act."). The Supreme Court of the United States has also clarified when a private RICO suit is allowed as follows:

> Section 1964(c) authorizes a private suit by "[a]ny person injured in his business or property by reason of a violation of § 1962." Section 1962 in turn makes it unlawful for "any person"—not just mobsters—to use money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an enterprise through a pattern of racketeering activity, or to conduct an enterprise through a pattern of racketeering activity. §§ 1962(a)–(c). If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c).

*Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 495 (1985). Even OSI even concedes that "the allegations suggest that Missouri Medicaid may have been injured by Defendants' alleged conduct, but they do not plausibly show that Plaintiff sustained a cognizable injury under RICO." (OSI Mt. to Dismiss at pg. 14). Defendants have no shield from liability by virtue of perpetrating a smaller dollar figure fraud on Plaintiff as compared to the fraud they perpetrated upon Missouri Medicaid. *See Sedima,* 473 U.S. at 495.

Here, Plaintiff's SAC makes numerous references to the connection between being mailed fraudulent bills and remitting payment for those unnecessary medical services.  As a non-inclusive list, Plaintiff has alleged it at paragraphs 30, 46, 47, 63, 65, 69, 98, 99, 102, 116, 121, 124, 130, 211, 222, 225, 226, 232, 254, 255, 256, 273, 277, 338, 343 and 344.  OSI's argument on this point strains credulity and is affront to the previous Order from this Court.  Accordingly, Plaintiff respectfully requests the Court deny OSI's Motion to Dismiss.

**2. Transmission Via Wire - "…OSI has not provided any authority to suggest that it could not have committed wire fraud as a matter of law merely because some other party made the transmission." (6/19/2018 Order, Doc. #149 at pg. 13).**

This argument shares the same fate as the argument above.  The Court has previously considered the exact same argument and rejected it.  (*See id.*).

> Finally, the Court rejects OSI's argument that the allegedly false statement concerning price in the magazine article represented mere puffery, as the price of the device would have a sufficient basis in fact. OSI also argues that the magazine is the entity that transmitted the article by wire (over the internet); but the wire fraud statute also applies to one who "causes [material] to be transmitted" by wire, *see* 18 U.S.C. § 1343, and OSI has not provided any authority to suggest that it could not have committed wire fraud as a matter of law merely because some other party made the transmission.

(*Id.*).  OSI's receipt of money via wire and transmission of fraudulent material via wire are predicate acts and part of its pattern of racketeering activity in violation of RICO.  Such racketeering activity was directed at Plaintiff, Plaintiff's Missouri Medicaid and such other unsuspecting potential target patients (and their lucrative federal healthcare benefits).

**3. Plaintiff's Underlying Medical Treatment - "Plaintiff's alleged injury in paying for unnecessary treatment did not flow from any personal injury suffered because he received that treatment; rather, the personal injury resulted from his decision to have the allegedly unnecessary treatment in the first place." 6/19/2018 Order, Doc. #149 at pg. 8).**

This argument requests the Court to re-litigate standing.  OSI again unsuccessfully tries to tie Plaintiff's well pled RICO damages to his other theories of recovery.  This Court has already considered this argument and disposed of it.  The SAC states, "[t]o be clear, Plaintiff's RICO allegation damages are strictly limited to the money that he directly paid out-of-pocket to Brannon, Garcia, OSI, JPI, Doctors Hospital, Pain Center and PatientFirst for unnecessary medical treatment." (SAC at ¶116).  Further, "[b]ut for this reinvestment of proceeds, Brannon, Garcia, Doctors Hospital, Pain Center and PatientFirst would not have been able to continue to the next phase of their collective scheme to defraud Plaintiff and Plaintiff's Missouri Medicaid."  (*Id.* at ¶294).  "Upon information and belief, Brannon, OSI, JPI, Doctors Hospital, Pain Center and PatientFirst perpetrated this fraud on patients before and after the treatment provided to Plaintiff and reinvested those proceeds to continue to operate the fraudulent scheme on Plaintiff and other patients."  (*Id.* at ¶295).  But for this reinvestment of proceeds from other patients which received unnecessary medical treatment, Brannon, OSI, JPI, Doctors Hospital, Pain Center and PatientFirst would not have been able to continue to operate and enlist other unsuspecting patients into their scheme.  (*Id.* at ¶296).

With regards to OSI's willful violation of reporting statutes, "Plaintiff relied upon these representations and omissions and directly and proximately harmed."  (*Id.* at ¶314, regarding The Physician's Payments Sunshine Act).  "Plaintiff was directly and proximately harmed by these predicate acts and by the kickbacks received by Brannon from OSI for using the OSI manufactured hip product in Plaintiff's surgery.  Had Plaintiff known that Brannon was receiving impermissible kickbacks from OSI he would have sought a second opinion regarding the appropriateness of treatment offered by Brannon, OSI and Doctors Hospital."  (*Id.* at ¶¶323-324, regarding The Anti-Kickback Statute).  "Plaintiff was directly and proximately harmed by these predicate acts and by the self-referral payments received by Brannon from OSI for using the OSI manufactured hip

product in Plaintiff's surgery.  Had Plaintiff known that Brannon was receiving impermissible self-referral payments from OSI he would have sought a second opinion regarding the appropriateness of treatment offered by Brannon, OSI, PatientFirst and Doctors Hospital."  (*Id.* at ¶¶334-335, regarding The Stark Law (also known as the Physician Self-Referral Law)).

      **4.  Controlled Substance - "The Court again rejects the argument that plaintiff has not pleaded sufficient facts with respect to the treatments being unnecessary or other details about the particular prescriptions." (6/19/2018 Order, Doc. #149 at pg. 15, footnote 6).**

The allegations contained in the SAC sufficiently plead the frauds committed by OSI with relation to its role in the fraudulent billing for over prescription of narcotic pain medications.  "As more fully described in the mail fraud allegations portion of the RICO claim, PatientFirst, Doctors Hospital, JPI and OSI committed predicate acts in violation of federal controlled substance law by directly participating in the billing of Missouri Medicaid and Plaintiff for office visits where controlled substances were prescribed for a non-legitimate purpose, specifically excessively billing Plaintiff and Plaintiff's Missouri Medicaid and make Plaintiff more susceptible to pressure to undergo expensive and unnecessary surgeries. Those allegations are hereby incorporated by reference."  (SAC at ¶254).

## II.  Count VI – Kansas Consumer Protection Act

### A.  Plaintiff has properly pled that he is an aggrieved consumer under the KCPA

Plaintiff has properly pleaded he is an aggrieved consumer for purposes of the KCPA because Defendants' unconscionable and deceptive billing practices caused Plaintiff to incur out of pocket expenses, including co-pays, and increased medical costs, including Medicaid liens.  Within its Defendant OSI's Memorandum in Support of Its Motion to Dismiss, Defendant OSI argues Plaintiff is not an aggrieved consumer relying predominantly upon *Finstad v. Washburn Univ. of Topeka,* in

support of this claim. 252 Kan. 465 (1993). However, for the reasons set forth below, *Finstad* fails to support Defendant OSI's position, and as such, these arguments should be disregarded.

In *Finstad*, a group of students filed suit against Washburn University alleging a misrepresentation regarding accreditation within the Washburn catalogue violated the KCPA KCPA. 252 Kan. 465, 466-67 (1993). After a period of discovery, Washburn University filed a motion for summary judgment stating the students had failed to "demonstrate a causal link between Washburn's false statements and their injuries." *Id.* at 467. The students were consumers pursuant to the KCPA and the motion for summary judgment and there was no dispute as to whether or not there was a misrepresentation within the catalogue. The case turned on whether or not Plaintiffs had sufficient evidence to demonstrate they were "aggrieved" by the violation of the KCPA. *Id.* at 471. After a period of discovery the Court found "the students did not rely on the false statement, and many, if not all, of the students were unaware of the statement." *Id.* at 472. The Court ultimately held on summary judgment that "a loss or injury resulting from a violation of the Act is not required in an action filed by the attorney general under KSA §50-632 and KSA §50-636; it is, however, required for one filed by a consumer under KSA §50-634(b)" and found for the University. *Id.* at 473.

As noted *supra*, OSI is seeking dismissal of Plaintiff's KCPA claim pursuant to FRCP 12(b)(6), and not summary judgment pursuant to FRCP 56. As such, the "motion should not be granted unless it appears beyond a doubt that plaintiffs can prove no set of facts which would entitle them to relief." *Gonzalez v. Pepsico, Inc.*, 489 F.Supp. 1233, 1238 (D.Kan. 2008). "The Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences from those facts in favor of the plaintiffs." *Id.*, [internal citations omitted]. "In reviewing the sufficiency of plaintiffs' complaint, the issue is not whether plaintiffs will prevail, but whether they are entitled to offer evidence to support their claims." *Id.* "Although plaintiffs

need not precisely state each element of their claims, they must plead minimal factual allegations on those material elements that must be proved."  *Id.*

In *Gonzalez* Judge Vratil of the District Court of Kansas laid out the standard for pleading the "aggrieved customer" elements of a KCPA claim: "To properly allege an action under the KCPA, plaintiffs need only claim to have suffered actual damage as a result of some alleged KCPA violation." *Id. at 1248 quoting Griffin v. Sec. Pac. Auto. Fin. Servs. Corp.,* 33 F.Supp.2d 926, 931 (D.Kan. 1998). In the current case Plaintiff pleads: "As a result of Defendants' deceptive and unconscionable acts and practices, defendants unfairly and improperly profited at the expense of Plaintiff who was forced to pay co-pays, medical costs, and other out-of-pocket expenses."  (SAC at ¶357).  This clearly meets the pleading standard of an aggrieved consumer as Plaintiff has alleged to have "suffered some actual damage" (the co-pays, medical costs, and other out-of-pocket expenses) "as a result of some alleged KCPA violation" (as a result of Defendants' deceptive and unconscionable acts and practices).  OSI makes no effort to discuss the pleading standard laid out in *Gonzalez,* and simply ignores the proper pleading standard altogether in favor of a summary judgment standard.  This is certainly curious, and Plaintiff believes it is a fair question to ask *why* Defendant OSI would rely upon the incorrect standard. Further, within Defendant OSI's motion to dismiss, the following quote appears:

> Plaintiff has not met his pleading requirement.  While the SAC does allege that Plaintiff 'was forced to pay co-pays, medical costs, and other out-of-pocket expenses,' it offers the Court no basis to conclude these payments were more than Plaintiff would have otherwise paid had the BGSS not been implanted or the joint preservation procedure not performed.

(Doc #157 pg. 16).  First, at no point does Defendant OSI make any effort to cite the Court to any proper pleading requirement, and in fact, attempts to lead the Court to a different standard.  Second, Defendant OSI cherry-picks the middle of a paragraph for this "quote" omitting the portion directly prior to the "quote" which states: "As a result of Defendants' deceptive and unconscionable acts and practices, defendants unfairly and improperly profited at the expense of Plaintiff…" (*See* SAC

at ¶357).   Again, I think it is reasonable to ask why Defendant OSI would cherry-pick a quote while omitting language regarding causation at the outset of the paragraph, then argue Plaintiff has not properly pleaded causation.   Third, the statement inaccurately cites the requirement for what Plaintiff must plead for a KCPA claim.   The Plaintiff need not plead "these payments were more than Plaintiff would have otherwise paid," as this appears to be nothing more than a standard invented by Defendant OSI during a brainstorm with other creative defendants in this case. Plaintiff "need[s] only [to] claim to have suffered actual damage as a result of some alleged KCPA violation."   *Gonzalez 489* F.Supp. 2d at 1248.   Plaintiff has met this pleading standard as laid out above.   As such, this claim should decidedly survive.

Beyond the fact that Defendant OSI has cited to a non-existent standard, it ignored the fact that Plaintiff also met its concocted pleading standard.   Again, looking to *Gonzalez*, Judge Vratil held it was proper for a soda case to move forward on its KCPA claim as "plaintiffs have sufficiently alleged a defect in defendants' beverage products which made those products unfit for their ordinary purpose and reduced their value so as to cause plaintiffs economic loss."   *Id.* In the current case, Plaintiff alleges "Plaintiff was unable to receive a material benefit from the subject of the sale of the BGSS to him."   (SAC at ¶355(f)).   The device sold to Plaintiff by OSI's agent was unnecessary, faulty, and "unfit for [its] ordinary purpose."   *Id.* As such, its value was so reduced so as to cause Plaintiff economic harm.   *Id.* Plaintiff was sold a product which was billed at an exorbitant rate, well in excess of other similar products, which could not have possibly had similar value due to its faulty design and improper use.

As such, for the reasons laid out above, Defendant OSI's Motion to Dismiss Count VI – Kansas Consumer Protection Act should be denied.

**B.  Plaintiff has properly pleaded he was part of a consumer transaction**

### 1.   The transaction relating to the sale of the BGSS supports a KCPA claim

Within Plaintiff's SAC Plaintiff alleges:

> Defendant OSI sold the BGSS directly to Plaintiff by and through its agent, employee and majority owner, Brannon. Brannon, the creator of the BGSS, and the 90% owner of OSI, was in the room directly convincing Plaintiff he needed this unnecessary surgery using this unnecessary device for the financial benefit of Brannon and OSI.

(*See* SAC at ¶352).  This transaction is the act which ties OSI into this claim as OSI directly sold the product to Plaintiff in order to submit bills which were unconscionable due to their excessive nature. (*See* SAC at ¶¶355 and 356).  Further, OSI was selling the BGSS to Plaintiff knowing the bills which would then be submitted by DH and Pain Center would be excessive and unconscionable.  (*See* SAC at ¶356).

Defendant OSI argues the BGSS is not a consumer good for purposes of the KCPA because it is a medical device.  This argument has already been received and ruled upon by this Court.  The Court stated in its June 19, 2018 Order:

> to the extent he either relies on a sale of the BGSS device as the pertinent transaction or alleges injury from the sale of the device to him (and the sale of medical treatment to him), he must allege facts supporting a plausible claim that the device was sold directly to him and not merely to DH for use in his surgery.

*See Document 149 at pp. 33.*  Plaintiff has added the above paragraph to his SAC in order to comply with the Court's June 19, 2018 Order.  Because the Court has previously ruled upon the pleading standard for when a medical device manufacturer may be pursued under the KCPA, this portion of Defendant OSI's Motion to Dismiss, it should be disregarded.

### 2.   The transaction relating to the sale of the joint preservation procedure supports a KCPA claim

Defendant OSI further argues it cannot possibly be liable for the sale of the joint preservation procedure to Plaintiff as it was Brannon acting as JPI selling the procedure.  However, this was done in conjunction with the sale of the BGSS to Plaintiff.  Brannon should not be

permitted to take off a lab coat, slap on a pair of surgical gloves and claim he is completely different entity.  Brannon as JPI was selling the joint preservation procedure; however, Brannon as OSI had not left the room, and was still present pushing for the sale of its product through the joint preservation procedure.  Because Brannon as OSI was in the room selling the procedure directly to Plaintiff, this argument by Defendant OSI is without merit and should be disregarded.

### C.  Plaintiff's Claim for Excessive Missouri Medicaid Liens

Within the Court's Order dated June 19, 2018, the Court states "defendants' violations have caused him to be subject to excessive liens in favor of Missouri Medicaid…Plaintiff has not provided authority or explained how he suffered any financial loss (as a result of a billing or pricing violation) based on payments that someone else made for his treatment."  *See Document 149 at pp. 30-31*.  Per the Court's request for authority, Plaintiff's claim regarding the excessive liens was made pursuant to the Kansas Supreme Court decision in *Via Christi Regional Medical Center, Inc. v. Reed*.  298 Kan. 503 (2013). In *Via Christi*, the Court stated:

> Reed's interest in the timely availability of his entire settlement amount has been directly and negatively affected by Via Christi's filing and attempt to enforce a lien that exceeded the reasonable and necessary charges for Reed's care.  Reed therefore qualifies as aggrieved under the KCPA, and Via Christi was not entitled to summary judgment on Reed's deceptive acts and unconscionability claims for Reed's failure to meet that requirement.

298 Kan. 503, 520 (2013).  As indicated by the Supreme Court of Kansas, one is permitted to maintain a claim against a medical provider under the KCPA for a lien based upon excessive charges for care, which is precisely what has survived in Plaintiff's KCPA claim against defendants.  Missouri Medicaid has a statutory lien on any recovery from a third party for any payments it made "when any person, corporation, institution, public agency or private agency is liable."  RSMo §208.215.1.  As such, Plaintiff, much like in *Via Christi*, will be forced to pay back an excessive lien in the event of any recovery due to the unconscionable billing practices of all defendants.

WHEREFORE, Plaintiff respectfully requests that Defendant Orthopedic Sciences, Inc.'s

Motion to Dismiss be DENIED and for what other relief this Court deems fair and just.

Respectfully Submitted,
**PETERSON & ASSOCIATES, P.C.**


/s/ David M. Peterson
David M. Peterson           #70317
Nicholas S. Clevenger       #78230
Brian E. Tadtman            #78734
Nick A. Brand               #27748
dmp@petersonlawfirm.com
nsc@petersonlawfirm.com
bet@petersonlawfirm.com
nab@petersonlawfirm.com
801 W. 47th Street, Suite 107
Kansas City, Missouri 64112
Tele: (816) 531-4440
Fax: (816) 531-0660
**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on the 26th day of September, 2018, the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO OSI'S MOTION TO DISMISS was sent via electronic mail to the addresses listed below:

*Attorneys for Orthopedic Sciences, Inc.*

FOULSTON SIEFKIN, L.L.P.
David E. Rogers, #13320
Gary L. Ayers, #10345
Daniel J. Buller, #25002
drogers@foulston.com
gayers@foulston.com
dbuller@foulston.com
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466

    and

THE HEALTH LAW PARTNERS, P.C.
Clinton Mikel, (Pro hac vice)
Adrienne Dresevic, (Pro hac vice)
James Randall Witham, (Pro hac vice)
cmikel@thehlp.com
adresevic@thehlp.com
jwitham@thehlp.com
32000 Northwestern Hwy., Suite #240
Farmington Hills, MI 48334

*Attorneys for Dr. James K. Brannon*

MARTIN, PRINGLE, OLIVER, WALLACE &
BAUER, L.L.P.
David S. Wooding, #10781
100 N. Broadway, Suite 500
Wichita, KS 67202
dswooding@martinpringle.com

    and

MARTIN, PRINGLE, OLIVER, WALLACE &
BAUER, L.L.P.
Lora M. Jennings KS Bar #22044
9401 Indian Creek Parkway
Building 40, Suite 1150
Overland Park, KS 66210
lmjennings@martinpringle.com

*Attorneys for Doctors Hospital, LLC*

SIMPSON, LOGBACK, LYNCH, NORRIS, P.A.
Mark A. Lynch, KS Bar #14277
John Wesley Smith, KS Bar #24935
mlynch@slln.com
wsmith@slln.com
7400 West 110th Street, Suite 600
Overland Park, Kansas 66210

*Attorneys for Joint Preservation Institute of Kansas, LLC*

MARTIN, PRINGLE, OLIVER, WALLACE &
BAUER, L.L.P.
David S. Wooding, #10781
100 N. Broadway, Suite 500
Wichita, KS 67202
dswooding@martinpringle.com

    and

MARTIN, PRINGLE, OLIVER, WALLACE &
BAUER, L.L.P.
Lora M. Jennings KS Bar #22044
9401 Indian Creek Parkway
Building 40, Suite 1150
Overland Park, KS 66210
lmjennings@martinpringle.com

*Attorneys for PatientFirst Healthcare Alliance, P.A.*

SIMPSON, LOGBACK, LYNCH, NORRIS, P.A.
Mark A. Lynch, KS Bar #14277
John Wesley Smith, KS Bar #24935
mlynch@slln.com
wsmith@slln.com
7400 West 110th Street, Suite 600
Overland Park, Kansas 66210

*Attorneys for Mauricio Garcia, M.D. and The Headache & Pain Center, P.A.*

BROWN & RUPRECHT, PC
Matthew M. Merrill, KS Bar #19021
Elizabeth D. Moeller, KS Bar #27016
mmerrill@brlawkc.com
emoeller@brlawkc.com
2323 Grand Boulevard, Suite 1100
Kansas City, MO 64108

 /s/ David M. Peterson
David M. Peterson