# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHARLES R. LUTTRELL,

     Plaintiff,

     v.

JAMES K. BRANNON, et al.,

     Defendants.

CASE NO. 2:17-CV-02137-HLT

## MEMORANDUM AND ORDER

This case arises out of Defendants' medical treatment of Plaintiff Charles R. Luttrell for roughly two and a half years. Plaintiff alleges Defendants not only provided him with inadequate medical care, but also engaged in a complicated scheme to defraud both Plaintiff and Missouri Medicaid. Plaintiff's Second Amended Complaint—the operative complaint—asserts ten causes of action[1] against various Defendants, including: a claim under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*; a civil conspiracy claim; a claim under the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623, *et seq*; a vicarious liability claim; an alter ego liability claim; and a punitive damages claim.[2] Defendants seek dismissal of these claims, alleging various pleading defects. Because the Court concludes the RICO, civil conspiracy, KCPA, and alter ego liability claims contain fatal pleading deficiencies, it dismisses these claims. The Court also dismisses in part Plaintiff's vicarious liability and punitive damages claims, as more fully discussed below.

---

[1] The Second Amended Complaint technically enumerates an eleventh cause of action for Fraud (Count V), but properly recognizes that Plaintiff's fraud claim is "subsumed [by Plaintiff's] Medical Malpractice (Count I) and Informed Consent (Count II) claims." Doc. 151 at 77.

[2] The Second Amended Complaint identifies seven Defendants. Not all claims are asserted against all Defendants.

## I. BACKGROUND

The following facts are from the well-pleaded allegations of the Second Amended Complaint and, consistent with the well-established standards for evaluating motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court assumes the truth of these facts for purposes of analyzing Defendants' motions to dismiss.

### A. The Parties

Defendant James Brannon, M.D. ("Dr. Brannon") and Defendant Mauricio Garcia, M.D. ("Dr. Garcia") are physicians who provided Plaintiff medical treatment between 2012 and March of 2015. Doc. 151 at 5. Dr. Brannon is also a surgeon and the designer of a surgical device known as the Titanium Hip Tool Locking Plate Bone Graft Stabilization System ("Hip Tool"). *Id.* at 3.

Defendant Orthopedic Sciences, Inc. ("OSI") manufactures the Hip Tool for sale. *Id.* at 19. Dr. Brannon is the president and 90% owner of OSI. *Id.* He is also a sales representative of OSI and markets OSI's products. *Id.*

Defendant Joint Preservation Institute of Kansas, L.L.C. ("JPI") is Dr. Brannon's practice entity. Dr. Brannon is the designated manager and 100% owner of JPI. *Id.* at 19.

Defendant Headache & Pain Center, P.A. ("HPC") provides facilities for patient treatment. *Id.* at 19. Dr. Brannon and Dr. Garcia are the sole two members of the Board of Directors for HPC. *Id.* at 18. HPC contracts with JPI to allow Dr. Brannon to perform joint preservation surgeries at HPC, during which surgeries Dr. Brannon implants the Hip Tool. *Id.* HPC pays JPI significantly more for each joint preservation surgery than any other procedure performed at HPC. *Id.*

Defendant Doctors Hospital, L.L.C. ("Doctors Hospital") is an ambulatory surgical center that also contracts with JPI to provide facilities where Dr. Brannon conducts joint preservation surgeries. *Id.* at 18-19. Doctors Hospital pays JPI significantly more for each joint preservation surgery than any other procedure performed at Doctors Hospital. *Id.* at 19.

Defendant PatientFirst Healthcare Alliance, P.A. ("PatientFirst") is the owner of HPC and Doctors Hospital. *Id.* at 18. Dr. Brannon and Dr. Garcia are the sole owners of PatientFirst and sit on its Board of Directors. *Id.*

### B. The Dispute

Plaintiff has suffered right hip pain for years. *Id.* at 6. He established a physician-patient relationship with Dr. Brannon when he sought evaluation for that hip pain. *Id.* For roughly two and a half years between 2012 and the early spring of 2015, Dr. Brannon, Dr. Garcia, and HPC routinely provided Plaintiff prescriptions for narcotic pain medications to address the hip pain. *Id.* at 5. Dr. Brannon and Dr. Garcia were the primary physicians prescribing these medications. *Id.*

Dr. Brannon ultimately diagnosed Plaintiff with avascular necrosis (death of bone tissue) of the right hip. *Id.* Dr. Brannon advised Plaintiff that the traditional treatment for this condition was total hip replacement, but that, in Plaintiff's case, this was unnecessary. *Id.* Instead, Dr. Brannon recommended a joint preservation surgery he "invented" himself. *Id.* During the joint preservation surgery, Dr. Brannon would implant a Hip Tool in Plaintiff. *Id.* Dr. Brannon convinced Plaintiff to undergo the joint preservation surgery and implantation of the Hip Tool in lieu of total hip replacement. *Id.* Plaintiff underwent the joint preservation surgery at Doctors Hospital and the Hip Tool was implanted on March 4, 2015. *Id.*

Before his surgery, on February 18, 2015, Plaintiff underwent an x-ray of his right hip at Doctors Hospital. *Id.* The x-ray revealed that his right hip was normal in appearance and there were no findings of avascular necrosis. *Id.* at 6-7. Dr. Brannon knew the results of the x-ray before he performed joint preservation surgery on Plaintiff. *Id.* at 7. Despite knowing the results of the x-ray, Dr. Brannon continued with the joint preservation surgery and implantation of the Hip Tool. *Id.* Bone samples were taken during the surgery and subsequent pathology reports "argued against avascular necrosis." *Id.* at 7-8.

Following the joint preservation surgery, Plaintiff experienced severe pain and discomfort in his right hip. *Id.* at 10. He sought treatment from a different doctor, Dr. David Anderson ("Dr. Anderson"), who diagnosed Plaintiff with a fracture caused by implantation of the Hip Tool. *Id.* Dr. Anderson concluded the joint preservation surgery, including the Hip Tool, failed. *Id.* He also diagnosed Plaintiff with severe osteoarthritis of the right hip, "a clear contraindication" for the joint preservation surgery that Dr. Brannon recommended and performed. *Id.* Ultimately, Dr. Anderson performed a total hip replacement surgery on Plaintiff's right hip and removed the Hip Tool. *Id.* at 10-11. During surgery, Dr. Anderson took bone samples. *Id.* at 11. Subsequent pathology reports confirmed there was no evidence of avascular necrosis. *Id.*

Plaintiff ultimately alleges that Defendants perpetrated a complex scheme to supply him with powerful narcotic pain medications to make him suggestable to Dr. Brannon's recommendations to undergo an overly expensive and unnecessary medical procedure (the joint preservation surgery) to implant an overly expensive and unnecessary surgical device (the Hip Tool). *Id.* at 11-14. Defendants specifically targeted Plaintiff because they could profit from Plaintiff's Missouri Medicaid benefits. *Id.* at 9. Plaintiff further alleges that Defendants' interrelationships advanced the very purpose of Defendants' scheme, allowing Defendants to conceal numerous conflicts of interest (Defendants' financial gain versus Plaintiff's medical care), none of which were disclosed to Plaintiff. *Id.* at 11-14.

## II.    PROCEDURAL HISTORY

Plaintiff filed suit on March 3, 2017. Doc. 1. The original Complaint included eight causes of action and a claim for punitive damages. *Id.* Plaintiff originally identified only Dr. Brannon, OSI, JPI, and Doctors Hospital as defendants. *Id.* On December 21, 2017, Plaintiff filed a First Amended Complaint adding Dr. Garcia, HPC, and PatientFirst as additional defendants. Doc. 84. The First Amended Complaint also added three additional causes of action. *Id.* Dr. Brannon, JPI,

Garcia, HPC, and PatientFirst subsequently filed various motions to dismiss, and Doctors Hospital filed a motion for judgment on the pleadings or motion for summary judgment. Docs. 85, 87, 106, 108, 131. Defendants' various motions included requests for dismissal of Plaintiff's RICO, KCPA, and civil conspiracy claims. Docs. 85, 87, 106, 108, 131.

The Court ruled on Defendant's motions on June 19, 2018, granting dismissal in part, denying dismissal in part, and granting Plaintiff leave to amend certain claims. Doc. 149 at 1-2. Relevant to the Second Amended Complaint and Defendants' instant motions are the following rulings:

> RICO Claims: The Court dismissed all claims except those predicated on damages representing Plaintiff's out-of-pocket expenses for unnecessary medical treatment.
>
> KCPA Claims: The Court dismissed all claims but granted Plaintiff leave to amend to allege claims based on acts of billing or pricing to the extent Plaintiff suffered financial injury or loss from such acts.
>
> Civil Conspiracy: The Court dismissed all claims but granted Plaintiff leave to amend to allege claims based on Plaintiff's surviving RICO and KCPA claims.

*Id.* at 2, 8, 31, 33.

## III.   STANDARD

Under Rule 12(b)(6), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's claim is facially plausible if he pleads sufficient factual content to allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully" but "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

This standard results in two principles that underlie a court's analysis. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Stated differently, though the court must accept well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2) (original brackets omitted)). "In keeping with these [two] principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

## IV.     ANALYSIS

As noted above, Plaintiff asserts RICO (Count III), civil conspiracy (Count IV), KCPA (Count VI), vicarious liability (Count IX), alter ego liability (Count X), and punitive damages (Count XI) claims. Because the Court concludes the RICO, civil conspiracy, KCPA, and alter ego liability claims contain a fatal pleading deficiency, it dismisses these claims. Plaintiff's vicarious liability claim against PatientFirst is also dismissed in its entirety and is dismissed in part as to OSI and JPI. Finally, because these dismissals leave the punitive damages claim as Plaintiff's sole remaining claim against Dr. Garcia, HPC, Doctors Hospital, and PatientFirst, the Court dismisses

the punitive damages claim against these Defendants.[3] The Court's analysis and findings as to each of these claims is discussed in turn below.

## A.    RICO (Against All Defendants)

RICO "prohibits certain conduct involving a 'pattern of racketeering.'" *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006). "One of RICO's enforcement mechanisms is a private right of action, available to any person injured in his business or property by reason of a violation of [ ] RICO's substantive restrictions." *Id.* (internal quotations and citations omitted). To plead a violation of RICO, a plaintiff must allege that a defendant: "(1) conducted the affairs; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016) (internal citations omitted).

Plaintiff alleges Defendants committed violations of § 1962(c) of RICO through numerous predicate acts of: (1) mail fraud in violation of 18 U.S.C. § 1341; (2) wire fraud in violation of 18 U.S.C. § 1346; (3) dealing in a controlled substance in violation of 18 U.S.C. § 841 and 21 C.F.R. § 1306.04(a); and (4) money laundering in violation of 18 U.S.C. § 1956. Doc. 151 at 28. The Supreme Court has confirmed that "to establish liability under § 1962(c) of RICO one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Section 1962(c) also requires not merely that the claimed RICO violation was a "but for" cause of the plaintiff's injury but was the proximate cause as well. *Anza*, 547 U.S. at 456-57. If a plaintiff fails to sufficiently plead the required distinctness between the person and the enterprise, or fails to sufficiently plead that the defendant's alleged RICO violation was the proximate cause of his injury, his claims are subject to dismissal. *See, e.g.*, *id.* at

---

[3]  Kansas law does not recognize an independent claim for punitive damages. *See* discussion *infra*, at Part IV.F.

461 (dismissing RICO § 1962(c) claim for lack of proximate cause); *Brannon v. Boatman's First Nat'l Bank of Okla.*, 153 F.3d 1144, 1149-50 (10th Cir. 1998) (dismissing RICO § 1962(c) claim for lack of distinctness between "person" and "enterprise"). Because the Second Amended Complaint is deficient both in pleading the required distinctness between person and enterprise, and proximate cause, the Court dismisses Plaintiff's RICO claims.[4]

> **1.   Plaintiff fails to sufficiently allege that Defendants' RICO violations were the proximate cause of out-of-pocket expenses for unnecessary medical treatment.**

As noted above, the Court's previous Order limited Plaintiff's RICO claims to those predicated on damages representing Plaintiff's out-of-pocket expenses for unnecessary medical treatment. Defendants contend the Second Amended Complaint fails to sufficiently allege that Defendants RICO violations proximately caused Plaintiff to incur out-of-pocket medical expenses. The Court agrees.

> **a.   Mail Fraud**

Plaintiff first contends Defendants violated RICO by engaging in mail fraud. Plaintiff alleges Defendants: (1) prescribed Plaintiff unnecessary narcotic pain medications; (2) subjected Plaintiff to unnecessary surgery and implantation of an unnecessary surgical device; (3) intended to defraud Missouri Medicaid by receiving payment for unnecessary medical treatment; (4) used the United States mail to submit Health Insurance Claim Forms ("HICFs") to Missouri Medicaid; and (5)  used the United States mail to submit bills directly to Plaintiff. Doc. 151 at 41-59. Plaintiff further alleges "upon information and belief" that each Defendant had knowledge that the United

---

[4]  In their various motions, all Defendants argue Plaintiff failed to sufficiently plead proximate cause. Docs. 157 at 12-15, 159 at 5-10, 161 at 5-9, 167 at 4-9. Only OSI raises the pleading deficiency of lack of distinctness between the "person" and the "enterprise". Doc. 157 at 4-7. The Court ultimately concludes the distinctness issue applies to all Defendants. *See* discussion, *infra*, at Part IV.A.2. But because all Defendants raise the proximate cause deficiency, the Court first considers this argument and then analyzes the distinctness issue.

States mail would be used to bill Missouri Medicaid and Plaintiff for the unnecessary medications, surgery, and medical treatment. Doc. 151 at 47-51, 55-59. But critically lacking from the Second Amended Complaint are two things: (1) a specific, particularly pled reference to a single bill sent to Plaintiff rather than Missouri Medicaid;[5] and (2) any allegation that Plaintiff actually incurred out-of-pocket expenses due to these alleged activities by Defendants.

Plaintiff theorizes that Defendants harmed him by fraudulently inducing Missouri Medicaid into paying for unnecessary medications, surgery, and medical care. Defendants allegedly reinvested the proceeds from the fraud to generate a larger customer base (i.e., more patients), which allowed them to further defraud those customers and Missouri Medicaid, generating inflated profits. But absent any allegations of a single bill sent to Plaintiff and any out-of-pocket expenses incurred by Plaintiff, the Court can only conclude the direct victim of this conduct—as alleged by Plaintiff under the Second Amended Complaint—was Missouri Medicaid, not Plaintiff. *See Anza*, 547 at 457-58 (conducting direct victim and proximate cause analysis). The Court therefore concludes Plaintiff cannot maintain its RICO claim for mail fraud.

### b.    Wire Fraud

Second, Plaintiff contends Defendants violated RICO by engaging in wire fraud. Plaintiff's RICO wire fraud claims suffer from the same fatal flaw as his RICO mail fraud claims—he has not sufficiently alleged that any wire fraud by Defendants proximately caused Plaintiff to incur any out-of-pocket expenses for unnecessary medical treatment. Although Plaintiff alleges Defendants knew or should have known that bills would be submitted and paid by use of wire, and

---

[5] Plaintiff goes into great detail about the HICFs sent to Missouri Medicaid and has attached copies of numerous HICFs to the Second Amended Complaint as Exhibits E and F. Doc. 151 at 45-47, 52-55; Doc. 151-1 at Exs. E and F. The Court has searched the Second Amended Complaint for similar allegations or exhibits evidencing bills sent directly to Plaintiff and/or payments made by Plaintiff and finds none. Doc. 151 at 41-59; *see also* Doc. 151-1 (containing all exhibits to the Second Amended Complaint).

that Defendants intended to and did receive money from Missouri Medicaid by wire, Plaintiff has again failed to include a single allegation that this conduct caused Plaintiff to actually incur out-of-pocket expenses. Doc. 151 at 59-61. Once again, the Court can only conclude based on the facts alleged that Missouri Medicaid was the direct victim of Defendants' conduct, not Plaintiff. *See Anza*, 547 at 457-58. This pleading deficiency is fatal to Plaintiff's wire fraud RICO claims.

### c.  Dealing in a Controlled Substance

Third, Plaintiff contends Defendants violated RICO by dealing in a controlled substance. Plaintiff alleges Dr. Brannon, Dr. Garcia, and HPC repeatedly prescribed Plaintiff narcotic medications that were not medically necessary. Doc. 151 at 61-64. Plaintiff then states "[a]s a dicrect and proximate result of such [conduct], Plaintiff suffered and incurred economic damages, including but not limited to directly paying for unnecessary medical treatment in the form of co-pays for office visits." *Id.* at 63. Plaintiff further alleges "upon information and belief" that PatientFirst, Doctors Hospital, JPI, and OSI were aware of Dr. Brannon's, Dr. Garcia's, and HPC's conduct and that the conduct was performed for the purpose of submitting bills for unnecessary narcotic medications. *Id.*

The Court finds that these allegations also fall short of alleging that Defendants' conduct of dealing in a controlled substance proximately caused Plaintiff to incur out-of-pocket expenses for unnecessary medical treatment. Plaintiff has alleged in conclusory fashion that he "suffered and incurred economic damages, including but not limited to directly paying for unnecessary medical treatment in the form of co-pays" but has failed to include any particular allegations as to when those alleged expenses were incurred or the amount of the expenses.[6] *Id.* at 61-64. This allegation is no more than a legal conclusion. And, although "a court must accept as true all of the

---

[6]  Plaintiff also fails to include as exhibits copies of any invoices or records of payments made.

allegations contained in a complaint" when considering a motion to dismiss, that tenant "is inapplicable to legal conclusions." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).[7] The Court therefore finds that this pleading deficiency is fatal to Plaintiff's RICO claims for dealing in a controlled substance.

### d.    Money Laundering

Fourth (and finally), Plaintiff alleges Defendants violated RICO through money laundering. Plaintiff contends Defendants engaged in money laundering in three separate ways by: (1) failing to fully report payments made to physicians as required by the Physician's Payments Sunshine Act, 42 U.S.C. § 1320a-7h; (2)  participating in a scheme that resulted in impermissible kickback payments to Dr. Brannon in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b; and (3)  impermissibly referring a Medicare patient for designated health services to an entity with which the physician has a financial relationship and submitting claims to Medicare for services resulting from the prohibited referral in violation of the Physician Self-Referral Law, 42 U.S.C. § 1395nn. Doc. 151 at 64-76.

Plaintiff's allegations that Defendants' money laundering activity caused Plaintiff to incur out-of-pocket expenses are more <u>numerous</u> than the allegations in the RICO claims for mail fraud, wire fraud, and dealing in a controlled substance; but they are no more <u>particular or thorough</u> and still fail to sufficiently allege proximate cause. Plaintiff alleges Defendants fraudulently billed both Plaintiff and Missouri Medicaid for unnecessary narcotic prescriptions, pain management care, the joint preservation surgery, and the Hip Tool. Doc. 151 at 65-67. Plaintiff further alleges that Defendants received "funds" from Plaintiff and Missouri Medicaid for "unnecessary medical

---

[7]  This is particularly true given that Federal Rule of Civil Procedure 9(b) requires that a "plaintiff[ ] must sufficiently allege each element of a RICO violation and its predicate acts of racketeering with particularity . . . ." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992).

treatment" and that both Plaintiff and Missouri Medicaid paid for the Hip Tool and other supplies and devices. Doc. 151 at 66. Finally, Plaintiff alleges both he and Missouri Medicaid paid for the joint preservation surgery. Doc. 151 at 67. Once again, however, Plaintiff has not included any particularized allegations as to the dates and amounts of his out-of-pocket expenses allegedly incurred as opposed to those paid by Missouri Medicaid.[8] Absent additional details, these statements amount to no more than legal conclusions and fail to sufficiently allege a RICO money laundering claim.

### e.    Dismissal with Prejudice

For the reasons discussed *supra*, at Parts IV.A.1.a. through IV.A.1.d., Plaintiff fails to sufficiently allege that Defendants' RICO violations were the proximate cause of any out-of-pocket expenses for unnecessary medical treatment. Plaintiff's RICO claims are therefore subject to dismissal for failure to state a claim. Because: (1) the Court's previous Order put Plaintiff on notice of that his RICO claims must be based solely on out-of-pocket expenses for unnecessary medical treatment; (2) Plaintiff was given the opportunity to amend his complaint accordingly; and (3) Plaintiff has failed to correct the pleading deficiency, the dismissal of Plaintiff's RICO claims is with prejudice.

### 2.    Plaintiff fails to sufficiently allege the existence of an enterprise distinct from Defendants.

Even if the Court were to conclude Plaintiff had sufficiently alleged that Defendants' RICO violations proximately caused Plaintiff to incur out-of-pocket expenses for unnecessary medical

---

[8] As noted above, other portions of the Second Amended Complaint include detailed allegations of the numerous HICFs sent to Missouri Medicaid along with attached exhibits. Those allegations and exhibits support Plaintiff's claims that Defendants billed and received funds from Missouri Medicaid for very specific amounts on very specific dates, but shed no light on <u>Plaintiff's</u> alleged injury in the form of out-of-pocket expenses. Rule 9(b)'s heightened pleading requirements have not been satisfied. *Farlow*, 956 F.2d at 989 (recognizing applicability of Rule 9(b) to RICO allegations of predicate acts).

treatment, Plaintiff's RICO claims are still subject to dismissal because Plaintiff has not alleged an enterprise that is distinct from Defendants. As noted above, the Supreme Court has recognized that § 1962(c) creates a pleading requirement of two distinct entities: "(1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric*, 533 U.S. at 161. The Tenth Circuit has also recognized that the statute "requires that the 'person' conducting the enterprise's affairs be distinct from the 'enterprise.'" *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1249 (2016).

The Second Amended Complaint contains a fatal flaw—the list of RICO persons and the RICO enterprise alleged are exact the same. Plaintiff alleges that "[e]ach and every Defendant is a culpable person under the RICO Statute" and then further describes how each Defendant meets the legal definition of "person" under RICO. Doc. 151 at 39. Plaintiff also alleges that "Dr. Brannon, Garcia, OSI, JPI, Doctors Hospital, [HPC,] and PatientFirst undertook a common enterprise to supply Plaintiff with powerful narcotic pain medications and convince him that he required a highly unusual and overly expensive medical procedure to correct a non-existent medical problem." Doc. 151 at 11. Plaintiff further alleges that "Defendants formed an enterprise and association-in-fact" with each other "or exerted direct control over each other." Doc. 151 at 32. Plaintiff has, thus, alleged that all Defendants are "persons" and all Defendants are members of the "enterprise", eliminating any distinctness between the two entities. Importantly, Plaintiff does not allege anyone other than Defendants are members of the enterprise. *See generally* Doc. 151. This flaw in pleading is not limited to these three statements in the Second Amended Complaint. Here and elsewhere in the Second Amended Complaint, Plaintiff alleges that <u>all</u> Defendants engaged in the racketeering activities. *See, e.g.*, Doc. 151 at 32 ("Defendants[ ] . . . engage[d] in

'racketeering activity' in violation of [RICO] by committing certain predicate acts, including mail fraud, wire fraud, dealing in a controlled substance, and money laundering.")

Because Plaintiff alleges that all Defendants engaged in the racketeering activity and all Defendants also constitute the enterprise—with no other individuals, entities, or associations participating in the enterprise—the RICO "person" and the RICO "enterprise" alleged are identical entities. The "enterprise" cannot be the same as the "person", merely referred to by a different name. *Kushner*, 533 U.S. at 161. Plaintiff's RICO claim is, thus, also subject to dismissal for failure to sufficiently allege the existence of an enterprise distinct from Defendants.[9] *See Zavala v. Wal-Mart Stores, Inc.*, 447 F. Supp. 2d 379, 383 (2006) (dismissing RICO claim where list of identified "persons" was identical to members of the "enterprise").[10]

### B.    KCPA (Against All Defendants Except Dr. Garcia)

Count VI of the Second Amended Complaint asserts a claim against all Defendants (with the exception of Dr. Garcia)[11] for violation of KCPA. Defendants seek dismissal of Plaintiff's KCPA claims on multiple grounds. Relevant to the Court's analysis is Defendants' contention that

---

[9] The Court recognizes that OSI is the only Defendant who raised the "distinctness" argument as grounds for dismissal of the RICO claim under the Second Amended Complaint. But, because OSI raised the issue, Plaintiff had notice of the argument and a full opportunity to respond. Moreover, "[a] district court may dismiss a case *sua sponte* under Federal Rule Civil Procedure 12(b) when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged." *Andrews v. Heaton*, 483 F.3d 1070, 1074 n.2 (10th Cir. 2007) (internal quotations and citations omitted). Because the lack of distinctness between the "person" and "enterprise" make it patently obvious that Plaintiff cannot prevail on his RICO claims on the facts alleged against any of the Defendants, the Court applies the argument—and dismisses Plaintiff's RICO claims—as to all Defendants.

[10] The District of New Jersey reached the same conclusion in *Zavala*, 447 F. Supp. at 382-84. The plaintiffs in *Zavala* sued Wal-Mart and its janitorial contractors alleging RICO violations. *Id.* In their complaint, the plaintiffs identified Wal-Mart and its janitorial contractors as "persons" for RICO purposes. *Id.* at 382-83. The plaintiffs then also identified the RICO enterprise as an association-in-fact between Wal-Mart and its contractors. *Id.* at 383. The plaintiffs identified no other persons or entities as participating in the enterprise. *Id.* Both Wal-Mart and its contractors participated in the alleged predicate acts (i.e., the RICO violations). *Id.* The court concluded that the plaintiffs' "failure to allege a RICO 'person' distinct from the RICO 'enterprise' require[d] that [the plaintiffs' RICO claim] be dismissed for failure to state a claim upon which relief can be granted." *Id.* at 383-84.

[11] For purposes of the Court's discussion of Plaintiff's KCPA claim, the Court's references to "Defendants" do <u>not</u> include Dr. Garcia.

Plaintiff fails to adequately allege that he is an "agreived consumer" for purposes of KCPA. The Court agrees.

KCPA imposes liability against "supplier[s]"[12] that engage in any deceptive or unconscionable act or practice in connection with a consumer transaction. K.S.A. §§ 50-626, -627. To recover under KCPA, an "aggrieved consumer" must establish a causal connection between the alleged violation and the loss or injury alleged. *Finstad v. Washburn Univ. of Topeka*, 252 Kan. 465, 474 (1993) (discussing § 50-634(b)).

In Count VI, Plaintiff alleges Dr. Brannon invented the Hip Tool and Defendants collectively manufactured, marketed, and ultimately sold the Hip Tool to Plaintiff, as well as the surgery required to install the Hip Tool. Doc. 151 at 78. Plaintiff alleges Defendants were, therefore, "suppliers" and (presumably) the sale of the Hip Tool and/or the medical services provided during the surgery required to install the Hip Tool constitute a "consumer transaction" for purposes of KCPA.[13] *Id.* Plaintiff also alleges various ways in which Defendants allegedly engaged in one or more deceptive acts or practices in connection with this/these consumer transaction(s), all of which conduct allegedly constitutes "unconscionable acts and practices" under KCPA. *Id.* at 79-82. Finally, Plaintiff alleges that "as a result of Defendants' deceptive and unconscionable acts and practices, [D]efendants unfairly and improperly profited at the expense

---

[12] KCPA defines "supplier" as "a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer." K.S.A. § 50-624. It excludes from the definition "any bank, trust company or lending institution which is subject to state or federal regulation with regard to disposition of repossessed collateral by such bank, trust company or lending institution." *Id.*

[13] Plaintiff specifically alleges Defendants were suppliers but the allegations as to what constitutes the alleged "consumer transaction" are not a model of clarity. The Court, however, concludes it is reasonable to infer from the allegations in the Second Amended Complaint that Plaintiff contends that either (or both) the sale of the Hip Tool and the medical services provided during the surgery required to install the Hip Tool constitute a "consumer transaction" for purposes of KCPA.

of Plaintiff who was forced to pay co-pays, medical costs, and other out-of-pocket expenses." *Id.* at 82.[14]

These allegations are insufficient to establish a causal connection between Defendants' alleged violations of KCPA and Plaintiff's claimed loss or injury. Plaintiff's only allegation that he has suffered any injury or loss as a result of Defendants' violation of KCPA is the conclusory statement that "as a result of Defendants' deceptive and unconscionable acts and practices, [D]efendants unfairly and improperly profited at the expense of Plaintiff who was forced to pay co-pays, medical costs, and other out-of-pocket expenses." *Id.* at 82. Like the pleading deficiency in Plaintiff's RICO claims, there are no particularized allegations as to the dates or amounts of co-pays, medical costs, or other out-of-pocket expenses Plaintiff allegedly incurred. *Id.* at 77-83. And Plaintiff has not included any exhibits from which Defendants (or the Court) could glean this information. *Id.* at 61-64. This allegation amounts to no more than a legal conclusion—the truth of which the Court is not bound to accept. *See Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).[15] The Court therefore finds that this pleading deficiency is fatal to Plaintiff's KCPA claim. Because the Court's previous Order put Plaintiff on notice of this pleading deficiency and Plaintiff has failed to correct it accordingly, the dismissal of Plaintiff's KCPA claims is with prejudice.

### C. Civil Conspiracy (Against All Defendants)

Count IV of the Second Amended Complaint asserts a claim for civil conspiracy against all Defendants. Doc. 151 at 76-77. Plaintiff identifies Defendants' alleged RICO and KCPA claims

---

[14] Pursuant to K.S.A. § 50-634(b), Plaintiff seeks to recover "the greater of damages sustained by Plaintiff as determined by the jury or a civil penalty as provided by [§] 50-636(a) . . . ."

[15] As is the case with RICO claims, Rule 9(b)'s heightened pleading requirements also apply to KCPA claims. *See Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1247 (D. Kan. 2007).

as the particular causes of action underlying the conspiracy claim. *Id.* Defendants argue Plaintiff's conspiracy claim is subject to dismissal on the same grounds as the underlying RICO and KCPA claims and the Court agrees. Plaintiff's civil conspiracy claim is entirely dependent on the viability of his RICO and KCPA claims, which the Court has dismissed in their entirety. *See* discussion *supra*, at Parts IV.A. and IV.B. Plaintiff's civil conspiracy claim is, therefore, also dismissed with prejudice.

### D. Vicarious Liability (Against OSI, JPI, and PatientFirst)

Count IX asserts a claim for vicarious liability against OSI, JPI, and PatientFirst. Plaintiff alleges that Dr. Brannon acted as an agent, employee, and/or representative of OSI, JPI, and PatientFirst and that these Defendants are therefore vicariously liable for Dr. Brannon's conduct "as set forth in more detail elsewhere in [the Second Amended Complaint] . . . ." Doc. 151 at 87-88. PatientFirst seeks dismissal of Plaintiff's vicarious liability claim in its entirety. Doc. 163 at 10-12. OSI and JPI do not specifically seek dismissal of the vicarious liability claim. *See generally*, Docs. 157, 161. As a threshold matter, however, because the Court has dismissed Plaintiff's RICO, KCPA, and civil conspiracy claims in their entirety, with prejudice, Plaintiff's vicarious liability claims against OSI, JPI, and PatientFirst that are predicated on Plaintiff's underling RICO, KCPA, and civil conspiracy claims are also subject to dismissal with prejudice. *Andrews*, 483 F.3d at 1074 n.2 ("A district court may dismiss a case *sua sponte* under Federal Rule Civil Procedure 12(b) when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged.").

The Court also agrees with PatientFirst that Plaintiff's remaining vicarious liability claims against it are subject to dismissal because K.S.A. § 40-3403(h) provides PatientFirst with immunity from such claims. Plaintiff's only remaining vicarious liability claims against PatientFirst are predicated on Dr. Brannon's alleged professional negligence (Count I), lack of informed consent (Count II), breach of the implied warranty of fitness (Count VII), and strict

liability failure to warn (Count VIII). Such claims arise out of Plaintiff's medical treatment by Dr. Brannon and the informed consent process, and PatientFirst is, therefore, protected by immunity from such state-law liability under K.S.A. § 40-3403(h).

Section 40-3403(h) provides that:

> A health care provider who is qualified for coverage under the [health care stabilization] fund shall have no vicarious liability or responsibility for any injury or death arising out of the rendering or the failure to render professional services inside or outside this state by any other health care provider who is also qualified for coverage under the fund.

The Kansas Supreme Court has interpreted this statute broadly, holding that it "absolves a health care provider not just from vicarious liability but from any responsibility, including independent liability, where the injured party's damages are derivative of and dependent upon the rendering of or the failure to render professional services by another health care provider." *Cady v. Schroll*, 298 Kan. 731, 732, 745 (2014). Immunity under the statute does not depend on the type of health care provider or the relationship between providers. *Id.* at 746. Nor does immunity depend on the theory of liability asserted; instead, the focus is on the source or cause of the plaintiff's injuries. *Id.* at 746-47.

Plaintiff's sole argument against application of § 40-3403(h) is that PatientFirst should not be permitted to seek dismissal of Plaintiff's vicarious liability claims on the basis of § 40-3403(h) immunity under Plaintiff's <u>Second</u> Amended Complaint because PatientFirst did raise this argument in its motion dismiss filed in response to Plaintiff's <u>First</u> Amended Complaint. Doc. 173 at 24-25. The Court rejects this argument.

The Tenth Circuit recognizes that "[i]t is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) (internal quotations and citations omitted). "Such a rule

establishes to which complaint opposing parties should direct any subsequent motion." *Id.* (citation omitted). When filed, Plaintiff's Second Amended Complaint superseded—for all purposes—his First Amended Complaint and PatientFirst was not only entitled, but also required, to respond to the Second Amended Complaint as the operative complaint, as if it were the first and only complaint filed by Plaintiff. In response to the Second Amended Complaint, PatientFirst chose to file a motion to dismiss for failure state a claim pursuant to Rule 12(b)(6) fairly raising several defenses to several of Plaintiff's claims, including statutory and case law in support of a claim of immunity from vicarious liability pursuant to § 40-3403(h). Doc. 163 at 10-12. Plaintiff was on notice of this defense but chose not to respond to the merits of the argument. Doc. 173 at 24-25. The Court finds no reason to reject PatientFirst's claim of immunity under § 40-3403(h) and Plaintiff's vicarious liability claim against PatientFirst is, therefore, dismissed in its entirety, with prejudice.

### E.    Alter Ego (Against PatientFirst)

Count X of the Second Amended Complaint asserts a claim for alter ego liability against PatientFirst for the conduct of its wholly-owned subsidiaries—HPC and Doctors Hospital. Plaintiff acknowledges that, should the Court dismiss all claims against HPC and Doctors Hospital, Plaintiff's claim for alter ego liability would also be subject to dismissal. Doc. 173 at 25. Counts III (RICO), IV (Civil Conspiracy), VI (KCPA) and XI (Punitive Damages) are the only claims asserted against HPC and Doctors Hospital. Because the Court concludes all of these claims are subject to dismissal with prejudice, Plaintiff's alter ego liability claim against PatientFirst is also subject to dismissal with prejudice.

### F.    Punitive Damages (Against All Defendants)

Count XI of the Second Amended Complaint asserts a claim for punitive damages against all Defendants. Because the Court has dismissed all of Plaintiff's underlying claims asserted

against Dr. Garcia, HPC, Doctors Hospital, and PatientFirst with prejudice, Plaintiff's claim for punitive damages against these Defendants is, therefore, also subject to dismissal with prejudice. *See In re Cessna 208 Series Aircraft Prod. Liab. Litig.*, 2009 WL 975101, at *3 (D. Kan. 2009) ("Kansas does not recognize an independent claim for punitive damages.") (citing K.S.A. § 60–3702(a); *Stevens v. Jayhawk Realty Co.*, 236 Kan. 90, 91 (1984)).[16] The Court does not, however, dismiss Plaintiff's punitive damages claim as to Dr. Brannon, OSI, and JPI—the only remaining Defendants.

## V.  CONCLUSION

Plaintiff's RICO, civil conspiracy, KCPA, and alter ego liability claims contain fatal pleading deficiencies and are therefore subject to dismissal with prejudice. The Court also dismisses with prejudice Plaintiff's vicarious liability claim against PatientFirst because PatientFirst is entitled to immunity. Plaintiff's vicarious liability claims against OSI and JPI are dismissed with prejudice to the extent such claims are based on Plaintiff's RICO, civil conspiracy, and KCPA claims. Finally, because dismissal of these claims leaves the punitive damages claim as Plaintiff's sole remaining claim against Dr. Garcia, HPC, Doctors Hospital, and PatientFirst, the Court also dismisses Plaintiff's punitive damages claim against Dr. Garcia, HPC, and Doctors Hospital.

THE COURT THEREFORE ORDERS that Defendant Orthopedic Sciences, Inc.'s Motion to Dismiss (Doc. 156) is GRANTED.

---

[16] Doctors Hospital, HPC, and Patient First have not raised the issue of dismissal of Plaintiff's punitive damages claim. It is patently obvious, however, that Plaintiff could not prevail on his punitive damages claim against HPC, Doctors Hospital and PatientFirst under the facts alleged because the Court has dismissed all underlying claims against these Defendants and Kansas law does not recognize an independent claim for punitive damages. *See Andrews*, 483 F.3d at 1074 n.2. (recognizing a district court's ability to dismiss *sua sponte* pursuant to Rule 12(b) when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged).

THE COURT FURTHER ORDERS that Defendants Mauricio Garcia, M.D., and The Headache & Pain Center, Pain Center, P.A.'s Motion to Dismiss Counts III, IV, and VI of Plaintiff's Second Amended Complaint (Doc. 158) is GRANTED.

THE COURT FURTHER ORDERS that Defendants James Brannon, M.D. and Joint Preservation Institute of Kansas, L.L.C.'s Motion to Dismiss (Doc. 160) is GRANTED.

THE COURT FURTHER ORDERS that Defendants Doctors Hospital L.L.C. and PatientFirst Healthcare Alliance, P.A.'s Motion to Dismiss (Doc. 162) is GRANTED.

THE COURT FURTHER ORDERS that Counts III, IV, VI, and X of the Second Amended Complaint are DISMISSED WITH PREJUDICE.

THE COURT FURTHER ORDERS that Count IX as against PatientFirst Healthcare Alliance, P.A. only is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

DATED:  December 17, 2018          */s/ Holly L. Teeter*
                                   HOLLY L. TEETER
                                   UNITED STATES DISTRICT JUDGE